1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  DARREN J. ROBBINS (168593)
   RANDALL J. BARON (150796)
3  ELLEN GUSIKOFF STEWART (144892)
   DAVID T. WISSBROECKER (243867)
4  EUN JIN LEE (264208)
   655 West Broadway, Suite 1900
5  San Diego, CA  92101
   Telephone:  619/231-1058
6  619/231-7423 (fax)
   darrenr@rgrdlaw.com
7  randyb@rgrdlaw.com
   elleng@rgrdlaw.com
8  dwissbroecker@rgrdlaw.com
   elee@rgrdlaw.com
9
   Lead Counsel for Plaintiff
10
   [Additional counsel appear on signature page.]
11
                    UNITED STATES DISTRICT COURT
12
                  CENTRAL DISTRICT OF CALIFORNIA
13
                         WESTERN DIVISION
14
15  JIM BARON, Individually and On      )  No. 2:06-cv-03731-GHK-SH
    Behalf of All Others Similarly Situated, )
16                                       )  CLASS ACTION
                     Plaintiff,          )
17                                       )  MEMORANDUM OF POINTS AND
         vs.                             )  AUTHORITIES IN SUPPORT OF
18                                       )  LEAD PLAINTIFF'S MOTION FOR
    BRETT C. BREWER, et al.,             )  FINAL APPROVAL OF CLASS
19                                       )  ACTION SETTLEMENT AND PLAN
                     Defendants.         )  OF ALLOCATION OF SETTLEMENT
20  _____ )  PROCEEDS
21                                          DATE:     May 16, 2011
                                            TIME:       9:30 a.m.
22                                          COURTROOM:  The Honorable
                                                        George H. King
23
24
25
26
27
28

613360_1

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT .................................................................. 1

II.     THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS ................................................................ 3

III.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ......... 6

        A.    The Settlement Is the Product of Arm's-Length Negotiations ............ 6

        B.    Reaction of the Class Supports Approval of the Settlement ............... 7

        C.    The Settlement Appropriately Balances the Risks of Litigation and the Benefit to the Class of a Certain Recovery ............................. 8

              1.    Continued Litigation Poses Substantial Risks in Establishing Liability and Damages ......................................... 9

              2.    Balancing the Certainty of an Immediate Recovery Against the Expense and Likely Duration of Trial Favors Settlement ................................................................... 14

        D.    The Parties Have Engaged in Sufficient Pretrial Discovery and Proceedings to Identify the Strengths and Weaknesses of Their Cases ........................................................................................... 15

        E.    The Recommendations of Experienced Counsel Favor Approval of the Settlement ..................................................................... 16

        F.    The Risks of Maintaining the Class Action Through Trial Support the Settlement ......................................................................... 17

IV.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE.............. 17

V.      CONCLUSION ................................................................................. 18

613360_1

1

## TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Atlas v. Accredited Home Lenders Holding Co.,*
   No. 07-CV-00488-H (CAB), 2009 U.S. Dist. LEXIS 103035

5

   (S.D. Cal. Nov. 4, 2009) .......................................................................... 17

6

*AUSA Life Ins. Co. v. Ernst & Young,*
   39 Fed. Appx. 667 (2d Cir. 2002) ........................................................... 13

7

8

*Backman v. Polaroid Corp.,*
   910 F.2d 10 (1st Cir. 1990) ...................................................................... 13

9

*Beecher v. Able,*
   575 F.2d 1010 (2d Cir. 1978) .................................................................. 17

10

11

*Berkey Photo, Inc. v. Eastman Kodak Co.,*
   603 F.2d 263 (2d Cir. 1979) .................................................................... 13

12

13

*Boyd v. Bechtel Corp.,*
   485 F. Supp. 610 (N.D. Cal. 1979) ................................................. 5, 8, 14

14

15

*Class Plaintiffs v. Seattle,*
   955 F.2d 1268 (9th Cir. 1992) ................................................................. 17

16

*Detroit v. Grinnell Corp.,*
   495 F.2d 448 (2d Cir. 1974) ...................................................................... 6

17

18

*Ellis v. Naval Air Rework Facility,*
   87 F.R.D. 15 (N.D. Cal. 1980), aff'd,

19

   661 F.2d 939 (9th Cir. 1981) ................................................... 4, 5, 15, 17

20

*Fisher Bros. v. Cambridge-Lee Indus., Inc.,*
   630 F. Supp. 482 (E.D. Pa. 1985) ........................................................... 16

21

22

*Girsh v. Jepson,*
   521 F.2d 153 (3d Cir. 1975) .............................................................. 8, 14

23

24

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998) ................................................................... 4

25

*Hughes v. Microsoft Corp.,*
   No. C98-1646C, 2001 U.S. Dist. LEXIS 5976

26

   (W.D. Wash. Mar. 26, 2001) ..................................................................... 5

27

*In re Chambers Dev. Sec. Litig.,*
   912 F. Supp. 822 (W.D. Pa. 1995) .......................................................... 14

28

- ii -

1

2                                                                                        **Page**

3   *In re Chicken Antitrust Litig. Am. Poultry,*
          669 F.2d 228 (5th Cir. 1982) ....................................................................17
4

    *In re Gulf Oil/Cities Serv. Tender Offer Litig.,*
5         142 F.R.D. 588 (S.D.N.Y. 1992) ..............................................................18

6   *In re Ikon Office Solutions, Inc.,*
          194 F.R.D. 166 (E.D. Pa. 2000) ...............................................................17
7

8   *In re Lifelock, Inc.,*
          No. 08-1977-MHM, 2010 U.S. Dist. LEXIS 102612
9         (D. Ariz. Aug. 31, 2010)..............................................................................4

10  *In re Mego Fin. Corp. Sec. Litig.,*
          213 F.3d 454 (9th Cir. 2000) ..............................................................8, 16
11

12  *In re Mfrs. Life Ins. Co. Premium Litig.,*
          No. MDL 1109, 1998 U.S. Dist. LEXIS 23217
13        (S.D. Cal. Dec. 21, 1998) ..........................................................................13

14  *In re Pac. Enters. Sec. Litig.,*
          47 F.3d 373 (9th Cir. 1995) ........................................................................3
15

16  *In re Warner Commc'ns Sec. Litig.,*
          618 F. Supp. 735 (S.D.N.Y. 1985), aff'd,
17        798 F.2d 35 (2d Cir. 1986) ..................................................................8, 15

18  *In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
          720 F. Supp. 1379 (D. Ariz. 1989), aff'd sub nom.
19        *Class Plaintiffs v. Seattle,*
          955 F.2d 1268 (9th Cir. 1992) ....................................................................4
20

21  *Kirkorian v. Borelli,*
          695 F. Supp. 446 (N.D. Cal. 1988) ..........................................................16
22

23  *Lewis v. Newman,*
          59 F.R.D. 525 (S.D.N.Y. 1973) ..................................................................9

24  *Lyondell Chem. Co. v. Ryan,*
          970 A.2d 235 (Del. 2009) ..........................................................................10
25

26  *Malchman v. Davis,*
          761 F.2d 893 (2d Cir. 1985) ........................................................................5

27  *Marshall v. Holiday Magic, Inc.,*
          550 F.2d 1173 (9th Cir. 1977) ....................................................................3
28

**Page**

*Milstein v. Huck,*
    600 F. Supp. 254 (E.D.N.Y. 1984)...................................................................5, 14

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004)..................................................................6, 8, 16

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982)........................................................................*passim*

*Republic Nat'l Life Ins. Co. v. Beasley,*
    73 F.R.D. 658 (S.D.N.Y. 1977)..............................................................................9

*Robbins v. Koger Props.,*
    116 F.3d 1441 (11th Cir. 1997)............................................................................13

*Rodriguez v. West Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009)..................................................................................5

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993)....................................................................................4

*Util. Reform Project v. Bonneville Power Admin.,*
    869 F.2d 437 (9th Cir. 1989)..................................................................................3

*Van Bronkhorst v. Safeco Corp.,*
    529 F.2d 943 (9th Cir. 1976)..................................................................................3

*W. Va. v. Chas. Pfizer & Co.,*
    314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd,*
    440 F.2d 1079 (2d Cir. 1971)..............................................................................13

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir. 1982)....................................................................................6

*White v. NFL,*
    822 F. Supp. 1389 (D. Minn. 1993)....................................................................18

*Winkler v. NRD Mining, Ltd.,*
    198 F.R.D. 355 (E.D.N.Y.), *aff'd sub nom. Winkler v. Wigley,*
    242 F.3d 369 (2d Cir. 2000)................................................................................13

613360_1

1

2                                                                                              **Page**

3  **STATUTES, RULES AND REGULATIONS**

4  15 U.S.C. §78
       §78m(a)..........................................................................................................10
5
   Federal Rules of Civil Procedure
6      Rule 23..........................................................................................................17
7      Rule 23(e)...............................................................................................1, 3, 4

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

613360_1

I.      **PRELIMINARY STATEMENT**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Robbins Geller Rudman & Dowd LLP ("Lead Counsel") submits this memorandum in support of Lead Plaintiff Jim Brown's ("Lead Plaintiff") motion for final approval of the settlement of this litigation for $45,000,000 in cash, and approval of the Plan of Allocation of settlement proceeds. The terms of the settlement are set forth in the Amended Stipulation of Settlement dated February 4, 2011 (the "Stipulation").[1] This outstanding settlement is the result of years of heavily-contested and vigorous litigation, culminating in arm's-length settlement negotiations overseen by Antonio Piazza, Esq., a highly respected mediator with extensive experience in the resolution of complex class actions.[2]

The settlement was achieved only after hard-fought litigation and extensive efforts by Lead Counsel, who never gave up, even when it appeared that Lead Plaintiff's claims could not be pursued. As detailed in the accompanying Declaration of Randall J. Baron in Support of Final Approval of Class Action Settlement, Plan of Allocation of Settlement Proceeds, and an Award of Attorneys' Fees and Expenses ("Baron Decl."), Lead Counsel: (a) filed complaints; (b) opposed numerous motions to dismiss; (c) successfully opposed Defendants' motion for partial summary judgment on the issues of loss causation and damages; (d) obtained class certification over Defendants' vigorous opposition; (e) propounded and responded to written discovery; (f) negotiated with Defendants and third parties over the scope of discovery; (g) reviewed and analyzed over 123,000 pages of documents produced by Defendants and third parties; (h) took and defended over 30 fact and expert

---

[1]      All capitalized terms not defined herein shall have the same meanings set forth in the Stipulation.

[2]      Prior to negotiating with Mr. Piazza, in 2009, the parties attempted, in two sessions, to mediate a resolution of the case before the Honorable Alexander H. Williams, III, but were unsuccessful.

613360_1

1  depositions; (i) litigated discovery disputes; (j) submitted six expert reports; (k) filed a
2  motion for partial summary judgment; (l) opposed Defendants' motions for summary
3  judgment; (m) litigated *Daubert* motions; and (n) conducted mediation and settlement
4  negotiation.

5       Defendants adamantly denied any liability and asserted they possessed absolute
6  defenses to Lead Plaintiff's claims.   They presented these defenses at every
7  opportunity.   During settlement negotiations, however, Lead Counsel made it clear
8  that, while it was prepared to fairly assess the strengths and weaknesses of Lead
9  Plaintiff's case, they would continue to litigate rather than settle for less than fair
10  value.   In fact, two mediation sessions were unsuccessful, and the parties were
11  preparing for trial. Lead Plaintiff and Lead Counsel persisted until they achieved an
12  amount that they thought was fair under the circumstances of this case.

13       Lead Counsel, who is well-respected and experienced in prosecuting securities
14  and other complex class actions, has concluded that the settlement is an excellent
15  result and is in the best interest of the Class.  This conclusion is based on an analysis
16  of all of the relevant factors present here, including the substantial risk, expense, and
17  uncertainty in continuing the litigation through trial, and probable appeal; the relative
18  strengths and weaknesses of the claims and defenses asserted; a complete analysis of
19  the evidence obtained to date and the legal and factual issues presented; past
20  experience in litigating complex actions similar to the present action; and the serious
21  disputes between the parties concerning the merits and damages.[3]

22       For all of the reasons discussed herein and in the Baron Declaration, it is
23  respectfully submitted that the settlement, for $45 million in cash, is eminently fair,

24
25  _____

26  [3]  The Court is respectfully referred to the accompanying Baron Declaration for a
27  more detailed history of the litigation, the substantial efforts of counsel, and the
   factors bearing on the reasonableness of the settlement and Plan of Allocation.
28

613360_1                                   - 2 -

1    reasonable, and adequate to the Class and should be approved by the Court.[4]

2    Moreover, the Plan of Allocation, which tracks the theory of damages asserted and

3    provides all Class Members with a proportionately-equal recovery, is likewise fair,

4    reasonable, and adequate, and should be approved by the Court.

5  **II.    THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS**

6

7    It is well established in the Ninth Circuit that "voluntary conciliation and

8    settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil*

9    *Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  Class action suits readily lend

10    themselves to compromise because of the difficulties of proof, the uncertainties of the

11    outcome, and the typical length of the litigation.  It is beyond question that "there is an

12    overriding public interest in settling and quieting litigation," and this is "particularly

13    true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th

14    Cir. 1976); *see also Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437,

15    443 (9th Cir. 1989).  In deciding whether to approve the settlement of a stockholder

16    class action under Federal Rule of Civil Procedure 23(e), the court must find that the

17    proposed settlement is "'fair, adequate, and reasonable.'"[5]  The Ninth Circuit has set

18    forth factors which may be considered in evaluating the fairness of a class action

19    settlement:

20    _____

21    [4]    The Class was certified by the Court in an Order dated June 22, 2009, and the
class definition was refined in the Stipulation to consist of all holders of Intermix

22    Media, Inc. common stock from July 18, 2005 through the consummation of the sale
of Intermix to News Corp. at the price of $12.00 per share on September 30, 2005, and

23    were damaged thereby.  Excluded from the Class are Defendants and any Affiliated
Person of any Defendant, as well as Brad Greenspan, any trusts or entities in which he

24    is an owner, trustee or beneficiary, and any Intermix shares held by any Person or
entity over which Mr. Greenspan has or had direct or indirect control.  Also excluded

25    from the Class were those Persons who timely and validly requested exclusion from
the Class pursuant to the Notice of Pendency of Class Action.

26    [5]    *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995) (citation

27    omitted); *Officers for Justice*, 688 F.2d at 625; *Marshall v. Holiday Magic, Inc.*, 550
F.2d 1173, 1178 (9th Cir. 1977).

28

613360_1

- 3 -

1        Although Rule 23(e) is silent respecting the standard by which a

2    proposed settlement is to be evaluated, the universally applied standard

3    is whether the settlement is fundamentally fair, adequate and reasonable.

4    The district court's ultimate determination will necessarily involve a

5    balancing of several factors which may include, among others, some or

6    all of the following: the strength of plaintiffs' case; the risk, expense,

7    complexity, and likely duration of further litigation; the risk of

8    maintaining class action status throughout the trial; the amount offered in

9    settlement; the extent of discovery completed, and the stage of the

10   proceedings; the experience and views of counsel; the presence of a

11   governmental participant; and the reaction of the class members to the

12   proposed settlement.

13   *Officers for Justice*, 688 F.2d at 625 (citations omitted). *See also In re Lifelock, Inc.*,

14   No. 08-1977-MHM, 2010 U.S. Dist. LEXIS 102612, at *15 (D. Ariz. Aug. 31, 2010).

15   *Accord Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Torrisi v.*

16   *Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Wash. Pub. Power*

17   *Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989), *aff'd sub nom. Class*

18   *Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992).   "The relative degree of

19   importance to be attached to any particular factor will depend upon and be dictated by

20   the nature of the claims advanced, the types of relief sought, and the unique facts and

21   circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at

22   625.

23       The district court must exercise "sound discretion" in approving a settlement.

24   *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d

25   939 (9th Cir. 1981); *Torrisi*, 8 F.3d at 1375.  In exercising its discretion, "the court's

26   intrusion upon what is otherwise a private consensual agreement negotiated between

27   the parties to a lawsuit must be limited to the extent necessary to reach a reasoned

28   judgment that the agreement is not the product of fraud or overreaching by, or

-4-

1   collusion between, the negotiating parties, and that the settlement, taken as a whole, is
2   fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.
3   The Ninth Circuit "has long deferred to the private consensual decision of the parties."
4   *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  The Ninth Circuit
5   defines the limits of the inquiry to be made by the court in the following manner:

6           Therefore, the settlement or fairness hearing is not to be turned into a
7           trial or rehearsal for trial on the merits.  Neither the trial court nor this
8           court is to reach any ultimate conclusions on the contested issues of fact
9           and law which underlie the merits of the dispute, for it is the very
10          uncertainty of outcome in litigation and avoidance of wasteful and
11          expensive litigation that induce consensual settlements.  The proposed
12          settlement is not to be judged against a hypothetical or speculative
13          measure of what ***might*** have been achieved by the negotiators.

14  *Officers for Justice*, 688 F.2d at 625 (emphasis in original).  Applying these criteria
15  demonstrates that this settlement warrants the Court's approval.

16          Moreover, "[t]he recommendations of plaintiffs' counsel should be given a
17  presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D.
18  Cal. 1979); *Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel involved in the
19  case approved the settlement after hard-fought negotiations is entitled to considerable
20  weight").[6]   The presumption of reasonableness in this matter is fully warranted
21  because the settlement is the product of arm's-length and mediator assisted
22  negotiations.  *Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS
23  5976, at *17, *21 (W.D. Wash. Mar. 26, 2001).  Here, it is the considered judgment of
24  experienced counsel after extensive litigation and vigorous and hard-fought settlement
25
26  _____
27  [6]    *Accord Malchman v. Davis*, 761 F.2d 893, 903 (2d Cir. 1985); *Milstein v. Huck*, 600 F. Supp. 254, 262 (E.D.N.Y. 1984).
28

613360_1

negotiations that the settlement is an outstanding result for the Class and should be approved.

In sum, the Court is now asked to ascertain whether the settlement is within a range that responsible and experienced attorneys could accept, considering all relevant risk factors of litigation. *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982); *Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 (2d Cir. 1974). This range recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion. Therefore, courts have taken a liberal approach toward approval of class action settlements, recognizing that the settlement process involves the exercise of judgment and that the concept of "reasonableness" can encompass a broad range of results. "'In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted).

## III.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.   The Settlement Is the Product of Arm's-Length Negotiations

Lead Counsel has many years of experience in litigating complex actions and has negotiated hundreds of other class action settlements that have been approved by courts throughout the country. Defendants are also represented by highly capable and very experienced counsel who zealously defended their clients. As a result, the settlement was reached after arm's-length negotiations by experienced counsel on both sides, each with a good understanding of the strengths and weaknesses of each party's respective claims and defenses. During the litigation, the parties agreed to participate in mediation and met with the Honorable Alexander H. Williams, III on two separate occasions. Prior to the mediations, Lead Counsel prepared and submitted detailed mediation statements discussing the strengths of Lead Plaintiff's claims

613360_1

1  against the various Defendants.  During the course of the mediation sessions, the

2  parties debated the merits of their respective claims and defenses.  Lead Counsel

3  zealously advanced Lead Plaintiff's positions and was fully prepared to continue to

4  litigate rather than accept a settlement that was not in the best interest of the Class.  As

5  evidence of this commitment, the mediation sessions were unsuccessful and litigation

6  continued through expert discovery and summary judgment.

7       Following the Court's issuance of its opinion on the motions for summary

8  judgment/adjudication, the parties agreed to another mediation, this time before

9  Antonio Piazza, Esq., an experienced mediator of complex litigation.  At the end of a

10  full-day session, the parties reached an agreement-in-principle to settle the litigation

11  for $45 million in cash.  The agreement-in-principle was followed by negotiations

12  regarding the detailed terms of the settlement, including the scope of releases, and the

13  form and content of the notice to be sent to the Class.  As a result of the negotiations

14  and mediation, there can be no question that the settlement was the result of hard

15  fought arm's-length negotiations and is "not the product of fraud or overreaching by,

16  or collusion between, the negotiating parties." *Officers for Justice*, 688 F.2d at 625.

17  **B.      Reaction of the Class Supports Approval of the Settlement**

18       The Notice was sent to more than 9,800 potential Members of the Class.  A

19  Summary Notice of the settlement was also published in *Investor's Business Daily* and

20  over the *PR Newswire*.  *See* paragraphs 3-10 and 13 to the Declaration of Michael

21  Joaquin Re A) Mailing the Notice of Settlement of Class Action and the Proof of

22  Claim and Release Form, B) Publication of the Summary Notice, and C) Internet

23  Posting, submitted herewith.  The time period for objecting to the settlement will

24  expire on April 21, 2011.  To date, however, not a single objection to any aspect of the

25  settlement, the Plan of Allocation, or Lead Counsel's request for an award of

26

27

28

613360_1

1  attorneys' fees and expenses has been received.[7]  This is an important factor in

2  evaluating the fairness, reasonableness, and adequacy of the settlement and supports

3  approval.  Indeed, "[i]t is established that the absence of a large number of objections

4  to a proposed class action settlement raises a strong presumption that the terms of a

5  proposed class settlement action are favorable to the class members."  *Nat'l Rural*,

6  221 F.R.D. at 529.  The Class reaction to date is strong evidence that the Class

7  overwhelmingly supports the settlement and Plan of Allocation.

8  **C.  The Settlement Appropriately Balances the Risks of Litigation and the Benefit to the Class of a Certain**
9  **Recovery**

10  To determine whether the proposed settlement is fair, reasonable, and adequate,

11  the court must balance against the continuing risks of litigation, the benefits afforded

12  to members of the class, and the immediacy and certainty of a substantial recovery.  *In*

13  *re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Girsh v. Jepson*,

14  521 F.2d 153, 157 (3d Cir. 1975); *Boyd*, 485 F. Supp. at 616-17; *In re Warner*

15  *Commc'ns Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d

16  Cir. 1986).  In other words,

17  "[t]he Court shall consider the vagaries of litigation and compare the

18  significance of immediate recovery by way of the compromise to the

19  mere possibility of relief in the future, after protracted and expensive

20  litigation.  In this respect, 'It has been held proper to take the bird in

21  hand instead of a prospective flock in the bush.'"

22  *Nat'l Rural*, 221 F.R.D. at 526 (citations omitted).

23  In the context of approving class action settlements, courts attempting to

24  balance these factors have recognized "that stockholder litigation is notably difficult

25

26  _____

27  [7]  If any objections are received, Lead Counsel will address them in a reply brief.

28

- 8 -

613360_1

1  and notoriously uncertain." *Lewis v. Newman*, 59 F.R.D. 525, 528 (S.D.N.Y. 1973);

2  *See also Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977).

3      Although Lead Counsel believes that the litigation has significant merit, it

4  recognizes that it faced numerous risks and uncertainties and is well aware that many

5  other similar actions have been prosecuted in the belief that they were meritorious,

6  only to lose on dispositive motions at trial or on appeal. The settlement recognizes the

7  inherent risks of complex litigation involving a panoply of difficult and novel legal

8  and factual issues. As discussed herein and in the Baron Declaration, the risks of

9  continued litigation when weighed against the substantial and certain recovery for the

10  Class confirms the reasonableness of the settlement. The settlement is unquestionably

11  better than another distinct possibility – little or no recovery for the Class. Moreover,

12  even if the Lead Plaintiff was able to successfully prosecute this action through trial

13  and all appeals, there was no guarantee that a jury's verdict would have been more

14  than the settlement amount and it would have taken years before all appeals were

15  settled and the Class received any payment.

    **1.   Continued Litigation Poses Substantial Risks in Establishing Liability and Damages**

    Although Lead Plaintiff largely survived Defendants' attacks on the pleadings and on summary judgment, the Class faced serious obstacles to recovery, both with respect to liability and damages. The claims asserted in the litigation on behalf of the Class were based on alleged breaches of fiduciary duty and proxy violations in connection with Intermix's sales to News Corp. in mid-2005.

    While the Lead Plaintiff believes that his claims are strong, establishing liability at trial would by no means be guaranteed. Defendants have adamantly denied liability and have asserted from the outset of the litigation that they possess absolute defenses to Lead Plaintiff's claims. For example, defendants have steadfastly maintained that the exculpatory provision in Intermix's Articles of Incorporation insulated them from personal liability for breaches of duty of care, so that Lead Plaintiff was required to

613360_1

1    demonstrate a breach of the duty of loyalty.  They further argued that the Delaware

2    Supreme Court's recent decision in *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235 (Del.

3    2009) set a high bar that required Lead Plaintiff to show that Defendants utterly failed

4    to attempt to obtain the best sale price to show bad faith for a breach of loyalty claim,

5    and that Lead Plaintiff could not clear that bar, because Defendants were

6    knowledgeable and took adequate action in connection with the Acquisition, and

7    because Lead Plaintiff could not show that a majority of the Intermix Board was

8    interested in the merger.  *See* Baron Decl., ¶142.

9          Defendants also challenged the key elements of Lead Plaintiff's §14(a) claim.

10   First, Defendants claimed that there was no evidence to support Lead Plaintiff's

11   allegations that the Proxy contained material misstatements or omitted material facts.

12   Defendants argued that the alleged omissions – *i.e.*, those concerning management

13   projections, Defendants' liability from derivative lawsuits, Viacom's interest in the

14   Company and the MySpace Option – were not material or were already disclosed.

15   Baron Decl., ¶143.  Defendants also maintained that Lead Plaintiff had not provided

16   evidence of Defendants' scienter under §14(a), or that there was any evidence from

17   which Lead Plaintiff could prove that Intermix shareholders suffered any economic

18   loss.  *Id.*

19         The Court's order on Defendants' motions for summary judgment crystallized

20   Lead Plaintiff's burdens at trial.  In order to prove breach of fiduciary duty, Lead

21   Plaintiff will have to prove, among other things, that Rosenblatt did, in fact, favor

22   New Corp. over Viacom because he wanted future employment from News Corp.; that

23   Rosenblatt did, in fact, dodge and frustrate an imminent bid from Viacom; that

24   Rosenblatt manipulated the Board and/or the Board consciously permitted Rosenblatt

25   to control and run the sale process.  Baron Decl., ¶173.  To prove his §14(a) claim,

26   Lead Plaintiff will have to convince the trier of fact that there was a substantial

27   likelihood that a reasonable shareholder would have viewed information about

28

613360_1

1   MySpace's then-current revenue and profits, management projections, and derivative
2   lawsuits important in deciding how to vote on the Acquisition. *Id.*

3       As discussed above, and in the Baron Declaration, the case entailed a number of
4   complex issues. Presenting these complex issues to a jury posed risks to the Class's
5   hopes for success at trial. While the Lead Plaintiff would have presented expert
6   testimony supporting his allegations, Defendants would have called experts to
7   contradict the Lead Plaintiff's experts and opine that Defendants were not liable under
8   applicable laws. Lead Counsel could not be certain that it would succeed in making
9   the jury believe Lead Plaintiff's experts or even understand these matters well enough
10  to reach a determination in the Class's favor. Moreover, because most, if not all, of
11  Lead Plaintiff's fact witnesses would have been adverse ones, he would be required to
12  infer from documents elements of the claims such as state of mind or intent – never an
13  easy endeavor.

14      Lead Counsel also recognizes that a finding by a jury is never assured and that
15  Defendants had potential defenses to Lead Plaintiff's claims that could create
16  significant risks to the Class's recovery. As a result, the Lead Plaintiff faced the risks
17  of establishing liability posed by conflicting testimony and evidence. Moreover, there
18  was no certainty that depositions would tend to support or disprove Lead Plaintiff's
19  allegations.

20      The risks of establishing liability posed by conflicting testimony and evidence
21  would be exacerbated by the following risks inherent in all shareholder litigation,
22  including the unpredictability of a lengthy and complex jury trial – the risk that
23  witnesses could suddenly become unavailable or jurors could react to the evidence in
24  unforeseen ways; the risk that the jury would find that some or all of the alleged
25  misrepresentations and omissions were not material; and the risk that the jury would
26  find that Defendants reasonably believed in the appropriateness of their actions at the
27  time and that the Lead Plaintiff failed to prove that Defendants acted with the requisite
28  state of mind.

613360_1

Even if Lead Plaintiff overcame the significant risks of proving liability, he would still face the risks of proving damages. The determination of damages is a complicated and uncertain process involving conflicting expert testimony. Expert testimony could rest on many subjective assumptions, any of which could be rejected by a jury as speculative or unreliable. The Lead Plaintiff would have likely faced a renewed motion *in limine* by Defendants to preclude Lead Plaintiff's damage expert's testimony under the *Daubert* test and risked a decision that his methodologies were not admissible in evidence.

If the Lead Plaintiff survived the *Daubert* motion, at trial the damage assessments of the Lead Plaintiff's and Defendants' experts were sure to vary substantially, and in the end, this crucial element at trial would be reduced to a "battle of experts." Moreover, here, two eminently qualified experts have polar opposite opinions on the amount of damages – from $0 per share to as much as $14 per share, based upon review and analysis of the same underlying information. Following the Court's ruling on the motion for summary judgment, the only viable damages theory is the "out-of-pocket" losses theory. Under that theory, Lead Plaintiff would have been required to convince the trier of fact what the "fair value" of Intermix, including its MySpace asset, was at the time of the Acquisition. Baron Decl., ¶174. By 2009, however, MySpace was a different asset than it was in 2005, and it was likely that the trier of fact would perceive MySpace to be obsolete in comparison to contemporary popular websites like Facebook, and would believe MySpace to be worth less than what News Corp. paid for it in the Acquisition, or worth nothing at all. *Id.* The reaction of a jury to such testimony is highly unpredictable and Lead Counsel recognizes the possibility that a jury could be swayed by convincing experts for the Defendants. The Defendants would attempt to convince the jury to find that, when taking into consideration post-Acquisition facts, there were no damages or that only a fraction of the amount of damages the Lead Plaintiff asserted were causally related to

613360_1

the alleged wrongdoing. *See, e.g., Robbins v. Koger Props.*, 116 F.3d 1441, 1448-49
(11th Cir. 1997) (finding no loss causation and overturning $81 million jury verdict).

This action involves substantial risks in proving liability and damages. There is
no question that Defendants would have raised every available argument to avoid an
adverse judgment had litigation continued. The defenses raised by Defendants had
some possibility of success, making the ultimate outcome difficult to discern. Lead
Counsel's experience has taught them how the above-mentioned factors can make the
outcome of a trial extremely uncertain. Moreover, even if the Lead Plaintiff prevailed
at trial, risks to the Class remain. For example, in *Backman v. Polaroid Corp.*, 910
F.2d 10, 18 (1st Cir. 1990), the class won a jury verdict and a motion for J.N.O.V. was
denied, but on appeal the judgment was reversed and the case dismissed. *See also W.
Va. v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known
from past experience that no matter how confident one may be of the outcome of
litigation, such confidence is often misplaced."), *aff'd*, 440 F.2d 1079 (2d Cir. 1971);
*Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263, 309 (2d Cir. 1979) (reversing
$87 million judgment after trial); *Robbins*, 116 F.3d at 1449 (reversing on appeal $81
million jury verdict and dismissing securities action with prejudice); *AUSA Life Ins.
Co. v. Ernst & Young*, 39 Fed. Appx. 667 (2d Cir. 2002) (affirming district court's
dismissal after a full bench trial and earlier appeal and remand); *Winkler v. NRD
Mining, Ltd.*, 198 F.R.D. 355 (E.D.N.Y.) (granting defendants' motion for judgment
as a matter of law after jury verdict for plaintiffs), *aff'd sub nom. Winkler v. Wigley*,
242 F.3d 369 (2d Cir. 2000).

In summary, although Lead Counsel believes that the case is meritorious, its
experience has taught them that the risks discussed above can render the outcome of a
trial extremely uncertain. *See In re Mfrs. Life Ins. Co. Premium Litig.*, No. MDL
1109, 1998 U.S. Dist. LEXIS 23217, at *17 (S.D. Cal. Dec. 21, 1998) ("even if it is
assumed that a successful outcome for plaintiffs at summary judgment or at trial
would yield a greater recovery than the Settlement – which is not at all apparent –

- 13 -

613360_1

1   there is easily enough uncertainty in the mix to support settling the dispute rather than

2   risking no recovery in future proceedings"). Consideration of the above risks supports

3   approval of the settlement as fair, adequate, and reasonable.

> **2.     Balancing the Certainty of an Immediate Recovery Against the Expense and Likely Duration of Trial Favors Settlement**

6   The immediacy and certainty of a recovery is a factor for the Court to balance

7   in determining whether this proposed settlement is fair, adequate, and reasonable.

8   *E.g.*, *Girsh*, 521 F.2d at 157. Courts consistently have held that "[t]he expense and

9   possible duration of the litigation should be considered in evaluating the

10  reasonableness of [a] settlement." *Milstein*, 600 F. Supp. at 267; *see also Officers for*

11  *Justice*, 688 F.2d at 626; *Boyd*, 485 F. Supp. at 616-17. Absent this settlement, the

12  litigation would have likely dragged on for several more months or even years as the

13  parties prepared for trial, at considerable expense, without the Class receiving the

14  immediate and substantial benefit of the settlement, thus creating the possibility that

15  the Class would ultimately receive less or no recovery at all.

16  As the Court is well aware, Defendants have demonstrated a commitment to

17  defend this case through and beyond trial, if necessary, and are represented by well-

18  respected and highly capable counsel. If not for this settlement, the case would have

19  continued to be fiercely contested by all parties. The expense and time of continuing

20  litigation through trial would have been substantial. A pre-trial order would have to

21  be prepared, proposed jury instructions would have to be submitted, and motions *in*

22  *limine* would have to be filed and argued. Substantial amounts of time would need to

23  be expended in preparing this case for a trial. Moreover, the trial of this litigation

24  would have been long, expensive, and uncertain and no matter what the outcome,

25  appeals would be virtually assured. Taking into account the likelihood of appeal,

26  absent this settlement, the litigation would have continued for years, despite the efforts

27  of the Court and the parties to speed the process. *See In re Chambers Dev. Sec. Litig.*,

28  912 F. Supp. 822, 837 (W.D. Pa. 1995) ("It is safe to say, in a case of this complexity,

613360_1

1   the end of that road might be miles and years away."). All of the foregoing would

2   have delayed the ability of the Class to recover for several years. Settlement at this

3   juncture results in an immediate and certain recovery, without the attendant risk,

4   expense, and delay of trial and post-trial litigation.

5          As the Ninth Circuit has made clear, the very essence of a settlement agreement

6   is compromise, "'a yielding of absolutes and an abandoning of highest hopes.'"

7   *Officers for Justice*, 688 F.2d at 624 (citation omitted).

8          "Naturally, the agreement reached normally embodies a compromise; in

9          exchange for the saving of cost and elimination of risk, the parties each

10         give up something they might have won had they proceeded with

11         litigation. . . ."

12  *Id.* (citation omitted); *Ellis*, 87 F.R.D. at 19 (as a *quid pro quo* for not having to

13  undergo the uncertainties and expenses of litigation, the plaintiffs must be willing to

14  moderate the measure of their demands). Accordingly, the fact that the Class

15  potentially could have achieved a greater recovery after trial does not preclude the

16  Court from finding that the settlement is within a "range of reasonableness" that is

17  appropriate for approval. *E.g.*, *Warner Commc'ns*, 618 F. Supp. at 745.

18      **D.    The Parties Have Engaged in Sufficient Pretrial Discovery
                and Proceedings to Identify the Strengths and Weaknesses**

19              **of Their Cases**

20         The stage of the proceedings and the amount of discovery completed is another

21  factor which the courts consider in determining the fairness, reasonableness, and

22  adequacy of a settlement. *Officers for Justice*, 688 F.2d at 625. Here, both the

23  knowledge of Lead Counsel and the proceedings themselves have reached a stage

24  where Lead Counsel could make an intelligent evaluation of the litigation and

25  propriety of this settlement.

26         Lead Counsel conducted significant informal and formal discovery and

27  investigation through witness interviews on the matters alleged, reviewed over

28  123,000 pages of documents produced by Defendants and third parties, took or

613360_1

- 15 -

defended over 30 depositions and retained experts in damages, accounting, mergers and acquisitions and business valuation, and exchanged expert reports and rebuttal reports with Defendants. The parties also participated in three separate mediation sessions where the strengths and weaknesses of the parties' respective claims and defenses were fully explored. The parties had fully adjudicated Defendants' motions to dismiss, Lead Plaintiff's motion for class certification and cross motions for summary judgment and/or adjudication, and exchanged expert reports, all of which highlighted the factual and legal issues in the litigation. Virtually all that remained to be done was prepare for trial. Thus, the parties reached an agreement to settle the litigation at a point when they had an informed understanding of the legal and factual issues surrounding the case. *See Mego Fin.*, 213 F.3d at 459. Having sufficient information to properly evaluate the case, Lead Counsel settled the litigation on terms favorable to the Class without the substantial expense, risks, uncertainty, and delay of continued litigation.

### E.   The Recommendations of Experienced Counsel Favor Approval of the Settlement

"'Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.'" *Nat'l Rural*, 221 F.R.D. at 528 (citation omitted).

Here, Lead Counsel, who is actively involved and experienced in complex federal civil litigation, has weighed all of the relevant factors and has concluded that the settlement is a favorable result that is in the best interest of the Class. Where, as here, the settlement is the product of serious, informed, and non-collusive negotiations, "'the trial judge . . . should be hesitant to substitute its own judgment for that of counsel.'" *Id.* (citations omitted). *See also Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement."); *Fisher Bros. v. Cambridge-Lee Indus., Inc.*, 630 F. Supp. 482, 488 (E.D.

- 16 -

1  Pa. 1985); *Ellis*, 87 F.R.D. at 18 ("the fact that experienced counsel involved in the

2  case approved the settlement after hard-fought negotiations is entitled to considerable

3  weight").

4  **F.    The Risks of Maintaining the Class Action Through Trial**
   **Support the Settlement**

5

6  This factor also supports the settlement.  Although a class had been certified

7  and there is no reason to support decertification, there can be no certainty of

   maintaining this status through trial as courts may exercise their discretion to re-
8
   evaluate the appropriateness of class certification at any time, and Defendants would
9
   likely move to decertify the Class prior to trial.
10

11  In sum, each of the above factors fully supports a finding that the settlement is

   fair, reasonable, and adequate, and deserving of approval.
12

13  **IV.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

14  Lead Plaintiff also seeks approval of the Plan of Allocation of the settlement

15  proceeds (the "Plan").  The Plan was set forth in the Notice mailed to Class Members.

16  Distribution under the Plan will be made on a pro-rata basis depending on the number

17  of shares each Class Member held continuously during the Class Period, and which

18  were paid $12.00 per share in the Acquisition.  Assessment of a plan of allocation in a

19  class action under Federal Rule of  Civil Procedure 23 is governed by the same

20  standards of review applicable to the settlement as a whole – the plan must be fair and

21  reasonable.  *See In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 184 (E.D. Pa.

22  2000); *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *Atlas v.*

23  *Accredited Home Lenders Holding Co.*, No. 07-CV-00488-H (CAB), 2009 U.S. Dist.

24  LEXIS 103035, at *13 (S.D. Cal. Nov. 4, 2009).  District courts enjoy "broad

25  supervisory powers over the administration of class-action settlements to allocate the

26  proceeds among the claiming class members . . . equitably." *Beecher v. Able*, 575

27  F.2d 1010, 1016 (2d Cir. 1978); *accord In re Chicken Antitrust Litig. Am. Poultry*, 669

28  F.2d 228, 238 (5th Cir. 1982).

- 17 -

613360_1

1    The objective of a plan of allocation is to provide an equitable basis upon which

2  to distribute the settlement fund among eligible class members.   Here, all Class

3  Members are similarly situated because each Class Member received the same

4  consideration for their Intermix shares in the Acquisition.   Here, all Class Members

5  will receive the same pro rata distribution from the Settlement Fund.   Thus, all Class

6  Members are being treated equally and fairly.   An allocation formula need only have a

7  reasonable, rational basis, particularly if recommended by "experienced and

8  competent" class counsel.   *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993);

9  *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 596 (S.D.N.Y. 1992).

10    Lead Counsel believes that the Plan will result in a fair and equitable

11  distribution of the proceeds among Class Members who submit valid claims and, thus,

12  it should be approved.   It is also important to note that to date, no Class Members have

13  objected to the proposed Plan.

14  **V.    CONCLUSION**

15    The settlement obtained here is an outstanding result under any measure, given

16  the presence of skilled counsel for all parties, the mediator-assisted settlement

17  negotiations, the considerable risk, expense, and delay if the litigation were to

18  continue, and the certain and immediate benefit of the settlement to Members of the

19  Class.   In addition, the Plan is fair, reasonable, and adequate.   Therefore, the Lead

20  Plaintiff respectfully requests this Court to approve the settlement of this litigation and

21  the Plan as fair, reasonable, and adequate.

22  DATED:  March 21, 2011          Respectfully submitted,

23                                 ROBBINS GELLER RUDMAN
                                     & DOWD LLP
24                                 DARREN J. ROBBINS
                                   RANDALL J. BARON
25                                 ELLEN GUSIKOFF STEWART
                                   DAVID T. WISSBROECKER
26                                 EUN JIN LEE

27

28                                        s/ Ellen Gusikoff Stewart

613360_1                             - 18 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ELLEN GUSIKOFF STEWART

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

Lead Counsel for Plaintiff

LAW OFFICES OF CHRISTY
  GOODMAN
CHRISTY W. GOODMAN
3327 Dumas Street
San Diego, CA  92106
Telephone:  619/793-8259
619/758-0635 (fax)

Attorneys for Plaintiff

- 19 -

613360_1

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 21, 2011, I authorized the electronic filing of the foregoing

with the Clerk of the Court using the CM/ECF system which will send notification of such filing to

the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I

caused to be mailed the foregoing document or paper via the United States Postal Service to the non-

CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.  Executed on March 21, 2011.

s/ Ellen Gusikoff Stewart
ELLEN GUSIKOFF STEWART

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (fax)

E-mail: elleng@rgrdlaw.com

20

## Mailing Information for a Case 2:06-cv-03731-GHK -SH

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Randall J Baron**
  randyb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Rebecca M Couto**
  rebecca.couto@lw.com

- **Asheley G Dean**
  asheley.dean@hoganlovells.com,LA-Records@hhlaw.com,dolores.valencia@hoganlovells.com

- **Christy W Goodman**
  c.w.goodman@sbcglobal.net

- **Ellen Anne Gusikoff Stewart**
  elleng@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Bety Javidzad**
  bety.javidzad@hoganlovells.com,LA-Docketing@hoganlovells.com

- **Stephen M Knaster**
  sknaster@orrick.com

- **James N Kramer**
  jkramer@orrick.com,jthompson@orrick.com

- **Amy A Laughlin**
  alaughlin@orrick.com

- **Teodora Manolova**
  tmanolova@orrick.com

- **Elizabeth A Moriarty**
  elizabeth.moriarty@hoganlovells.com,pdelarosa@hhlaw.com,bea.goncalves@hoganlovells.com,cmelias@hhlaw.com

- **Pamela S Palmer**
  pamela.palmer@lw.com

- **Darren J Robbins**
  e_file_sd@rgrdlaw.com

- **Julie A Shepard**
  julie.shepard@hoganlovells.com,LA-Docketing@hoganlovells.com,LA-Records@hoganlovells.com

- **George A Shohet**
  georgeshohet@gmail.com

- **Richard Lee Stone**
  richard.stone@hoganlovells.com,maria.reyes@hoganlovells.com

- **Michael D Torpey**
  mtorpey@orrick.com

- **David T Wissbroecker**
  dwissbroecker@rgrdlaw.com,e_file_sd@rgrdlaw.com

21

Case 2:06-cv-03731-GHK -SH   Document 330   Filed 03/21/11   Page 28 of 28   Page ID
#:10793

**Manual Notice List**

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Erin Bansal**
Orrick Herrington and Sutcliffe
405 Howard Street
San Francisco, CA 94105

**Stephen J Oddo**
Lerach Coughlin Stoia Geller Rudman and Robbins
655 West Broadway, Suite 1900
San Diego, CA 92101

2 2