# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF DOCUMENT DISCREPANCIES

FILED
CLERK U.S. DISTRICT COURT

MAY 17 2011

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

To: ☒ U.S. District Judge / ☐ U.S. Magistrate Judge   King

From: C. Powers , Deputy Clerk   Date Received: 5/13/11

Case No.: CV06-3731   Case Title: Jim Brown v. Brewer et al

Document Entitled: Reply Memorandum In Support of Objector and Motion to Intervene to Add New Matters and Claims for Benefit of Class

Upon the submission of the attached document(s), it was noted that the following discrepancies exist:

☐ Local Rule 11-3.1   Document not legible
☐ Local Rule 11-3.8   Lacking name, address, phone and facsimile numbers
☐ Local Rule 11-4.1   No copy provided for judge
☐ Local Rule 19-1   Complaint/Petition includes more than ten (10) Does or fictitiously named parties
☐ Local Rule 15-1   Proposed amended pleading not under separate cover
☐ Local Rule 11-6   Memorandum/brief exceeds 25 pages
☐ Local Rule 11-8   Memorandum/brief exceeding 10 pages shall contain table of contents
☐ Local Rule 7.1-1   No Certification of Interested Parties and/or no copies
☒ Local Rule 6.1   Written notice of motion lacking or timeliness of notice incorrect
☐ Local Rule 56-1   Statement of uncontroverted facts and/or proposed judgment lacking
☐ Local Rule 56-2   Statement of genuine issues of material fact lacking
☐ Local Rule 7-19.1   Notice to other parties of ex parte application lacking
☐ Local Rule 16-6   Pretrial conference order not signed by all counsel
☒ FRCvP Rule 5(d)   No proof of service attached to document(s)
☒ Other: ① Party is terminated ~~② No Application to intervene~~ ② No proposed order

Note: Please refer to the court's Internet website at www.cacd.uscourts.gov for local rules and applicable forms.

## ORDER OF THE JUDGE/MAGISTRATE JUDGE

IT IS HEREBY ORDERED:

☐ The document is to be filed and processed. The filing date is ORDERED to be the date the document was stamped "received but not filed" with the Clerk. Counsel* is advised that any further failure to comply with the Local Rules may lead to penalties pursuant to Local Rule 83-7.

_____
Date

_____
U.S. District Judge / U.S. Magistrate Judge

☒ The document is **NOT** to be filed, but instead **REJECTED**, and is ORDERED returned to *counsel. *Counsel shall immediately notify, in writing, all parties previously served with the attached documents that said documents have **not** been filed with the Court.

5/17/11
Date

_____
U.S. District Judge / U.S. Magistrate Judge

*The term "counsel" as used herein also includes any pro se party. See Local Rule 1-3.

Brad Greenspan, Pro Se   #1236
264 South La Cienega,
#   Beverly Hills
310- 345-1983
bspan.@earthlink.net

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

1
2
3
4
5
6

7   JIM BROWN                                    )   CASE NO: 2:06-cv-03731-GHK-SH
8                                               )
                              Plaintiff,        )   CLASS ACTION
9           v.                                  )
                                                )   REPLY MEMORANDUM IN SUPPORT
10  BRETT C. BREWER, et al                      )   OF OBJECTOR AND MOTION TO
                                                )   INTERVENE TO ADD NEW MATTERS
11                            Defendants         )   AND CLAIMS FOR BENEFIT OF
                                                )   PLANTIFF CLASS
12                                              )
13                                              )
                                                )
14                                              )

15
16                                                  DATE: May 16, 2011
                                                    TIME: 9:30 a.m.
17                                                  COURTROOM: The Honorable George H.
                                                    King
18
19
20                                                  4:45 PM
21
22                                                  RECEIVED
                                                    BUT
                                                    NOT FILED
23
24                                                  MAY 1 3 2011
25
                                                    CLERK, U.S. DISTRICT COURT
26                                                  CENTRAL DISTRICT OF CALIFORNIA
                                                    BY              DEPUTY
27                          1
28
                        COMPLAINT

RECEIVED AND RETURNED
CLERK U.S. DISTRICT COURT
MAY 1 7 2011
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

Shareholder and member of unincorporated association of issuer

shareholders which includes plantiff Jim Brown, respectfully submits this reply

memorandum in support of Objector and class member David Wollins. Wollins objected

among other point to the following in his April 21, 2011 objection Letter:

> *"The settlement also is not fair because several claims have been omitted to
> date from being entered by Class Counsel which would make the current settlement
> offer even more inadequate. These include the fact that Intermix was deprived of
> closing a Search Engine Partnership with Google prior to the shareholder vote and
> that Intermix failed to purchase 100% of MySpace prior to the shareholder vote, likely
> breaching the MySpace Stockholder Agreement and the Merger Agreement"*

Plantiff counsel in its May 2, 2011 reply memorandum does not reply or address any

of the factual points brought up by objector. Instead, Plantiff counsel seeks to attack

credibility of the objector, Mr. Wollins. In fact, Mr. Wollins is well qualifed to make an

objection as a shareholder. Wollins is a Colorado based litigator with 10X+ the number of

shares of the Class representative Brown. In fact Wollins is still owed money from

defendants from owning original stock certificates since 1999 prior to Issuer's reverse merger

with NABCO shell which was renamed eUniverse on or about April 1999. Therefore,

Wollins is bona fide shareholder and despite class counsel's attempt to impugn the credibility

of the objector by raising my facilitation of fellow shareholder's exercising their rights, is

troubling.

The Court should consider a stay of the settlement hearing to fully consider the new

evidence submitted herein and new claims for the benefit of shareholders as well as give

defendants an opportunity to respond to see if the court should not according to federal law

take advantage of the ripeness of the evidence and case to convert what appears able to be

conformed to summary judgement in whole or piece meal. See *Robert Smith v. EVB (10-1873)*

> *"Normally, a court may not consider documents submitted outside the complaint in ruling on
> a motion to dismiss, unless the court converts the motion into one for summary judgment.
> Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396–97 (4th Cir. 2006); see Fed. R. Civ. P. 12(d) ("If
> on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented and not excluded by*

2

COMPLAINT

*the court, the motion must be treated as one for summary judgment under Rule 56."). In this case, because the Court considers documents outside of Plaintiff's AmendedComplaint, and because the nature of Plaintiff's 2004 and 2006 Loans is a question of fact, the Court will treat Defendant's Renewed Motion as one for Summary Judgment. "*

First we provide the following matters to be heard before the settlement hearing and even if no other matter is found in our favor we urge the court to force the class counsel to exhibit the minimum level of disclosure due a group of public shareholders who have just been victims of poor disclosure, omissions, misstatements, etc.

Current RGRDLAW LLC firm should first explain and be called to have good justification for following actions or be disqualified or relieved for good reason found herein.

i) Knowing the damage periods to be July 18, 2005 and August 25, 2005, and knowing that institutional or many investors would after being damaged in a capped M&A at artificially low price, decide to sell off their shares in disgust rather then wait around to be defrauded again for the time value of their money. And these investors were just as damaged as current defined shareholders who held thru September 30, 2005 (in addition to being holders thru the proxy August 25, 2005 omissions and bad disclosure). In fact, looking at the chart that the plantiff counsel provided in 2006, it appears a strong case could be made that the majority of the damaged institutional investors all sold out after being damaged and lack class standing. And this could significantly create a windfall for plantiff counsel thru more unclaimed monies via more "up and down" shares existing thru this adverse definition that was selected by class counsel in the certification stage. But those institutional investors never got notices because they did not qualify for the initial list based on surely what RGRDLAW LLC thru its research and empiracle studies has come to realize is a trait or need for liquidity for institutional investors. And perhaps an opportunity for Class Action counsel to stack the deck in their favor in more then one way when requesting this and then not revising the

3

COMPLAINT

1    definition in a manner to try to include institutional investors when looking at

2    evidence that shows a clear trend which conforms with the plantiff counsel's

3    complaint that the injuries and damages were July 18, 2005 and August 25, 2005

4    primarily.

5

6        According to Exhibit #2, and on information and belief, this is a list of Issuer

7    institutional  holders during the period leading up to the September 30th

8    shareholder vote and issuer's  security being terminated. Looking closely at the

9    document, the court should prior to final  settlement hearing make class counsel

10   explain its rationale for its current definition in the face  of the trend data in

11   exhibit #1 (noting that this same firm provided the data to Mr. Greenspan)  and if

12   necessary provide for an equitable  revised class  certification to include these

13   institutional investors who held shares thru the under 14(a) and then giving them

14   proper notice  of the settlement and an opt-out opportunity.

15

16       ii) Plantiff counsel should be disqualified and all motions including to ban shareholder

17   Brad Greenspan and ability to bind the class in the current settlement agreement vacated.

18   Plantiff Counsel RGRDLAW LLC with the same lawyers while at the Lerach firm signed and

19   agreed to abide by Exhibit #3, specifically paragraph 17(c ) . This clearly is stated in the

20   document signed by Steve Oddo of Lerach Coughlin Stoia Geller Rudman Robbins LLC on

21   January 12, 2006. Mr. Oddo is a member of RGRDLAW and a beneficiary of the legal fees

22   If they continue to be class counsel. The rest of the principals of RGRDLAW are almost

23   identical to the principals operating the entity that entered into this agreement precluding them

24   From being in the federal class action. In addition because the other signatories are Orrick and

25   HHLaw, it raises troubling conflicts for the RGRDLAW firm to continue to be class counsel.

26

27                                      4

28                               COMPLAINT

In addition, the firm has also breached its duty of candor to the court. The court should

consider Rule 11 sanctions be applied to all parties based on investigation by court and

responses of parties.


     iii)     In addition, according to the evidence and email thread below,

RGRDLAW has violated and breached its agreement with Mr. Greenspan and

also damaged shareholders by eliminating a fact witness and certain claims thru

its actions on or around May 2009 when RGRDLAW either directed an adverse

action against the current member of the class and core contributer to the Federal

Class Action. At the very least, RGRDLAW must disclose what it received in

return for eliminating an asset of the Class. As every deal has consideration

passed both ways. However, a few weeks after Mr. Greenspan was eliminated to

be able to advance new claims or existing claims, RGRDLAW agreed to omit

from the complaint multiple defendants for the benefit of the defendants clearly.


     iv)     That RGRDLAW LLC breached its fiduciary duty by both

agreeing to jointly stipulate a motion before settlement discussions to ban Mr.

Greenspan including knowing and failing to disclose the secret deal that has not

been disclosed that HHLAW references in their May 2009 email (Exhibit #1- The emails

and timeline of the RGRDLAW and Greenspan relationship which has been restated.

Greenspan brought Brown to RGRDLAW. RGRDLAW has misstated that Brown sought

out RGRDLAW. This is factually and patently false. Greenspan requested Brown to get

involved who knew nothing of class action lawsuits at time in 2006) RGRDLAW

LLC further breached their fiduciarty duty and duty of candor by stating that Mr.

Greenspan was one of plaintiffs that received expedited discovery (at the same

time as Class counsel in fact received it in august 2005) before filing his 2006

5

COMPLAINT

amendment.

In fact Mr. Greenspan specifically did not get access to this expedited discovery until after it was too late to review or use the benefit of research and rigor to make informed conclusions. Therefore, by plantiff counsel knowingly seeking to define Mr. Greenspan's time and date of receipt of the "expedited discovery", when plantiff counsel knew this was not accurate nor true, is prima facie evidence of puffery or outright fraud and either one makes them instantly adverse to member of class and therefore, their ability to jointly stipulate the motion should be vacated because it contains an untrue statement.

DATED:       May 13, 2011                    Respectfully submitted,

                                             _____
                                             Brad Greenspan

6

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SIGNIFICANT DELAY IN ACCESS TO DISCOVERY FOR PLANTIFF GREENSPAN**

14) In fact, I never got to review any discovery even the "expedited discovery' prior to my complaint filed after the post - August 25, 2005 Proxy complaint being filed in February 2006, in this update from my counsel  on March 1, 2006, attorney Huff informs me that the defendants *"plan to file demurrers to our amended complaint and will ask for a stay of discovery pending resolution of the demurrers. "* (Exhibit #GG)

15) This email evidence relates back to fact that as of April 3, 2006 I had still not got a chance to review the same limited discovery that had been reviewed and in the hands of both State Class action firms since September 2005. (Exhibit #GG)

16)     Defendants refuse to provide discovery in State action even though I had not gotten the benefit of any discovery at this juncture. My attorney Huff forwards me a "draft response to Stone's letter refusing our request for discovery." In the letter my attorney states, "I write in response to Mr. Stone's April 6, 2007 letter that declines our request for discovery in this case. " and "Plnatiff designed his limited discovery requests to focus on the key issues in the case in order to move the case along while the demurrers are pending. Plaintiff's first request is for documents relating to MySpace's financial performance, projections, and valuation.
(Exhibit #AAA1-5

7

COMPLAINT

**HISTORICAL BACKGROUND AND CONTRIBUTIONS BY SHAREHOLDER AND FACT
WITNESS AND EXPERT WITNESS**

7.      LerachLAw's (now RGRDLAW LLC) Wissbroecker emails Greenspan's research
consultant on June 8, 2006 at 8:10pm with subject *'Intermix'* and states *" Joanne, Please advise when
we can the documents you discussed with Steve Oddo yesterday. "* and *"In addition, we need to find
out quickly whether Mr. Greenspan's associate wants to file the complaint. Otherwise we will not
have a client and cannot go forward. Please call if you have questions. David Wissbroecker"*
*(Exhibit F)*

**BRAD FINDS AND DELIVERS A STOCKHOLDER TO RGRDLAW IN 2006 AND
RGRDLAW WOULD NOT BE INVOLVED IN CASE ACCORDING TO THEM WITHOUT
LARGEST SHAREHOLDER EFFORTS OVER YEARS TO BENEFIT CLASS AND CLASS
COUNSEL.**

8.      On June 9, 2006 at  3:17PM Greenspan emails Lerach Law firm's Davis Wissbroecker
and Oddo with subject *'Good news- Jim Brown'*, and states *"Talked to his broker he bought 1000
Intermix shares on July 13, 2000 at $5.50 per share and held them thru tender.   Brad"* (EXHIBIT
#FFFF)

9.      On June 9, 2006 at 4:15PM, Lerach/RGRDLAW's Wissbroecker emails Greenspan in
reply of above email and states *"This is good news. We'll talk in more detail next week. Thanks."*
(Exhibit #44)

10.     On June 12, 2006, Wissbroecker of LerachLaw emails Greenspan and Sweeney with
*Subject 'Draft Complaint'* and states *"Brad and Joanne, I have drafted a complaint that alleges*

8

COMPLAINT

1  *violations of section 14(a) in connection with the nol and merger issues. It is attached Still in rough*

2  *draft form. Your input is appreciated. David Wissbroeker"* (Exhibit #FF)

3

4  11. This email from Huff to HHLAW and defendants counsel on July 11, 2006, is evidence of

5  the experts I consulted with and who finally reviewed the discovery allowing the benefits to

6  accrue to the Federal Class Action complaint. My counsel states,

7  　　　　　*"I write to notify you that Plantiff Brad Greenspan has retained Daniel*
*Fischel of Lexecon as an expert witness and Christian Tregillis of Kroll*

8  　　　　　*Financial Advisory Services as a non-testifying consultant." And "we*
*plan to make confidential discovery material available to them and*

9  　　　　　*their staff by Friday, July 14, 2006. "* (Exhibit #ee)

10

11  　　*11.* On August 18, 2006, Huff emails Greenspan, Hansen, Fischer and Richardson from

12  KHHTE Law Firm and Davis from Quinn Emanuel and states in an email with Subject: '*14A claim'*,

13  *"I have received and analyzed the Lerach proxy complaint for the 2005 14A claim. Given that the*

14  *deadline for filing something is August 24 (one year from the 2005 proxy), we need to decide how to*

15  *proceed. Can you guys do a call this afternoon sometime?"*

16  (Exhibit #455)

17

18  12.　On August 21, 2006 at 2:01PM, Greenspan On August 21, 2006, after emailing *"Hi Darren-*

19  *Wanted to see if we could touch base today on some 14a matters. ",* then I call Darren Robbins of

20  Lerach Law and Stephen Oddo and discuss working together on the Federal 14(a) claims I had finally

21  understood existed after reviewing discovery which had been delayed and obstructed as we now have

22  come to realize. (exhibit #FF)

23  **THE TIMELINE CUTOFF OF "EXPEDITED DISCOVERY" IS SEPTEMBER 9, 2005**

24  13. This copy of a letter from Latham & Watkins to Kreindler & Kreindler the co-counsel in the

25  State Class action shows the timeline of when discovery was created and what periods such discovery

26  covered. The evidence shows the period from September 11, 2005 thru September 30, 2005 was thus

27  　　　　　　　　　　　　　　　9

28  　　　　　　　　　　　　COMPLAINT

1    outside the scope of the expedited discovery which was the only discovery provided to the Class

2    Action firms in the State matter. And it was the only discovery I got to review after being delayed

3    access until approximately April 2006.  Therefore, the State Class nor myself ever got

4    access to discovery during this period which contained a second bid made to Issuer backed by

5    Viacom and the largest common stockholder and 10% holder and also what clearly is a Blasius

6    violation to effectively serve as a poison pill (Exhibit #FFF)

7

8    13.

9

10

11   **BRAD AND HIS LAW FIRM ARE CORE CONTRIBUTORS TO THE**

12   **FEDERAL 14(a) AND ARE TOLD IT'S A CASE BRAD WILL BE MEMBER OF CLASS**

13   **AND PROTECTED BY LERACHLAW OR FUTURE FIRMS PART OF CLASS EFFORTS.**

14

15   *12.*      In August, Greenspan sends many emails with facts and evidence created or discovered by

16   Greenspan or his team of researchers and forensic experts like Mr. Christian Tregillis of Kroll, all for

17   the benefit of Federal Class of Shareholders with Lerach lawyers then getting the benefit of making

18   the Federal 14A claim stronger and ultimately successful, an example is this email sent August 21,

19   2006 to LerachLaw's Darren Robbins and Steve O with Subject 'FW: **Grab.com -Another piece of**

20   **the puzzle unlocked'** which forwards a July correspondence between Kroll, Greenspan, and other

21   researchers on a piece of evidence.

22

23   12.

24

25   12. This email exhibit #FF relates back to how I had discussions with my own outside counsel that

26

27                                             10

28                                      COMPLAINT

1  the 14A claims were separate from the State Class action in terms of claims and issues, On August

2  22, 2006 at 2:39PM, Kevin Huff emailed me stating,  *"Brad: Gary and I would like to talk to you*

3  *this evening to go over the strategy regarding the Lerach complaint in the 14A case."*

4  (Exhibit #ff)

5

6  **INITIAL EFFORTS TO FIX RGRDLAW'S 900% ERROR**

7  13. On August 22, 2006, Greenspan reports to his attorney Kevin Huff in email with subject:

8  "Lerach", *"They said they would be willing to file Amended 14a adding ibanks.   I said I would get*

9  *them some help/info from You on fixing the problem related o the 900% Growth.   At the same time i*

10 *said Kroll would provide soem info on the f airness opinon problems. I am working on getting this*

11 *together. Can you try to follow up with Lerach tomorrow to get thigns going...thx Brad"*

12 (Exhibit #gg)

13 *13.*      On August 23, 2006 at 10:21AM, Greenspan's attorney Kevin Huff emails RGRDLAW

14 formerly Lerach Firm and states, *"Randy: We are working on edits to the complaint, which we will*

15 *have for you early this afternoon. We are getting some information from Brad's expert and will add*

16 *anything that is juicy from that."* (Exhibit #AAF)

17

18 14.      On August 23,2006 at 1:44PM, Huff emails Randall Baron of RGRDLAW formerly Lerach

19 Law, and states, *"Attached are our proposed edits in redline format. Once you've had a chnace to*

20 *review these, I would like to have a quick call to discuss a couple of these edits. Also, Brad is working*

21 *on some materials from our expert for you to consider. Thanks KBH"*

22 (Exhibit #AA)

23

24 *15.*      August 24, 2006, Huff forwards email to Greenspan where Huff emails LerachLaw's baron

25 with Subject: 'Did it get filed?' and Baron replies on same day, *"Yes".*  In reference to the 14(a)

26 Federal Lawsuit. (Exhibit #44)

27                                          11

28                                    COMPLAINT

16.    On August 25, 2006 at 9:50AM, Huff emails me copy of amended complaint filed by Lerach

16.    I email my lawyer Kevin Huff stating,

"The LA City Atty was forced thru discovery to pass on the emails I sent to the LA City Atty which I provided to help them" and

*"So , I think the best route here is to have you contact Intermix's atty – Rick Stone and indicate We think they are attempting an end a round to start discovery via this deposition of me and Thatr we will only allow discovery to start when Judge Kuel allows us to begin deposing their guys, etc." (Exhibit FF)*

16.    Further evidence in September 2006 of harassment by HHLAW and Intermix, Inc. after I assist LA City Atty with their litigation against Intermix. As Huff states in email to me,

*"Intermix has filed a motion to compel Brad to produce documents and attend his deposition in the L.A. City Attorney case. As they threatened in their letter, they are also seeking sanctions of "at least" $5,000 for their time"* (Exhibit #FF)

16.    On September 23, 2006, I spend significant time educating Lerachlaw and Darren Robbins about the history of Issuer and my involvement, and giving Robbins critical information and detail to be able to plead the specifics needed to move the Federal Class action case forward  (Exhibit #444)

**2007: RGRDLAW PRESSURES ME TO DONATE TO THEIR FRIEND JOHN EDWARDS IN 2007**

16.    January 10, 2007, email from Greenspan to Robbins "Ok..so u recommend I come to the dinner at 7:45? And "Pilar- I am going to bring the paperwork filled out with me and a check." Greenspan replies, "No…planning to come…emailed ur sec and said I would fax in tomorrow"

12

COMPLAINT

17.   On January 10, 2007, Subject 'Re: John Edwards' email to Robbins of Lerach/RGRDLAW firm, and Greenspan states *"Darren - We have a biz issue with my company that has put me into some extended meetings today so I can't make it down to SD this afternoon. I apologize and really wanted to meet with you and Senator Edwards. I will of course honor my commitment on the donation and will get this filled in and faxed to Pilar tomorrow and a check sent down for $2100 Best Regards-Brad"*

18.   Robbins replies via email on January 10, 2007 to Greenspan,  *"I'm sorry you were unable to come. Edwards is a great guy and your willigness to help is much appreciated."*

19. On January 24, 2007, Greenspan sends email to LerachLaw's Darren Robbins now RGRDLAW and Greenspan's Irell attorneys, with subject 'Conf. Call with Irell', and states

> *"Darren- Hope you are doing well!  Meet Greg Smith who is heading up my appeals team from Irell. When are you and your team available to speak with Myself and the Irell team?" and "Also- do we have a 'common interest' arrangement in place? I believe we do but want to confirm (Irell asked) Thx Brad."* (EXHIBIT-FF)

**THE COMMON INTERESTS AGREEMENT AND UNDERSTANDING**

20.       On January 25, 2007, Greenspan's attorney Smith emails Robbins of RGRDLAW with subject *'Common interest agreement'* and states,

*"Darren, please sign and return by pdf. I look forward to consulting with you on this matter."*

13

COMPLAINT

1    *21.*    The exhibit  #FFF which is a copy of the Common Interest Agreement that was executed

2    between RGRDLAW and Irell law firm for my benefit and RGRDLAW's shareholders they

3    represented in both the state and federal matters. The copy I have is not signed by either party, but its

4    my understanding and belief that both firms executed a Common Interest Agreement in similar form

5    or fashion to this attached version on or about January 25, 2007. The agreement is addressed to

6    Darren J. Robbins of Lerach Coughlin Stoia Geller Rudman & Robbins and states:

7        "We understand that your firm represents plaintiffs in the actions entitled *In re*
8        *Intermix Media, Inc S'holder. Litig., Los Angeles Superior Court Case No. BC
         338945, and LeBoyer v. Greenspan, et al., Central District of California Case No.*
9        *CV03-5603-GHK(JTLx)." And*

10       *"In light of the common interest between our respective clients, we have each agreed
         to share certain information regarding these matters." And*
11

12       *"In light of the parties' common legal interests, all communications between us
         regarding these matters are protected by the common interest privilege." and*
13

14       "Each of us, on behalf of ourselves and our respective clients, agree that we will treat
         all information exchanged as confidential and privileged, and that we will not disclose
15       such information to any third party, or take any other action that might waive any
         privilege applicable thereto. Each of us further agrees that such information may be
16       used solely in connection with the pending matters discussed above."

17

18   22.    The agreement further states,

19
20       "Any information shared pursuant to this agreement may not be used at any time
         against the party that provided such information, even if the interests of our respective
21       clients become adverse during the court of the matters discussed above."

22

23       23.   We then begin significant information and work product  exchange in 2007 and 2008
     for benefit of Federal Class Action complaints being filed , for instance, on May 7, 2007 Greenspan
24   emails Robbins of LerachLaw and Greenspan's new attorney John Hueston of Irell with subject,
     'Touch Base' and states,
25

26

27                                        14

28                                    COMPLAINT

1
2
> *"Hi Darren- Hope you are well... Wanted to see if you and anyone focused on Intermix case could Speak with John and I sometime this week or next to touch base on where things stand/thoughts,etc.* (Exhibit #fff)

3
4
5
22. On June 20, 2007, I emailed Darren Robbins, Subject "Myspace" and state,

6
7
8
9
> *"Darren- I am sure u heard News Corp is trying to swap Myspace for 25% of yahoo...Valuing Myspace at $12bln+, But the play is that the combined entity would fly north in value."* And *"I think we need to combine our intellect/resources/ideas and push thru to capture a big chunk of this $11.7bln bubble stolen from shareholders.   You guys are the best in this area, so I hope you aren't gonna settle for peanuts here because we get to a JURY and it's a HUGE HUGE win.   I am committed to this case! "*
> (Exhibit #FFF)

10
11
12
13
14
23. On July 25,2007, Robbins of Lerach Law emails Greenspan and Greenspan attorney John Hueston stating *"But Brad- You always want to be more aggressive--but remember the better part of valor is discretion. And we will turn the tide here through our valor and determination"*

15
16
17
18
19
**25.** On August 14, 2007, Greenspan emails RGRDLAW's Robbins, Subject 'Intermix' and states,

20
21
22
23
24
25
26
*"Hi Darren- Our date to file appeal on Intermix is August 23rd + a 15 day grace period. (we have already pushed back via an extension before this) We are just about done with our appeal and can file within this period. Your appellate guy Kevin Green, has asked us to support a 60 day extension for Lerach because he hasnt had enough time because of Baby/Travel). I would prefer to give you guys a copy of our brief and work closely with you guys on main issues to get you up to speed so we can both file within the Aug 23 + 15 day period. My Irell attorneys hae agreed to this. Are you onboard? As I really just think pushing this out another 60 days is bad for everyone."*

27
28

15

COMPLAINT

24. RGRDLAW  requests favors from Common Interest Partner, for instance,
Darren Robbins wrote on August 20, 2007,

"You good on the 30 days?". And Robbins is requesting we agree to
extension of time for his legal team to file their appeal brief because they are
likely to miss deadline as they have not kept up with Greenspan's appeal in
State Class Action consolidated with Greenspan's complaint.

25.     Therefore, I agreed to give this extension to RGRDLAW to help them and
the Shareholder Class and on August 20, 2007, Greenspan replies to
RGRDLAW, "*Yes..dont love it as I am very eager to keep things moving so
I am still alive to see us get to a Jury stage (maybe I am naïve :) )*

26. Robbins confirms and accepts the exchange of more time for supporting
'trying' the case in front of a Jury if the settlement offer from defendants is
below the damages amount by any material measure, as Robbins confirms
on August 20, 2007 via email,

*"We are but small men clothed in loincloth and holding a proverbial slingshot up
against a formidable adversary.   Yey we have justice on our side     However, given your
youthfulness and our commitment to justice we should prevail at least a year or two
before your eulogy."*

(Exhibit #fff)

44.     On October 17, 2007 12:37 PM, RGRDLAW's Kevin Green emails my attorney at
Irell Smith and states,

*"Attached is the current draft of our opening brief in the Intermix appeal. " and*

16

COMPLAINT

*"As discussed previously, we'd appreciate seeing Mr. Greenspan's brief in advance to ensure consistency of the arguments. If you have any comments on our draft, please let me know.*

222. On October 17, 2007 at 9:42PM PST I email Kevin Green and Darren Robbins of CSGRR and Smith of Irell, Subject: '900%' and stating:

*"Hi Kevin & team-   I want to see if we can jump on one issue that haunts me and all get on same page of how to discuss/talk about it."* And

*"1) if you look at last Q file by Intermix.  Yes,  Net Income was $864k vs. year before loss    But there is a $1mln one time GAIN to the Quarter income line form the GAIN ON SALE OF SKILLJAM. Therefore without this intermix would have LOST MONEY from continuing operations."*  And

*"But the 900% seems to be a mistake and gives a freebie to Intermix that they did something to tip off shareholders to how well Myspace was doing."* (Exhibit #FFF)

23.      On October 18, 2007, I ask my Irell lawyers Smith and Wang to make sure they contact Class counsel to help them fix the 900% claim error I had discovered. I emailed Smith at 9:56PM, Subject: ' Re: New draft' and stated,

*"Also-perhaps you guys can follow up with Kevin and get clearity on th 900% issue and hopefully we have fixed an error by them which could hurt everyone."* (Exhibit #AA)

17

COMPLAINT

27. Exhibit #AA is an October 19, 2007 email from Irell's Greg Smith to Kevin
Green of predecessor to RGRDLAW, CSGRRLAW, Subject: 'Comments to
brief', stating,

> *"I've read your brief, and for the most part like it, especially
> how you argue the facts. I have a few comments."* And
> *"3. P 37 – 10Q disclosure of 900% jump. I think it important
> to emphasize that this disclosure is meaningless,"* And
> *"5. You might make more of Rosenblatt's conflict. You refer
> to his profit from the deal - $20 million – but I think the better focus
> might be on how much of that he wasn't legally entitled to ($9.4
> million),"* (Exhibit #)

25. OCTOBER 25, 2007, Greenspan's appeal counsel Greg Smith
emails Greenspan with Subject 'FW: Greenspan V. Intermix' and
states,

> *"Brad, Ive had a number of communications with
> Kevin Green about his class brief and, of course, got him a
> copy of our brief last week. I'm impressed that after
> looking at our brief and hearing our comments, Kevin
> revamped his brief, jettisoning much of his approach and
> adopting ours. His earlier draft tended to track the
> arguments made in the trial court. His new draft, after
> seeing our brief and hearing our comments, highlights our
> arguments, and even refers the court to our brief."*

28.     On December 26, 2007 I email Darren Robbins,and state
"Hey call me  Lots of shocking new info for u!  We may break
Myspace case wide open." (Exhibit #33)

18

COMPLAINT

26.     On February 6, 2008, Wissbroecker of RGRDLAW firm
emailed Greenspan and stated,

*"Brad, Hope all is well.    Attached us a draft of the Second
Amended Consolidate  Complaint that is due to be filed on Friday,
February 8, 2008, per Judge King's Order of Jan 17, 2008. Let us
know if you have any comments.  David Wissbroecher   Coughlin
Stoia Geller Rudman & Robbins LLP"*

27. March 29, 2008, Wissbroecker sends Greenspan email with
Subject *'RE: Summary of ECF Activity'* and states,

*"Here's our opp in pdf in case you weren't able to access it."*

*28.*     On July 17, 2008, RGRDLAW's Wissbroecker emails me
and states,

> *"we have good news to report on the Intermix
> federal action. Judge King denied defendants' motion
> to dismiss on the 2005 Proxy and Breach of Fiduciary
> Duty claims. So we can now finally begin to move
> this litigation forward. "* (Exhibit #44)

28.     I soon discover that RGRDLAW had not fixed the 900%
error in the State Class Action and I email them this point on
November 20, 2008, Greenspan in Email with Subject 'RE:
Intermix Federal Action' states,

19

COMPLAINT

*"Gentlemen- Hope you are well. I read the State appeal decision
briefly.   I need to educate you guys on facts to best of my
knowledge for Federal ASAP to best benefit the class.   David-lets
try to talk today. I believe you are deposing Jim Brown next week.
And*
 *"I am really disappointed that you guys couldn't correct your
inaccurate assertion about Net Income that significantly hurt the
case for everyone."*
(Exhibit)

29.      I created a powerpoint that I sent RGRDLAW showing
that they had failed to fix the 900% error in the State Appeal and
the 2008 Amended Complaint in Federal Class Action as well as
the previous complaints filed in both the State and Federal Class
Actions.

    *i) In the State Appeal filed on October 25, 2007, they state,
"Here, defendants were aware that Intermix was on track to
report a 900% one-year jump in net income. This reflected the
meteoric growth impact and potential of MySpace.com"*
(Exhibit)

    *ii) In the Second Amended Federal complaint, they states in
paragraph 118, "Defendants negotiated the Acquisition at a tie
which they were aware (i) that Intermix was on track to report
1q06 net income **900% greater than 1q05"***

This was one of core points the State Judge used as reason to

dismiss case, because the 900% increase in net income was

disclosed by defendants in SEC filings, **but** it was from a one time

gain unrelated to MySpace, Inc. which I send several slides of

where and when this one time gain was disclosed in prior Issuer

20

COMPLAINT

*press releases and related Issuer disclosure. One example of such*

*a slide is Exhibit $$*

*39.*

29. February 23, 2009, In email subject *'Re: Intermix Federal
Action',* Greenspan emails Wissbroecker, Baron, and Steve Oddo
and states:

*"David -    We need to set our meeting this week.  I am becoming
increasingly uncomfortable with current knowledge base and
ability to get your arms around the key material issues of case.
Compounded by that it doesnt seem like you are concerned that
you dont understand many of core elements of
history/transgressions." And*

*"And if I cannot get comfort from you guys that you really want
to be involved in this case, I am prepared to march into court with
current lead plantiff (Brown), and indicate to Judge King we need
an additional counsel assigned to help make sure Shareholders
are represented to reasonable degree here.    Thanks    Brad
Greenspan    p.s.  here is background on some of my recent
projects below there are really few better entrepreneurs in
marketplace today from ROI perspective. So i should be EXPERT
WITNESS.    Note: I created Myspace and I was largest injured
shareholder."*

*28.    On February 24, 2009, in reply to Greenspan, Randall
Baron emails Brad and states,*

21

COMPLAINT

*"Brad: On a related note, you should call me. I am afraid you inaccurate perception of the nature of our relationship on this case. "*

29. March 6, 2009, Greenspan sends additional evidence via March 6, 2009 email to Baron, Wissbroecker, Oddo, Atwood, Beard, Lee, Subject: *'good emails/docs', stating:*

> *"For your review with explanation below I will have longer email to you guys In a bit with some key points but wanted to get you these key emails to start" and "May 30th EMAIL- This email is part of proof story that the whole FEAR OF OPTION AND FEAR OF VIACOM TRYING TO MAKE OFFER ON MYSPACE = ALL (REDACATED.BS). This is an imaginary story of BOOGEYMAN that is not real." and "It worked perfectly because YOUR LEGAL TEAM TODAY STILL BELIEVES IT AND CANT FIGURE IT OUT.  I FIGURED IT OUT. I WILL HELP SPOON FEED THIS TO YOUR TEAM ULTRA IMPORTANT OR CASE RUINED"*

32.   On March 9, 2009, I sent RGRDLAW an email with helpful metrics and information to help with Federal Class Action case, email titled, 'Ad Relevance Data-Ad Impressions and the '20B'' (Exhibit #33)

*1.* March 17, 2009, Greenspan emails RGRDLAW at 12:08PM and in Subject 'Finding Brad Greenspan' states,

*"Guys-my assistant texted me that they are subpoenaing her to try to find out where I am so they can subpoena me. But/I spoke*

22

1   with an unrelated atty on unrelated matter and asked him if he
2   could help me in this situation and he remarked - "Why would
    they have to subpoena you if you are a related party, i.e member
3   of class. They would simply request you are deposed. "So I think
4   this is crazy they are dragging my former assistant in to find me
    what is phone number/contract/email of lawyer from other side?
5   And I will contact them myself I guess. thx"

6

7   2. March 17, 2009, Randall Baron of RGRDLAW emails Greenspan
8       at 12:22pm subject: "Re: Finding Brad Greenspan" and states,

9

10          "As I have said you are not a party to the lawsuit...Call
    Rick Stone and tell him you will accept service if you choose to
11   do so. I am not accepting service for you. Your friend is wrong
12   about the relationships between putative class members and
    the lawsuit."
13
    (Exhibit #ff)
14

15  **DISCUSSIONS WITH DEFENSE COUNSEL AFTER BEING**
16  **CHASED BY THEM TO BE DEPOSED**
17

18  32.      March 17, at 4:55pm Mr. Greenspan emails Moriarty of
19  HHLAW, Subject 'Service', and states,
20

21  "Elizabeth- per our call today You can provide service to my atty
22  at following coordinates   Peter Bronstein, Esq" and
23

24  "Please confirm that based on service accepted you will also drop
    subpoena for bring in in one of my former assistants" (Exhibit
25  #FFF)
26

27                              23
28
                         COMPLAINT

*33.*     On March 17, 2009, at 6:04PM, Elizabeth Moriarty emailed
Greenspan and stated

*"Brad, Yes, we will abide by that agreement. Mr. Bronstein just
accepted service of our subpoena on your behalf. We will be
taking the deposition of Ms. Cashio off-calendar.  Thank you.  Liz"*

35.     On April 6, 2009, at 6:45 PM, Moriarty of HHLAW emails
Greenspan with Shepard cc'd and Greenspans attorney Bronstein.
Subject, *'Re: Service'* and states,

*"Brad Thank you for your email"* and

*"As an accomodation, however, if you confirm that you will get
responsive documents to us by noon on April 9, 2009, we will not
move to compel the production of yoru documents. Please confirm
by 10 am tomorrow morning that you will have these documents
to us by noon on April 9, 2009."* and *"Please confirm that you will
be appearing at our office at 10am for your depoistion on April 16
so that we do not have to proceed with unnecessary motion
practices"* (Exhibit)

*36.*     Moriary replies at 5:57PM on April 14th stating,

*"Brad, We will accept your latest proposal.   Your documents must
be produced by noon on Maty 6, 2009 to Hogan & Hartson. Your
deposition is set for May 13 at 10am at Hogan & Harston. If you
do not produce documents on May 6 or appear for your deposition
on May 13, we will move to compel and seek sanctions."*
_(Exhibit #FF)

24

COMPLAINT

**CONTINUING TO AID THE FEDERAL CLASS COUNSEL FOR BENEFIT OF CLASS**

44. On April 19, 2009, I email RGRDLAW's Randall Baron, David Wissbroecker, Steve Oddeo, and describe another reason why the rationale given by defendants that Viacom would or could try to initiate a bid if it thought it was going to lose the chance to purchase MySpace, Inc. did not make sense, and I explain that an NDA agreement had been signed and quote from the agreement and note that this legal document protected Intermix from the scenario they described as rationale for not asking Viacom to make a bid on Sunday, July 17, 2005. (Exhibit #gg)

**THE CLASS ACTION COUNSEL GOES ADVERSE AND BREACHES**

37.      MAY 5, 2009 AT 2:08PM, BETY JAVISDZAD OF HOGAN & HARTSON LAW emails Greenspan, subject: *"Deposition and Documents Sobpoena" and states,*

 *"Hello, We just wanted to let you know that we are withdrawing the subpoena for the deposition of and production of documents by Brad Greenspan pursuant to an agreement we reached with Plantiffs not to call Greenspan as a witness or use his testimony in any form.   Therefore, you do not need to produce documents*

25

COMPLAINT

*tomorrow and you do not need to appear for your deposition on
May 13.   Thanks, Bety"*

37.   On May 13, 2009, at 4:25PM, Randall Baron of CSGRR emails
Greenspan, Subject: 'RE: Intermix Federal Action' and states, *"As I
have told you you are not my client."* And *"We are not "hiding"
anything but we also are not a liberty to discuss confidential
information with you as we have explained on may occasions. If you
have a strategy questions you can call me but I can't promise I will
answer them as those communications just like this is not covered
by attorney client privilege."* (EXHIBIT #DF)

38.   May 15, 2009 at 11:32PM, Greenspan emails RGRDLAW via Baron,
*"Randall & Team CSGRR please read this historical piece of
evidence carefully below.  And below see my views and where this is now
heading.   I invite any of the other attorneys inolved in this case to step
forward with their views of why i would be bad for Jury or Judge to
hear/see evidence from me about things like this."*

39.   Attached in email to RGRDLAW is a  copy of email from

me on September 27, 2005 sat 6:47pm to COO of Viacom Bob Bakish and Chief

Legal Counsel of Viacom Michael Fricklas with "subject: FW: Viacom proposal"

40.   I also state in same email,

*""Randall- I thought about some of the things you said on call. Its
my view that ou believe and are taking the case down a path of a
DIFFERENT STORY then what really factually took place."* and

*"Randall, I was talking to the senior executives that were the top 7-8 guys
in the Operating team reporting up to Board of Viacom.  See email
below"* and *"Please let me know this weekend what you are willing to do
to help fix the situation. IYou are forcing me to consider the high*

26

COMPLAINT

*likelihood that you have become compromised and conflicted here
Randall. " and "I really dont even know what options I have here Randall
with the court, but you can be sure that every hour that goes on here you
have not resolved with me what i find TROUBLING BEHAVIOR and
SETTLING FOR EVIDENCE YOU KNOW IS STALE, "*
(Exhibit #AAA)

## RGRDLAW STATES I AM MEMBER OF CLASS IN EMAIL TO ME IN 2009

40.   RGRDLAW states that I am member of Class as of May 16,
2009 via email which misleads me into believing they will not take
adverse actions against me as a member of Class. The evidence or
how I formulated this understanding came via statements made by
Class counsel on  May 16, 2005, Randall Baron in email sent to
myself with Wissbroecker and Atwood cc'd, Subject 'Re: Randall-',
states,

> " *Brad you can do what you feel you need to do.  My ego is not
> in play.  I am litigating diligently on behalf of the class and
> under the direction of the named lead plantiff.   Luckily once
> the Court certifies a class you and any other shareholder who
> would like to will have an opportunity to opt out of the class
> hire your own counsel and bring an individual action."*
> (Exhibit ##)

*41.   On May 18, 2009, at 1:27PM, after I have emailed lead plantiff
Jim Brown inquiring how this decision was arrived at and why he
allowed Class lawyers to strike secret deal to remove me as witness,
Lead Plantiff Jim Brown emails Greenspan refusing to answer and
states,*

27

COMPLAINT

1

2        "For the record, I am being told by the Lawyers that

3    there was nothing that could be done at this point anyway. I do

4    know you have the option to opt out with the shareholders who

5    are behind you on this.  Sorry this has created such anxiety.
     JB"

6    (EXHIBIT #AA)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                    28

28                               COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

29

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

30

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

31

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

32

COMPLAINT

* Los Angeles Superior Court Promptly Dismisses Ousted Euniverse CEO Brad Greenspan's Legal Challenges to News Corporation's Acquisition of Intermix/MySpace

* from Business Wire Article

* date: October 9, 2006

* LOS ANGELES -- A Los Angeles Superior Court judge summarily rejected legal challenges to News Corporation's 2005 acquisition of Intermix Media, Inc., then parent company of the wildly popular lifestyle portal, MySpace.

* The legal challenges had been spearheaded by Brad Greenspan, the former Chairman and CEO of Euniverse (renamed Intermix Media by the new management), who was ousted by Euniverse's board of directors in 2003, nearly two years before the acquisition, while MySpace was still in its infancy and in beta testing.

* On Friday, October 6, 2006, Superior Court Judge Carolyn B. Kuhl fully dismissed Greenspan's and the other former shareholders' challenges to the News Corp. acquisition, finding that the acquisition was lawful and ratified by the fully informed vote of a majority of the Intermix shareholders."

* News Corporation and Fox Interactive Media feel vindicated by Judge Kuhl's ruling and have always believed that this is merely a situation of unchecked envy leading to a loss of common sense," said Mike Angus, General Counsel of News Corporation's Fox Interactive Media.

* "We hope this ruling will finally put an end to Mr. Greenspan's repeated and unsubstantiated attacks and look forward to focusing our attention on continuing to strategically grow our business."Richard Rosenblatt, the former CEO of Intermix and former Chairman of MySpace, who replaced Greenspan, responded to the ruling, saying, "I have exercised great restraint in not responding to Mr. Greenspan's baseless and defamatory claims about the propriety of the News Corp. acquisition and my role in the transaction, with the expectation of being vindicated by a court of law. Lost in all the rhetoric is that we delivered to the shareholders, including Mr. Greenspan, a nearly 700% increase in stock price."

* About Fox Interactive Media A division of News Corp. (NYSE:NWS)(NYSE:NWS.A), Fox Interactive Media (FIM) is an integrated network of sites offering socially rich media experiences centered on entertainment, news, information and self expression. The company's network includes Internet assets from News Corp., including the highly trafficked foxsports.com (http://www.foxsports.com), americanidol.com (http://www.americanidol.com) and fox.com (http://www.fox.com). FIM also owns and operates each category leaders as MySpace.com (http://www.myspace.com), the number one social networking site on the Web; Scout.com (Fox (http://www.scout.com), a dynamic collegiate and pro sports network; and IGN Entertainment (http://www.ign.com), a network of leading gaming and entertainment sites, including men's lifestyle site AskMen (http://www.askmen.com) and premier destination for movie-goers Rotten Tomatoes (http://www.rottentomatoes.com), among others.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

34

COMPLAINT

amendment.

In fact Mr. Greenspan specifically did not get access to this expedited discovery until after it was too late to review or use the benefit of research and rigor to make informed conclusions. Therefore, by plaintiff counsel knowingly seeking to define Mr. Greenspan's time and date of receipt of the "expedited discovery", when plaintiff counsel knew this was not accurate nor true, is prima facie evidence of puffery or outright fraud and either one makes them instantly adverse to member of class and therefore, their ability to jointly stipulate the motion should be vacated because it contains an untrue statement.

DATED:      May 13, 2011                          Respectfully submitted,

                                                  Brad Greenspan

6

COMPLAINT

# EXHIBIT A

Interpix 139-000500-19

## Thomson Financial Momentum Report    8-Sep-06

| | |
|---|---|
| Security Name | INTERMIX MEDIA INC |
| CUSIP | 45885A101 |
| Ticker | MIX |
| Exchange | COM |
| Data Adjusted Through | 31-Mar-06 |
| Filings Reported In | Shares |
| Holding Size | Units |

All Market Values and Prices are shown in USDs

| Owner Name | 31-Mar-06 | 31-Dec-05 | 30-Sep-05 | 30-Jun-05 | 31-Mar-05 |
|---|---|---|---|---|---|
| UBS SECURITIES LLC | | 0 | 0 | 53,940 | 0 | 2,680 |
| 683 ASSET MANAGEMENT, L.L.C. | | 0 | 0 | 0 | | |
| ADAMS HARKNESS INC | | 0 | 0 | | 213,200 | 631,800 |
| ALLIANT GREDONOR ASSET MGMT AM | | 0 | 0 | | 415,200 | |
| ALPINE ASSOCIATES L.P. | | 0 | 0 | 1,237,790 | 0 | |
| ALPINE PTNR LP | | 0 | 0 | 173,680 | 0 | |
| AMERICAN INTL GROUP INC | | 0 | 0 | 21,179 | 78,751 | 0 |
| ACR CAPITAL MANAGEMENT, LLC | | 0 | 0 | 766,286 | 0 | |
| ARBITRAGE & TRADING MGMT CO | | 0 | 0 | 256,800 | 0 | |
| ARTIS CAPITAL MGMT L.L.C. | | 0 | 0 | 0 | 0 | |
| ASHFORD CAPITAL MGMT, INC. | | 0 | 0 | 909,509 | | |
| AXA FINANCIAL, INC. | | 0 | 0 | 12,950 | 12,950 | 12,950 |
| BANK OF AMERICA CORPORATION | | 0 | 0 | 25,206 | 35,800 | 14,700 |
| BARCLAYS BANK PLC | | 0 | 0 | 613,123 | 658,823 | |
| BNP PARIBAS ARBITRAGE SA | | 0 | 0 | 49,105 | 0 | |
| BNP PARIBAS SECURITIES CORP | | 0 | 0 | 375,174 | 0 | |
| BPI ASSET MANAGEMENT | | 0 | 0 | 1,690 | 1,500 | 261,000 |
| BUGLE INVESTMENT MGMT, L.P. | | 0 | 0 | | 26,900 | |
| BP PLC | | 0 | 0 | 0 | 51,500 | 51,60 |
| CALAMOS ADVR LLC | | 0 | 0 | 0 | 0 | 120,000 |
| CALIFORNIA STATE TEACH RET SYS | | 0 | 0 | 0 | 0 | 14 |
| CAPITAL RESEARCH & MGMT CO | | 0 | 0 | | 2,412,000 | 1,644,000 |
| CAXTON ASSOCIATES L LLC | | 0 | 0 | 550,900 | 0 | |
| CITIGROUP INC | | 0 | 0 | 0 | 0 | 31,720 |
| COAST ASSET MANAGEMENT, L.L.C. | | 0 | 0 | 27,100 | 0 | |
| COLLEGE RETIRE EQUITIES | | 0 | 0 | 219,088 | 98,355 | |
| CORSAIR CAPITAL MGMT, INC. | | 0 | 0 | 31,000 | 31,000 | |
| CORTINA ASSET MGMT L.L.C. | | 0 | 0 | | 10 | 47,241 |
| CREDIT SUISSE SECS (USA) LLC | | 0 | 0 | 440 | 0 | 47,000 |
| D. E. SHAW & CO L.P. | | 0 | 0 | 499,706 | 0 | |
| D.B. ZWIRN & CO. L.L.C. | | 0 | 0 | 323,450 | 53,594 | |
| DEUTSCHE BK AKTIENGESELLSCHAFT | | 0 | 0 | 476,207 | 473,900 | 308,900 |
| DIMENSIONAL FD ADVISORS, INC. | | 0 | 0 | 195,000 | 0 | |
| DKR CAPITAL, INC | | 0 | 0 | 0 | 0 | |
| FIREHALLS CAPITAL MGMT, LLC | | 0 | 0 | 96,000 | 0 | |
| ESG MANAGEMENT, LP | | 0 | 0 | 0 | 4,300 | |
| FLORIDA STATE BD ADMINISTRATIO | | 0 | 0 | 155,500 | 0 | |
| FORREST INVESTMENT MGMT, L.L.C. | | 0 | 0 | 19,428 | 19,428 | |
| FRANKLIN RESOURCES INC | | 0 | 0 | 0 | 27,000 | |
| FUND ASSET MANAGEMENT | | 0 | 0 | 0 | 0 | 40,390 |
| GALLEON MANAGEMENT L.P. | | 0 | 0 | | | |
| GAMCO INVESTORS, INC | | 0 | 0 | 1,315,268 | | |
| GARDNER LEWIS ASSET MGMT, L.P. | | 0 | 0 | 1,714,022 | 1,552,136 | 1,552,336 |
| GLG PARTNERS, L.L.C. | | 0 | 0 | 205,000 | 0 | |
| GOLDMAN SACHS & COMPANY | | 0 | 0 | 15,150 | 14,550 | |
| GRUBER&McBAINE CAP MGMT L.L.C | | 0 | 0 | 45,900 | 1,301,100 | 567,900 |
| HMC INVESTORS LLC | | 0 | 0 | 0 | 0 | 56,700 |
| HUSIC CAPITAL MANAGEMENT | | 0 | 0 | 0 | 0 | 36,000 |
| BM RE GREENPT I INTL | | 0 | 0 | 0 | 0 | 34,600 |
| JANSSON CAPITAL MANAGEMENT LP | | 0 | 0 | | 182,400 | |
| LEE MUNDER INVESTMENTS LTD/PLC | | 0 | 0 | 4,200 | 265,726 | 774,821 |
| LIBERTY RIDGE CAPITAL, INC. | | 0 | 0 | 300,000 | 300,000 | 280,000 |

Intermix 13F 090806.xls

| Owner Name | 31-Mar-06 | 31-Dec-05 | 30-Sep-05 | 30-Jun-05 | 31-Mar-05 |
|---|---|---|---|---|---|
| LOEB ARBITRAGE MGMT INC | 0 | 0 | 282,800 | 0 | 0 |
| LONGFELLOW INVT MGMT CO, L.P. | 0 | 0 | 176,765 | 0 | 0 |
| MAGEE THOMSON INV PARTNERS LLC | 0 | 0 | 0 | 0 | 3,110 |
| MANGAN& MCCOLL PARTNERS L.L.C. | 0 | 0 | 82,800 | 0 | 0 |
| MARINER INVESTMENT GROUP, INC. | 0 | 0 | 78,300 | 0 | 0 |
| MARTINGALE ASSET MGMT, L.P. | 0 | 0 | 0 | 20,600 | 0 |
| MELLON BANK NA | 0 | 0 | 53,362 | 4,898 | 0 |
| MERRILL LYNCH & CO INC | 0 | 0 | 3 | 0 | 0 |
| METROPOLITAN LIFE INS CO. (US) | 0 | 0 | 15,220 | 0 | 0 |
| MILLENNIUM MANAGEMENT, L.L.C. | 0 | 0 | 125,600 | 76,200 | 0 |
| MSDW & COMPANY | 0 | 0 | 306,630 | 2,222,354 | 26,210 |
| NAVELLIER & ASSOCIATES INC. | 0 | 0 | 27,960 | 29,460 | 31,035 |
| NEW YORK LIFE INV MGMT SECS IN | 0 | 0 | 13,654 | 7,220 | 0 |
| NORTHERN TRUST CORP | 0 | 0 | 137,440 | 0 | 0 |
| NUMERIC INVESTORS, LLC | 0 | 0 | 0 | 204,900 | 527,300 |
| OAK HILL PLATINUM PTNR | 0 | 0 | 200,000 | 0 | 0 |
| PADCO ADVR INC | 0 | 0 | 477 | 0 | 0 |
| PASSPORT HOLDINGS, L.L.C. | 0 | 0 | 0 | 165,700 | 0 |
| PENNSYLVANIA PUBLIC SCH EMP RE | 0 | 0 | 61,700 | 0 | 0 |
| PEQUOT CAPITAL MANAGEMENT INC. | 0 | 0 | 175,600 | 175,600 | 349,100 |
| PERRITT CAPITAL MGMT, INC. | 0 | 0 | 0 | 14,100 | 0 |
| PERRY CORP | 0 | 0 | 2,026,100 | 0 | 0 |
| PLUSFUNDS GROUP, INC. | 0 | 0 | 160,200 | 0 | 0 |
| PNC FINL SERVICES GROUP INC | 0 | 0 | 0 | 0 | 0 |
| QUAKER PTNR LLC | 0 | 0 | 0 | 443,400 | 601,000 |
| RAMIUS CAPITAL GROUP L.L.C. | 0 | 0 | 751,400 | 0 | 0 |
| RBC CAPITAL MARKETS | 0 | 0 | 66,615 | 0 | 0 |
| RCM CAPITAL MANAGEMENT LLC | 0 | 0 | 0 | 90,500 | 0 |
| RENAISSANCE TECHNOLOGIES CORP. | 0 | 0 | 0 | 0 | 0 |
| RS INVESTMENTS | 0 | 0 | 0 | 50,000 | 0 |
| SAGAMORE HILL CAP MGMT, L.P. | 0 | 0 | 1,144,500 | 0 | 0 |
| SG AMERICAS SECURITIES, LLC | 0 | 0 | 17,585 | 22,548 | 0 |
| SIDUS INVESTMENT MGMT, L.L.C. | 0 | 0 | 0 | 0 | 50,000 |
| STAFFORD CAPITAL MGMT, LLC | 0 | 0 | 0 | 0 | 0 |
| STATE STR CORPORATION | 0 | 0 | 280,909 | 257,652 | 11,700 |
| T. ROWE PRICE ASSOCIATES, INC. | 0 | 0 | 0 | 0 | 84,175 |
| TEACHERS ADVR INC | 0 | 0 | 12,163 | 10,663 | 500 |
| TEWKSBURY CAPITAL MGMT LTD. | 0 | 0 | 123,300 | 0 | 0 |
| THOMAS WEISEL ASSET MANAGEMENT | 0 | 0 | 64,750 | 64,750 | 64,750 |
| TQA INVESTORS, L.L.C. | 0 | 0 | 67,300 | 0 | 0 |
| TRAFELET & COMPANY, LLC | 0 | 0 | 0 | 3,172,400 | 1,872,400 |
| TRINITY CAP JACKSONVILLE, INC. | 0 | 0 | 0 | 50,000 | 0 |
| U.S. BANCORP | 0 | 0 | 4,840 | 4,770 | 0 |
| U.S. TRUST COMPANY N.A. | 0 | 0 | 0 | 15,700 | 0 |
| UNIVERSITY OF CHICAGO | 0 | 0 | 0 | 0 | 25,900 |
| VANGUARD GROUP, INC. | 0 | 0 | 322,981 | 83,681 | 0 |
| VARDON CAPITAL MGMT, L.L.C. | 0 | 0 | 0 | 150,000 | 0 |
| VERITABLE, LP | 0 | 0 | 4,500 | 0 | 0 |
| WALL STR ASSOCIATES | 0 | 0 | 0 | 0 | 0 |
| WATER ISLAND CAPITAL, L.L.C. | 0 | 0 | 463,300 | 0 | 0 |
| WEISS, PECK & GREER INVTS | 0 | 0 | 0 | 0 | 94,600 |
| WESTEND CAPITAL MGMT, L.L.C. | 0 | 0 | 0 | 1,249,418 | 0 |
| WILLIAM BLAIR & CO, L.L.C. | 0 | 0 | 0 | 724,194 | 2,235,410 |
| WOODMONT INVT COUNSEL LLC | 0 | 0 | 0 | 18,000 | 25,000 |
| Total for 106 Owners | 0 | 0 | 18,027,835 | 19,444,678 | 14,556,554 |

| Quarter End Date | Ttl 13F Inst Holds | Ttl % Held | Ttl # 13F Inst | Price | Shares Out |
|---|---|---|---|---|---|
| 31-Mar-06 | 0 | 0.00% | 0 | 11.96 | 35,326,000 |
| 31-Dec-05 | 0 | 0.00% | 0 | 11.96 | 35,326,000 |
| 30-Sep-05 | 18,027,835 | 51.03% | 63 | 11.96 | 35,326,000 |
| 30-Jun-05 | 19,444,678 | 55.72% | 51 | 8.37 | 34,895,000 |
| 31-Mar-05 | 14,556,554 | 45.47% | 39 | 7.35 | 32,015,000 |

# EXHIBIT B



ORRICK, HERRINGTON & SUTCLIFFE LLP
Michael D. Torpey (Bar No. 79424)
James N. Kramer (Bar No. 154709)
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone:   415-773-5700
Facsimile:   415-773-5759
*Attorneys for VantagePoint Defendants*

RECEIVED
JAN 17 2006
By_____

FILED
LOS ANGELES SUPERIOR COURT

JAN 18 2006

JOHN A. CLARKE, CLERK
N. Navarro
BY NANCY NAVARRO, DEPUTY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

"BY FAX"

In re INTERMIX MEDIA, INC.
SHAREHOLDER LITIGATION

CASE NO. BC 338945

STIPULATED AND ▓▓▓▓▓▓
PROTECTIVE ORDER

Dept.: 323
Judge: Hon. Carolyn B. Kuhl

This Document Relates To:

ALL ACTIONS.

DOCSSF1:842541.3

STIPULATED AND [PROPOSED] PROTECTIVE ORDER

LA\1457610.1

CITY/CASE: BC338945 LEA/DEPA:
RECEIPT #: CCM331043G0P
DATE PAID: 01/17/06 02:28:01 PM
PAYMENT: $20.00
RECEIVED:
CHECK:
CASH:
CHANGE:
CARD:
20.00
0310

## STIPULATED AND [PROPOSED] PROTECTIVE ORDER

Pursuant to California Code of Civil Procedure, California Rules of Court 243.1 and 243.2, and the stipulation of the parties, the Court hereby orders that the following procedures be employed in this action for the protection of the parties against the disclosure or any improper use of confidential and proprietary information produced in discovery or filed with this Court. This stipulation and protective order (hereinafter "Protective Order" or "Order") shall govern the designation, maintenance, control and dissemination of certain documents and information produced or voluntarily exchanged in this action ("Discovery").

### TERMS OF THE PROTECTIVE ORDER

1.      The word "Document" as used herein shall be construed in accordance with Evidence Code Section 250, including, but not limited to, electronically stored data.

2.      Nothing in this Protective Order shall prevent disclosure beyond the terms of this Order if the designating person (as hereinafter defined) or his or its counsel of record consents to such disclosure in writing or by email, or if the Court allows such disclosure after noticed motion and upon good cause shown.

3.      The "CONFIDENTIAL" designation hereunder shall be used in a manner consistent with the legitimate business interests of the person or entity that makes the CONFIDENTIAL designation, including any legitimate privacy interests of any producing entity's officers, directors or employees.

4.      Any person or entity (including non-parties) providing Discovery in this case ("Producer"), may designate all or part of such Discovery as "CONFIDENTIAL" pursuant to this Protective Order. A person making such designation is, as to the material so designated by such party, the "Designating Person."

5.      Discovery may be designated as "CONFIDENTIAL" pursuant to the terms of this Protective Order if the document or material discloses (1) non-public, sensitive business or financial information, (2) private, non-public or proprietary information, (3) information subject to non-disclosure agreements, (4) trade secrets or other confidential research, development, or

- 1 -

LAU487618.1

JAN. 17. 2006 1:10PM ORRICK HERRINGTON&SUTCLIFF LLP NO. 032 P. 4

1    commercial information, the disclosure of which the Designating Person in good faith believes

2    could cause harm to the Designating Person's legitimate business interests, or discloses

3    information invasive of the privacy interests of one or more individuals ("Confidential Material").

4    For purposes of this Order, information considered Confidential Material includes, but is not

5    limited to, non-public materials containing information related to: financial or business plans or

6    projections; acquisition offers or expressions of interest; proposed strategic transactions or other

7    business combinations, trade secrets and proprietary technical information; business and

8    marketing plans and strategies; studies or analyses by internal or outside experts; financial or tax

9    data; customer lists and information; competitive analyses; product development and planning;

10   financial results or data; personal financial information; or commercially sensitive information.

11   The parties acknowledge that this Order does not confer blanket protection on all disclosures or

12   responses to discovery and that the protection it affords extends only to the information or items

13   that are entitled to treatment as confidential under applicable law or this Order. If it comes to a

14   Producer's attention that information or items that it designated for protection do not qualify for

15   protection, that Producer shall promptly notify all other parties that it is withdrawing the mistaken

16   designation.

17         6.    The parties acknowledge that Discovery reflecting communications with certain

18   non-parties may be subject to non-disclosure agreements and Producers of such Discovery have

19   made good faith efforts to redact or otherwise protect the identity of the non-parties, including by

20   entering into this Stipulation. To the extent that Discovery has been provided in which the

21   identity of such non-parties has not been redacted, such Discovery shall be treated as Confidential

22   pursuant to this Order regardless of whether designated as Confidential. Upon the request of the

23   Producer or Designating Party, such Discovery must be returned or redacted by the recipients and

24   may not be used in this action or otherwise disclosed absent the consent of the Producer or

25   Designating Party or further Order of the Court, after noticed motion and upon good cause shown.

26         7.    The parties further acknowledge that, to the extent Discovery reflects attorney-

27   client privileged communications or attorney work product, the production of such privileged

28   materials is inadvertent and does not constitute a waiver unless the Producer so states, in writing.

-2-

STIPULATED AND [PROPOSED] PROTECTIVE ORDER

LA1/487518.1

1    Upon the request of the Producer, all such materials and information must be returned or

2    destroyed by the recipients and may not be used in evidence in this action absent the consent of

3    the Producer or further Order of the Court after noticed motion and upon good cause shown.

4        8.      Confidential Material designated "CONFIDENTIAL," including summaries or

5    extracts therefrom and the information therein, may be delivered, exhibited or disclosed (a) to

6    counsel representing the named parties in this case, (b) to counsel representing any insurer or

7    indemnitor of any defendant, (c) to counsel representing the named parties in any related action

8    pending before this Court to the extent that such counsel is permitted to share in Discovery and

9    agrees to be bound by the Protective Order in this action, and (d) to support staff and photocopy

10   services assisting such counsel in the prosecution or defense of this action (collectively referred to

11   as "Legal Team"). Counsel who receives such Confidential Material shall be bound by this

12   Protective Order and be responsible for: (1) informing other members of his or her Legal Team of

13   their obligations under this Protective Order; and (2) assuring that access to the Confidential

14   Material is limited in accordance with the terms of this Protective Order.

15       9.      In addition to any Legal Team, Confidential Material designated

16   "CONFIDENTIAL," as well as all derivative materials such as copies, summaries, extracts,

17   analyses and notes, may be given, shown, made available to, or otherwise communicated only to

18   the following persons:

19           (a)     a party to this action and any person testifying at a deposition, hearing or

20   trial of this action;

21           (b)     any court reporter in connection with the recording of sworn testimony;

22           (c)     any expert or consultant retained by counsel to assist in the presentation of

23   this case, or to testify at trial or any other proceeding in this action, to whom counsel deems in

24   good faith it is necessary that this material be shown for purposes of this litigation; and

25           (d)     the Court.

26       10.     Any party desiring to reveal information designated as "CONFIDENTIAL" to a

27   person referred to in Paragraph 9(a) – (c) above, shall first secure from each such person, prior to

28   disclosure of any information subject to the restrictions of this Protective Order, a signed

- 3 -

STIPULATED AND [PROPOSED] PROTECTIVE ORDER

LA\1487618.1

1    certificate, stating that the person has read this Protective Order, understands its provisions,

2    agrees to be bound thereby, and agrees to be subject to the jurisdiction of this Court in any

3    proceeding relative to enforcement of this Protective Order, in the form attached hereto as Exhibit

4    A. Counsel for the party making disclosure shall retain all original, signed certificates obtained

5    from any person pursuant to this paragraph and shall produce them upon written request of the

6    designating person or upon Court order.

7          11.    With respect to certain expedited Discovery conducted in this action in

8    anticipation of a motion for a preliminary injunction, certain Confidential Material has been

9    provided to persons referred to in Paragraphs 8 and 9(a)-(c), above, based upon their agreement to

10   treat such Discovery as Confidential and to be bound by any subsequently entered Protective

11   Order in this case. The parties acknowledge that such agreements are binding and do not

12   constitute a waiver of any claim that Discovery is Confidential and subject to this Protective

13   Order. Following entry of this Protective Order, under no circumstances will Confidential

14   Material be made available or shown to any person except pursuant to the provisions herein.

15         12.    Any party desiring to reveal Discovery designated as "CONFIDENTIAL" to a

16   person referred to in Paragraph 9(c) above, shall first notify the Designating Person of the expert

17   or consultant's identity and shall ensure that the expert or consultant is not a competitor, or the

18   agent, employee, consultant, or representative of a competitor, of any Producer.

19         13.    Discovery shall be designated as Confidential by affixing, prior to production, the

20   stamp "CONFIDENTIAL" as appropriate, on each page or separable article, in a size and location

21   that makes the designation readily apparent. The appropriate confidential designation shall be

22   affixed to any document produced in the course of this litigation that mentions, discusses or

23   comments on any Discovery designated as Confidential.

24         14.    Any Confidential Material produced on magnetic disks or other computer-related

25   media may be designated as such by labeling each disk "CONFIDENTIAL" prior to production.

26   In the event anyone other than the Producer generates a "hard copy" or printout from any disk so

27   designated, each page of the hard copy or printout must be immediately stamped with the

28   appropriate confidential designation and treated pursuant to the terms of this Protective Order.

-4-

STIPULATED AND [PROPOSED] PROTECTIVE ORDER

1      15.   Any Confidential Material that is not reduced to documentary, tangible, or

2   physical form, or that is otherwise not readily designated as Confidential as set forth above, may

3   be so designated by informing counsel for the parties when the information is provided that it is

4   Confidential.

5      16.   If a Producer discovers that, despite its good faith effort to designate Discovery as

6   Confidential prior to production, certain documents were not properly designated, the Producer

7   shall give written notice thereof and identify the documents or materials it intends to re-designate

8   as Confidential. The Producer shall provide replacement copies of any re-designated Discovery

9   to the receiving party, unless otherwise agreed. Upon receipt of a copy of the re-designated

10   Discovery, the receiving person shall promptly destroy or return all copies of the Discovery in the

11   person's possession and shall collect and destroy any other copies given to or shared with any

12   other individual or entity, which do not bear the new designation.

13      17.   Unless otherwise ordered by the Court, all Confidential Material shall be held by

14   the receiving party securely and solely for use in connection with, and only as necessary to or

15   useful in, this action, any related action to which this Protective Order applies pursuant to

16   paragraph 8 (c) above, and any related appellate proceeding, and not for any other purpose

17   whatsoever, including, without limitation, any other litigation, business, governmental or

18   regulatory purpose or function, except as may be required by any court order or subpoena of any

19   administrative or legislative body. In addition, except as provided herein, no person or entity

20   shall disclose any Confidential Material to any lawyer who is not an attorney of record for a party

21   to this action or any related action to which this Protective Order applies pursuant to paragraph 8

22   (c) above, and no person or entity who represents or who has represented any of the plaintiffs in

23   any such action may participate in any way in the prosecution of any other action against

24   defendants or any of their agents relating to the same events or subject matter. No person or

25   entity receiving Confidential Material shall disclose anything relating to its receipt to anyone

26   other than those persons authorized to receive Confidential Material as specified herein. If

27   documents or information designated as Confidential are called for in a subpoena (or by other

28   judicial process) by someone who is not a party to this action or otherwise bound by this

- 5 -

STIPULATED AND [PROPOSED] PROTECTIVE ORDER.

LA\1487618.1

1   Protective Order, the party to whom the subpoena is directed shall give notice to the requesting

2   party of their obligation not to produce the materials under the terms of this Protective Order and

3   promptly give written notice of the subpoena to each party that has designated the subpoenaed

4   information as Confidential for the purpose of providing each such party with an opportunity to

5   make a timely objection in response to the subpoena to the production of materials so designated.

6   18.   If the person seeking to maintain confidentiality does not move for a protective

7   order within the time allowed or agreed upon between the Designating Party and the subpoenaing

8   party, and give written notice of such motion to the subpoenaing party and the person to whom

9   the subpoena or other request is directed, the person to whom the subpoena or other request is

10   directed may commence production in response thereto. The person to whom the subpoena or

11   other request is directed shall not produce or use any Confidential Material while a motion for

12   protective order is pending regarding that same information, or while any appeal from or request

13   for appellate review of such motion is pending, unless lawfully ordered to do so.

14   19.   Any party or deposition witness wishing to designate deposition testimony or

15   documents submitted as exhibits to a deposition as "CONFIDENTIAL" may do so on the record

16   during the deposition, or may do so within ten (10) calendar days after receipt of the deposition

17   transcript and exhibits by providing written notice of the designation to the parties and any other

18   affected person. No person shall attend portions of the depositions in which Confidential

19   Material is disclosed unless such person is an authorized recipient of Confidential Material under

20   the terms of this Protective Order.

21   20.   Any court reporter who transcribes testimony in this action at a deposition shall

22   agree before transcribing any such testimony, that all testimony disclosing any Confidential

23   Material is and shall remain Confidential and shall not be disclosed except as provided in this

24   Protective Order, and that copies of any transcript, reporter's notes or any other transcription

25   records of any such testimony will be retained in absolute confidentiality and safekeeping by such

26   shorthand reporter or delivered to a party's attorney of record or filed under seal with the Court.

27

28

- 6 -

STIPULATED AND [PROPOSED] PROTECTIVE ORDER

LA\1487618.1

21.    In the event any documents containing Confidential Material are filed with the Court, the party filing such material must comply with the provisions of Rule 243.1 and 243.2 of the California Rules of Court.

22.    If Confidential Material protected under this Protective Order is used or disclosed during the course of a deposition, that portion of the record reflecting such material, including exhibits designated as Confidential, shall be separately bound after transcription and stamped with the appropriate designation. Access thereto shall be limited pursuant to the terms of this Protective Order. The court reporter for the proceeding shall mark the cover page of the transcript as "CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER IN FRIEDMANN V. INTERMIX MEDIA" and all appropriate pages or exhibits, and each copy thereof, in accordance with this Protective Order, as appropriate.

23.    If Confidential Material must be provided to answer an interrogatory or request for admission, counsel for the party responding to the interrogatory or request for admission shall, at the time the response is served, designate that portion of the response that shall be deemed Confidential for purposes of this Protective Order and such answers to interrogatories or requests for admission shall be covered by the terms of this Protective Order.

24.    Unless and until otherwise ordered by the Court, or agreed to in writing by the parties, all Confidential Material shall be treated as Confidential and shall not be disclosed except under the terms of this Protective Order.

(a)    In the event that any party objects to the designation of any document as Confidential that is produced subsequent to entry of this Protective Order, such party may, in writing within forty-five (45) days of receipt of the designation, request the Designating Person to remove the Confidential designation as to such document. Such written request shall specifically identify the document at issue and shall state the reason(s) why the Confidential designation should be removed. If, however, any party after such forty-five (45) day period demonstrates that any document should not have been designated as Confidential, such party may request after that period that such document be re-designated as non-confidential. In the event that any party objects to the designation of any document as Confidential that was produced prior to entry of

- 7 -

STIPULATED AND [PROPOSED] PROTECTIVE ORDER

LA1487618.1

1   this Protective Order, then the objecting party shall notify the Designating Party in writing at any

2   time and request the Designating Party to remove the Confidential designation as to the

3   document. Such written request shall specifically identify the document at issue and shall state

4   the reason(s) why the Confidential designation should be removed.

5          (b)    The Designating Person, by its counsel, shall meet and confer and respond

6   within three business days of receipt of the written request, or within such other period of time as

7   may be designated by order of the Court or agreement of the parties. If the Designating Person

8   refuses to remove the Confidential designation, such person's written response shall state the

9   reason(s) for this refusal. Notwithstanding the foregoing, failure to meet and confer or provide

10   timely written response shall be deemed a refusal of the request.

11          (c)    If the Designating Person fails to respond to a request or refuses to remove

12   the Confidential designation, any party may, within three days after receipt of refusal, file a

13   motion for an order requiring the Designating Person to remove the confidential designation.

14   Until the Court orders otherwise, all information designated as Confidential shall be treated as

15   Confidential. If no such motion is filed, the information shall remain as designated unless the

16   parties otherwise agree.

17          (d)    In the event of such a motion, the material at issue may only be submitted

18   to the Court for in camera inspection. Until the court rules on the challenge, all parties shall

19   continue to afford the material in question the level of protection to which it would be entitled

20   under the Producer's designation.

21          (e)    Notwithstanding any challenge to the designation of materials as

22   Confidential, all documents shall be treated as such and shall be subject to the provisions hereof

23   unless and until one of the following occurs:

24             (i)    The party or non-party who claims that the material is Confidential

25   withdraws such designation in writing;

26             (ii)    The party objecting to the designation of materials applies for and

27   obtains a Court order finding that the material is not entitled to protection as Confidential.

28

- 8 -

STIPULATED AND [PROPOSED] PROTECTIVE ORDER

LA/1487618.1

25.     The objection of any party to the designation of any document as Confidential
shall not serve as basis for delay of the briefing schedule for substantive motions filed prior to the
confidentiality dispute and the Court's decision on the substantive motion shall not be delayed
due to a collateral dispute regarding confidentiality.  Until any objection regarding the
designation of Confidential Material is resolved, the material in dispute shall be treated as
Confidential as described in this Protective Order.

26.     All Confidential Material shall be controlled and maintained in a manner
reasonably designed to preclude access by any person not entitled to access under this Protective
Order, and shall not be used for any business, competitive or governmental purpose or function or
in any other judicial proceeding except as provided herein.  Nothing in this Order shall preclude
any party to the action, their counsel or any other person from disclosing or using any information
or documents not obtained through discovery in this action, even though the same information or
documents may have been produced in this action and was designated as Confidential.

27.     Information disclosed (a) pursuant to this Protective Order, or (b) in violation of
this Protective Order, shall not lose its Confidential status solely because of that disclosure. The
fact that any Discovery is disclosed, used or produced in connection with this action shall not be
admissible as evidence, or offered as evidence, in any action or proceeding before any court,
agency or tribunal on the issue of whether or not such document is confidential or proprietary.

28.     Except as provided in this Protective Order, Confidential Material may not be
provided to any attorney or law firm acting or that has acted as counsel for any plaintiff who is
involved in any other action involving any party to this action.  In addition, no Confidential
Material, or information derived therefrom or analyses related thereto, may be stored in any
facility or information system accessible to counsel for plaintiffs in such litigation.

29.     A Producer may disclose Confidential Material produced by it in this action to any
person, with or without any conditions to such disclosure as it deems appropriate, and such use
shall not be deemed a waiver of the protection provided by this Protective Order.

30.     Nothing in this Protective Order shall be construed to prohibit a Producer from
seeking relief from any inadvertent or unintentional disclosure of confidential, privileged or work

- 9 -

1    product information.  Nothing in this provision shall diminish the legal rights of any person

2    seeking such relief.

3          31.    This Protective Order shall remain in full force and effect and shall continue to be

4    binding on all parties and affected persons after the termination of this litigation, subject to any

5    subsequent modifications of this Protective Order for good cause shown by this Court or any

6    court having jurisdiction over an appeal of this action.  Any party may seek the modification or

7    dissolution of the terms of this Protective Order on order of the Court for good cause shown by

8    properly noticed motion or by stipulation of the parties.

9          32.    At the conclusion of this action, including any appeals, all Confidential Material

10   and all copies, extracts, summaries or notes thereof shall be returned to the respective Producer or

11   shall be destroyed.  Counsel or any other affected person shall provide the Producer written

12   confirmation of destruction within sixty (60) days after final disposition of this action.  This

13   section shall not be construed to require the return or destruction of any document filed or lodged

14   with the Court and exhibits thereto, deposition transcripts and exhibits thereto, pleading files or

15   attorney work product created for any party.  Nothing herein shall preclude any Producer from

16   seeking return of Confidential Material lodged or filed with the Court after the conclusion of the

17   action including all appeals.

18         33.    Nothing in this Protective Order shall diminish any Producer's right to contend in

19   this or any other proceeding, that information produced herein without a Confidential designation

20   is nonetheless proprietary and subject to appropriate protection under the applicable law.

21         34.    Nothing in this Protective Order shall diminish any Producer's right to assert the

22   attorney-client privilege, work product privilege, right to privacy or any other privilege or

23   protection recognized by law.

24         35.    Nothing in this Protective Order shall diminish any Producer's right to object to

25   discovery on any ground.

26         36.    The Court shall retain jurisdiction, even after termination of this lawsuit: (a) to

27   make such amendments, modifications and additions to this Protective Order as it may from time

28

- 10 -

STIPULATED AND [PROPOSED] PROTECTIVE ORDER

LA\\487618.1

1   to time deem appropriate upon good cause shown; and (b) to adjudicate any dispute respecting

2   improper use or disclosure of Confidential material.

3       37.   All persons bound by this Protective Order are hereby notified that if this

4   Protective Order is in any manner violated, the person or entity who commits such violation may

5   be subject to such sanctions as the Court deems appropriate.

6                    **ORDER**

7       IT IS SO ORDERED.

8       Jan. 18, 2005

                             Hon. Carolyn B. Kühl

9                             Judge of the Superior Court

10                   **STIPULATION**

11       IT IS SO STIPULATED.

12   Dated: ~~December~~ January 13 2006          ORRICK, HERRINGTON & SUTCLIFFE LLP

13

14                                James N. Kramer

15                                  Attorneys for the VantagePoint Defendants

16   Dated: ~~December~~ JAN. 10, 2006          LATHAM & WATKINS LLP

17

18

19                                Pamela S. Palmer

20                                  Attorneys for Intermix Media Individual Defendants

21   Dated: ~~December~~ Jan 13, 2006          SKADDEN, ARPS, SLATE, MEAGHER &

22                                FLOM LLP

23

24                                Eric C. Waxman

25                                  Attorneys for Defendant Intermix Media

26

27

28

STIPULATED AND [PROPOSED] PROTECTIVE ORDER

LA\11487618.1

Case 2:06-cv-03731-GHK -SH Document 341 Filed 05/17/11 Page 53 of 57 Page ID

JAN.17.2006   1:14PM   ORRICK,HERRINGTON&SUTCLFRE LLP   #:266                NO.032   P.14
Jan-13-06   08:22am   From-LERACH C    LIN                 6192317423        T-049   P.002/002   F-931

Dated: ~~December~~ January 7, 2006          KREINDLER & KREINDLER LLP

_(signature)_

Mark E. Labaton
Attorneys for Plaintiff John Friedmann

Dated: ~~December~~ January 12, 2006          LERACH COUGHLIN STOIA GELLER
                                              RUDMAN & ROBBINS LLP

_(signature)_

Stephen J. Oddo
Attorneys for Plaintiff Ron Sheppand

STIPULATED AND [PROPOSED] PROTECTIVE ORDER

LA\\1497618.1

## EXHIBIT A

### "CONFIDENTIAL" Material
(Acknowledgement Form)

I hereby certify that I have carefully read the Protective Order for the action entitled *Friedmann v. Intermix Media, Inc., et. al.*, Case No. BC 339083, pending in the Los Angeles Superior Court, and that I understand the terms of the Protective Order, a copy of which is attached. I recognize that I am bound by the terms of that Order, and I agree to comply with those terms. I agree to use Confidential Material only in connection with this action, and not for any other purpose, including but not limited to, any business, competitive or governmental purpose or function. I hereby consent to be subject to the personal jurisdiction of the Los Angeles Superior Court with respect to any proceeding relative to the enforcement of that Order, including any proceeding related to contempt. To the extent that documents, materials or items designated as "CONFIDENTIAL" are disclosed to me, I agree not to disclose such information to anyone who is not entitled to such information pursuant to the terms of the Protective Order.

Executed this_____ day of _____, 20___, at _____.

_____
Signature

_____
Name

_____
Affiliation

_____
Business Address

_____
Home Address

- 13 -
STIPULATED AND [PROPOSED] PROTECTIVE ORDER

LA1487618.1

# EXHIBIT C

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7687
gsmlh@irell.com

January 25, 2007

**PRIVILEGED AND CONFIDENTIAL**

**VIA U.S. MAIL**

Darren J. Robbins, Esq.
Lerach Coughlin Stoia Geller Rudman &
Robbins LLP
655 West Broadway Suite 1900
San Diego, CA 92101

Dear Mr. Robbins:

As you know, Irell & Manella LLP and Baker Marquart & Crone LLP represent
Brad Greenspan in connection with the matter entitled *Greenspan v. Intermix Media, Inc., et
al.*, Los Angeles Superior Court Case No. BC338786. We understand that your firm
represents plaintiffs in the actions entitled *In re Intermix Media, Inc S'holder. Litig.*, Los
Angeles Superior Court Case No. BC 338945, and *LeBoyer v. Greenspan, et al.*, Central
District of California Case No. CV03-5603-GHK(JTLx). The state court actions are now on
appeal, and each of our firms represent our respective clients in connection with those
appeals. Mr. Greenspan is no longer a party to the federal action.

In light of the common interest between our respective clients, we have each agreed
to share certain information regarding these matters. This agreement is in place of any prior
agreement between your firm and counsel for Greenspan.

In light of the parties' common legal interests, all communications between us
regarding these matters are protected by the common interest privilege. By sharing certain
information, none of our respective clients waives his or her right to claim the attorney-
client or work product privileges against any third-party, and each reserves the right to assert
those privileges to prevent further disclosure to third parties.

Each of us, on behalf of ourselves and our respective clients, agree that we will treat
all information exchanged as confidential and privileged, and that we will not disclose such
information to any third party, or take any other action that might waive any privilege
applicable thereto. Each of us further agrees that such information may be used solely in
connection with the pending matters discussed above.

1628502.2 04

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

Darren J. Robbins, Esq.
January 25, 2007
Page 2

All information exchanged is in furtherance of the common interest between and amongst our clients and is for the purpose of obtaining legal advice. Each of us agrees and understands that nothing herein makes any of us counsel for the party or parties represented by the other. Similarly, each of us agrees and understands that the sharing of information or advice pursuant hereto does not make any of us counsel for the party or parties represented by the other.

Finally, each of us agree that any party to this agreement may withdraw at any time on written notice to the other parties to this agreement. In that event, either party may request the return of materials provided to the other. Any information shared pursuant to this agreement may not be used at any time against the party that provided such information, even if the interests of our respective clients become adverse during the course of the matters discussed above.

Please countersign this letter where indicated and return it to me to confirm this agreement.

Sincerely,

Gregory R. Smith

_____          _____
Darren Robbins, Esq.                            Date