ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (168593)
RANDALL J. BARON (150796)
DAVID T. WISSBROECKER (243867)
EUN JIN LEE (264208)
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
darrenr@rgrdlaw.com
randyb@rgrdlaw.com
dwissbroecker@rgrdlaw.com
elee@rgrdlaw.com

Lead Counsel for Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JIM BROWN, Individually and On Behalf of All Others Similarly Situated, ) ) ) Plaintiff, ) ) vs. ) ) BRETT C. BREWER, et al., ) ) Defendants. ) ) | No. 2:06-cv-03731-GHK-SH  <u>CLASS ACTION</u>  JOINT BRIEF REGARDING TRAFELET'S ORAL OBJECTION TO THE PROPOSED SETTLEMENT |

628910_5

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................ 1

      A.    Plaintiff's Introduction ........................................................ 1

      B.    Trafelet's Introduction ....................................................... 2

      C.    Defendants' Introduction .................................................... 4

II.   UNDISPUTED ISSUES ................................................................. 5

      A.    The Definition Of The Certified Class ................................ 5

      B.    The Certified Class Is Releasing All Claims ...................... 7

      C.    Trafelet Does Not Have A §14(a) Claim .......................... 7

      D.    The Notice Satisfies Due Process and Meets the Requirement of
            Rule 23 ........................................................................... 8

III.  DISPUTED ISSUE NO. 1: WAS TRAFELET'S ALLOCATION
      OBJECTION PROPER AND TIMELY? ......................................... 9

      A.    Plaintiff's Position ........................................................... 9

      B.    Trafelet's Position ......................................................... 13

      C.    Defendants' Position ...................................................... 16

IV.   DISPUTED ISSUE NO. 2: IF TRAFELET'S OBJECTION IS
      TIMELY AND PROPER, SHOULD IT BE GRANTED? ................. 16

      A.    Plaintiff's Position ......................................................... 16

      B.    Trafelet's Position ......................................................... 24

      C.    Defendants' Position ...................................................... 31

V.    DISPUTED ISSUE NO. 3:  WHAT IS THE REMEDY FOR
      GRANTING ALLOCATION REMEDY? ...................................... 31

      A.    Plaintiff's Position ......................................................... 31

      B.    Trafelet's Position ......................................................... 33

      C.    Defendants' Position ...................................................... 34

628910_5

# TABLE OF AUTHORITIES

**Page**

**CASES**

*7547 Corp. v. Parker & Parsely Dev. Partners, L.P.*,
    38 F.3d 211 (5th Cir. 1994) ...................................................................7

*Agostino v. Hicks*,
    845 A.2d 1110 (Del. Ch. 2004)........................................................21, 30

*Amchem Products v. Windsor*,
    521 U.S. 591 (1997)........................................................................21, 25

*Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*,
    211 F.R.D. 457 (S.D. Fla. 2002)...........................................................9

*Beebe v. Pacific Realty Trust*,
    99 F.R.D. 60 (D. Or. 1983) ...............................................................18

*Brown v. Brewer*,
    No. CV 06-3731-GHK, 2010 U.S. Dist. LEXIS 60863 (C.D. Cal. June 17, 2010)................31

*Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*,
    817 A.2d 160 (Del. 2002) ......................................................22, 26, 27

*Hampshire Group, Ltd. v. Kuttner*,
    No. 3607-VCS, 2010 WL 2739995 (Del. Ch. July 12, 2010)................22, 26

*Holmes v. Continental Can Co.*,
    706 F.2d 1144 (11th Cir. 1983) ...........................................21, 22, 24

*In re Bankamerica Corp. Sec. Litig.*,
    210 F.R.D. 694 (E.D. Mo. 2002) .....................................22, 28, 33

*In re Freeport McMoran Suphur, Inc. S'holder Litig.*,
    No. 16629-NC (Del. Ch. Jan. 13, 2005) ..............................19, 20

*In re Initial Pub. Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009).................................9, 16, 21, 24

*In re Ins. Brokerage Antitrust Litig.*,
    579 F.3d 241 (3d Cir. 2009).................................................................14

*In re Integra Realty Res., Inc.*,
    354 F.3d 1246 (10th Cir. 2004) ...........................................................9

*In re Joint Eastern & Southern Dist. Asbestos Litig.*,
    982 F.2d 721 (2nd Cir. 1992)........................................................22, 25

**Page**

*In re Prodigy Comm'n Corp. Shareholder Litig.*,
    2002 WL 176543 (Del. Ch. July 26, 2002)................................................29

*In re Prodigy Commc'n Corp. S'holder Litig.*,
    No. 19113, 2002 Del. Ch. LEXIS 95 (Del. Ch. July 26, 2002) ...........................18, 19, 20, 29

*In re Transkaryotic Therapies, Inc.*,
    954 A.2d 346 (Del. Ch. 2008)................................................20

*In re Triarc Cos., Inc. Class and Deriv. Litig.*,
    791 A.2d 872 (Del. Ch. 2001)................................................4, 17

*In re UnitedHealth Group Inc. S'holder Deriv. Litig.*,
    631 F. Supp. 2d 1151 (D. Minn. 2009)................................................9

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)................................................22, 30

*International Union, United Automobile, Aerospace, and Agricultural Implement
    Workers of America v. Ford Motor Co.*,
    No. 07-CV-14845, 2009 WL 3757040 (E.D. Mich. Nov. 9, 2009)................................................32, 34

*Murray v. Hospital Corp. of Am.*,
    682 F. Supp. 343 (M.D. Tenn. 1988), *aff'd*, 873 F.2d 972 (6th Cir. 1989) ...........................7

*Nagy v. Bistricer*,
    770 A.2d 43 (Del. Ch. 2000)................................................23, 26

*Omnicare, Inc. v. NCS Healthcare, Inc.*,
    809 A.2d 1163 (Del. Ch. 2002)................................................20

*Parker v. Time Warner Entertainment Co., L.P.*,
    239 F.R.D. 318 (E.D.N.Y. 2007)................................................16, 21, 24

*Plummer v. Chemical Bank*,
    91 F.R.D. 434 (S.D.N.Y. 1981) ................................................16, 21, 22, 24

*Rosen v. Ingersoll-Rand Co.*,
    372 Ill. App. 3d 440 (Ill. App. Ct. 1st Dist. 2007)................................................9

*Thorpe v. Cerbco, Inc.*,
    19 Del. J. Corp. L. 942 (1993) ................................................22

*Thorpe v. CERBCO, Inc.*,
    1993 WL 443406 (Del. Ch. Oct. 29, 1993) ................................................26

628910_5

1

2                                                                           **Page**

3  *Wiegand v. Berry Petroleum Co.,*
        16 Del. J. Corp. L. 476 (1989) ...............................................................23, 24
4

5  *Wiegand v. Berry Petroleum Co.,*
        Civ. No. 9316, 1989 WL 146235 (Del. Ch. Dec. 5, 1989) ..............................26, 27

6  **STATUTES, RULES AND REGULATIONS**

7  8 Delaware Chancery Code

8        §262(a) .................................................................................................23

9  10 Delaware Chancery Code
        §8106 ...................................................................................................23
10

11  Federal Rules of Civil Procedure
        Rule 23 ..................................................................................................9

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

628910_5

## I.     INTRODUCTION

Pursuant to the Court's instruction at the May 16, 2011 Hearing, the Parties and Trafelet respectfully submit this joint brief setting forth their respective positions concerning the Settlement of the above-captioned litigation.  As directed by the Court, the Parties and Trafelet have conducted extensive arms-length discussions regarding their respective positions, and have resolved as many issues as possible without Court intervention.

### A.     Plaintiff's Introduction

On April 21, 2011, purported Class Member Trafelet & Company, LLC ("Trafelet"), sent a letter to the Court claiming that it had continuously held 1,872,400 shares of Intermix Media, Inc. ("Intermix" or the "Company") stock from July 18, 2005 through September 30, 2005, and was objecting to various terms of the settlement, including whether the overall settlement fund was adequate.  At the final settlement hearing ("Settlement Hearing") on May 16, 2011, Trafelet appeared through counsel and disclosed that, in fact, Trafelet did not hold Intermix stock through September 30, 2005.[1]  Counsel for Trafelet also raised two new substantive issues at the Settlement Hearing: (i) whether a person or entity that was a holder of Intermix stock on July 18, 2005, but who sold prior to September, 30, 2005, was a member of the Class; and (ii) whether, as a seller of stock prior to September 30, 2005, Trafelet should be entitled to share in the Settlement Fund.  Having not received any prior briefing on these issues, the Court ordered the Parties and Trafelet to meet and confer, and to submit a joint brief if these issues remained unresolved after the meet and confers.  No new issues were to be raised.  *Brown v. Brewer*, No. CV 06-

---

[1]     In fact, even now Trafelet has yet to provide any proof that it held a single share of Intermix common stock at any point during the class period.  A declaration by the same person who previously and erroneously claimed that Trafelet held through consummation, is insufficient proof of ownership.

1   3731-GHK, Reporter's Transcript of Proceedings (C.D. Cal. May 16, 2011) ("May 16,

2   2011 Transcript").

3        After a series of meet and confer discussions, Trafelet and the parties agree that

4   the Class certified in the June 22, 2009 order ("Class Certification Order") – "[a]ll

5   holders of Intermix Media, Inc. ('Intermix' or the 'Company') common stock, from

6   July 18, 2005 through the consummation of the sale of Intermix to News Corporation

7   ('News Corp') at the price of $12.00 per share on September 30, 2005 (the

8   'Acquisition'), who were harmed by defendants' improper conduct at issue in the

9   litigation" – ***does in fact include*** Trafelet (if indeed it was a holder of Intermix stock)

10   as well as all other non-continuous shareholders.  Thus, of the two issues discussed,

11   only the second – the right to share in the proceeds of the settlement fund – remains

12   outstanding.

13     **B.**    **Trafelet's Introduction**

14        The issues before the Court are straightforward and the resolution of those

15   issues equally as simple.  There is no dispute that the Class certified by this Court in

16   2009 consists of ***all*** persons and entities who owned Intermix stock at any time

17   between July 18 and September 30, 2005.  There also is no dispute that the settlement

18   before the Court proposes to compensate only a portion of those class members, even

19   though all of those Class members are required to release their claims against the

20   defendants.

21        The questions before the court are: (1) whether a settlement that releases the

22   viable claims of a distinct subset of the certified class without compensation should be

23   approved, particularly where the named plaintiff urging that result would benefit from

24   excluding that subset of the class from the recovery and (2) whether the Court should

25   consider and resolve this issue or merely ignore it.

26        The fact that the settlement proposes to require Class members who sold their

27   shares before September 30, 2005 to release their claims but excludes them from

28   participating in the settlement raises significant issues.  Although Plaintiff argues that

628910_5

1    Trafelet and similarly situated Class members are not entitled to participate because
2    their fiduciary duty claims have no value, that argument is both disingenuous and
3    wrong.  The argument is disingenuous because, if Plaintiff believed that these Class
4    members have no viable claim, he should not have resisted Defendants' efforts in
5    connection with the 2009 class certification proceedings to limit the Class to only
6    those Intermix shareholders who Plaintiff now argues do have claims.  If Plaintiff
7    were correct, the only possible consequence of his efforts in 2009 would be to
8    purposelessly release the claims of thousands of Intermix shareholders.  The argument
9    is wrong because, while Delaware courts have ruled that a shareholder who sells his
10   stock in advance of a merger cannot participate in a settlement that increases the
11   ***merger price***, no Delaware case holds that shareholders who owned stock at the time
12   of the alleged fiduciary breaches and who were damaged by those breaches (because
13   the prices they received when they sold their stock were artificially depressed by the
14   fiduciary breaches) cannot participate in a ***lump-sum recovery*** that has nothing to do
15   with increasing the merger price.  Indeed, the notion that such shareholders cannot
16   participate is illogical.  Delaware law unequivocally provides that any shareholder
17   who owns stock at the time a director breaches his duty of loyalty can assert a claim
18   for damages.  It is only the special nature of the recovery in the cases cited by Plaintiff
19   that avoids that basic rule.

20         It would be improper for the Court to overlook these serious issues as Plaintiff
21   proposes.  First and foremost, these objections were preserved and properly stated by
22   Trafelet, and therefore are timely.  Moreover, even if there were some basis to
23   Plaintiff's assertion that these objections were not timely made, given the nature and
24   seriousness of the issues here, the Court can and should address them.

25         The Court can and should resolve these issues by ordering the parties (Plaintiff,
26   Defendants and Trafelet) to confer regarding a new allocation of the settlement
27   proceeds among all of the eligible class members.  The parties can then present a new
28   plan of allocation that complies with and reflects the Court's orders concerning the

1   right of shareholders like Trafelet to participate in the benefits of settlement, rather

2   than only its burdens.  In the event the Court decides to resolve these issues without

3   further participation by the parties, it should direct that the proceeds of the proposed

4   settlement be allocated on a pro-rata basis to all eligible class members, including

5   those members of the certified class who sold their shares after the alleged breaches of

6   fiduciary duty, but before September 30, 2005.

7   **C.   Defendants' Introduction**

8   At the hearing on May 16, 2011, this Court requested further joint briefing

9   regarding: the definition of the class that was certified; clarification regarding whose

10  claims are being released by the settlement and who is receiving funds under the plan

11  of allocation; and, whether that intent was adequately and clearly carried out in the

12  notice of settlement.  *See* May 16, 2011 Transcript at 22-24.

13  In response, Plaintiff, Defendants and Trafelet agreed that the following issues

14  are undisputed.  The class certified by this Court in June 2009 includes Trafelet and all

15  other persons who held Intermix stock at anytime between July 18, 2005 and

16  September 30, 2005, regardless of whether they held shares continuously throughout

17  that entire period (the "Certified Class").  Pursuant to the Amended Stipulation Re

18  Settlement, all members of the Certified Class are releasing all claims that were or

19  could have been brought in this action.  As allocation of the settlement proceeds and

20  membership in the Certified Class are separate issues, there are members of the

21  Certified Class, like Trafelet, who are releasing claims but are not receiving any funds

22  under the Plan of Allocation.[2]  This is because only shareholders who continuously

23

24  [2]    *See* Docket No. 326, §4 (Release); *In re Triarc Cos., Inc. Class and Deriv.
      Litig.*, 791 A.2d 872, 876 (Del. Ch. 2001) ("If it appears that those claims are weak or
25  of little or no probable value or would not likely result in any recovery of damages by
      individual stockholders, it is fair to bar those claims as part of the overall settlement.
26  Indeed, it is unreasonable to think that the defendants should be willing to pay
      substantial consideration in settlement without receiving in exchange a release that is
27  at least as broad as the claims that were actually asserted against them in the litigation,
      even claims that are of only speculative value.").

28

628910_5

held their shares will receive any recovery under the Plan of Allocation set forth in the Notice of Settlement.

There is also no longer a dispute between the Parties and Trafelet regarding the adequacy of the mailing or whether the Notice of Settlement adequately informed non-continuous shareholders, like Trafelet (who is non-continuous shareholder that allegedly held approximately 10% of Intermix's shares as of July 18, 2005 but sold them prior to September 30, 2005), that their claims are being released by the settlement. The parties also agree that, if the Court believes the Notice should be clarified, then a clarified notice should be sent to the Certified Class.

Finally, Defendants understand that there are a number of issues in dispute between Plaintiff and Trafelet concerning allocation of the settlement funds. Although allocation is not a necessary term or condition of the settlement, and Defendants have no responsibility or liability whatsoever for the allocation of the settlement funds, it is Defendants' position that if the plan of allocation is modified, notice of such modification should be provided to the Certified Class members. The notice would (1) alert the members of the Certified Class who held their shares continuously about the change in the distribution of the settlement funds, and (2) depending upon how the allocation is ultimately modified, may also alert the members of the Certified Class who did not hold their shares continuously that they may submit claims to participate in the distribution of the settlement funds.

## II. UNDISPUTED ISSUES

Plaintiff, Trafelet and Defendants agree to the following:

### A. The Definition Of The Certified Class

After reviewing the record leading up to the Court's June 22, 2009 Class Certification Order, all parties agree that the Certified Class includes Trafelet and all persons who held Intermix shares at any time between July 18 and September 30, 2005, regardless of whether they held shares continuously throughout that entire period.

- 5 -

628910_5

1    In the event the Court wishes further details supporting this point, the parties

2 note the following:

3    In its motion for class certification, Plaintiff requested that the Court certify the

4 following class:

5    All holders of Intermix Media, Inc. ("Intermix" or the "Company")

6    common stock, from July 18, 2005 through the consummation of the sale

7    of Intermix to News Corporation ("News Corp.") at the price of $12.00

8    per share on September 30, 2005 (the "Acquisition"), who were harmed

9    by defendants' improper conduct at issue in the litigation.  Excluded

10   from the Class are defendants and any person, firm, trust, corporation or

11   other entity related to or affiliated with any defendant.

12 *See* Docket No. 131, at 1:4-12.  In their opposition to Plaintiff's motion for class

13 certification, Defendants specifically requested that the class definition be modified to

14 include the word "continuously."  *See* Docket No. 139, 24:7-24 (proposing that any

15 class be defined as "All holders of Intermix Media, Inc. . . . *who held Intermix*

16 *common stock continuously* from July 18, 2005 through the consummation of the sale

17 of Intermix to News Corporation . . . on September 30, 2005." (italics reflect

18 Defendants' proposed modification)).  Plaintiff opposed any modification requiring

19 continuous ownership.  *See* Docket No. 189 ("Plaintiff's Response").  Plaintiff argued

20 that (1) to add a requirement of continuous ownership would improperly narrow and

21 reduce the number of class members and (2) determination of which members would

22 actually receive a recovery should be left to the allocation process, not the class

23 certification process.  *Id.* at 3:12-15, 2:24-3:6, 3:19-4:9.

24    The Court agreed with Plaintiff in its Class Certification Order.  The Court

25 certified the class originally proposed by Plaintiff, thereby rejecting a continuous

26 ownership requirement.  The Class Certification Order states: "Although we certify

27 the preceding class as so defined, we recognize that there will be allocation issues if

28

- 6 -

1    Plaintiff and the class prevail on their claims and there will only be one recovery per

2    share." *See* Docket No. 197.

3    **B.    The Certified Class Is Releasing All Claims**

4         Pursuant to the Amended Stipulation re Settlement, all members of the class as

5    defined in the Court's Class Certification Order, *i.e.*, any person who held shares at

6    anytime between July 18 and September 30, 2005 who did not timely opt out in

7    response to the Notice of Pendency issued in November and December 2009, are

8    releasing all claims that were or could have been asserted in the case before this Court.

9    *See* Docket No. 326, §4 (Release).  *See also id.*, §1.7 (defining "Class" as class

10   certified in the Class Certification Order); §1.8 (definition of "Class

11   Member"/"Member of Class"); §1.29 (definition of "Released Persons"); §1.31

12   (definition of "Settled Claims").

13        While non-continuous holders are part of the Certified Class and accordingly

14   are releasing their claims, they are not entitled to a recovery under the Plan of

15   Allocation.  The Plan of Allocation provides that only persons who held their Intermix

16   shares continuously from July 18, 2005 to September 30, 2005 will be eligible to share

17   in the distribution of the Net Settlement Fund (*see* Docket No. 326-2 at 6:19-21).

18   **C.    Trafelet Does Not Have A §14(a) Claim**

19        Trafelet does not have any claim under §14(a) of the Securities Exchange Act

20   of 1934 as it sold its shares prior to September 30, 2005, the date of the shareholder

21   vote on the merger, and thus does not have standing under §14(a).  *See, e.g.*, *7547*

22   *Corp. v. Parker & Parsely Dev. Partners, L.P.*, 38 F.3d 211 (5th Cir. 1994) (voting

23   rights are critical to establish standing under §14(a)); *Murray v. Hospital Corp. of*

24   *Am.*, 682 F. Supp. 343, 348 (M.D. Tenn. 1988), *aff'd*, 873 F.2d 972 (6th Cir. 1989)

25   (plaintiffs who are not shareholders with voting rights at the time of the alleged

26   violation lack standing to sue under §14(a)).

27

28

628910_5

- 7 -

### D. The Notice Satisfies Due Process and Meets the Requirement of Rule 23

At the settlement hearing, Trafelet, as part of its argument relating to membership in the Certified Class, raised concerns about the adequacy of the mailing and the sufficiency of the notice (*i.e.*, Trafelet claimed that non-continuous holders of Intermix shares could be confused by the contents of the Notice of Settlement as to whether their claims were released by the settlement because of the use of the term "continuously" in certain places of the Notice). There is no longer a dispute between the Parties and Trafelet regarding the adequacy of the mailing or the sufficiency of the Notice.[3]

Specifically, the Notice, which was attached as Exhibit A-1 to the Stipulation of Settlement, was drafted jointly by counsel for the Parties prior to it being submitted to the Court. The Court reviewed the Notice in advance of the hearing on Plaintiff's Motion for Preliminary Approval of the Settlement, and at the January 31, 2011, hearing on that motion, the Court provided comments to the Parties and ordered that certain changes be made to the Notice prior to it being mailed to members of the Certified Class. Once those changes were made and re-submitted to the Court, the Court approved the form and substance of the Notice. Thereafter, the Notice was distributed as detailed in the declarations of the Gilardi representatives submitted by Plaintiff on March 21, 2011 and May 21, 2011 (Docket Nos. 334, 339) and the declaration of Michael Joaquin submitted concurrently herewith by Plaintiff. The Parties respectfully submit that the Notice was adequate to inform the Certified Class of all information necessary for them to understand their rights under the Settlement, its impact on their claims, and to make an informed decision concerning whether or

---

[3]    However, Trafelet specifically reserves and is not waiving objections concerning the sufficiency of the Notice to the extent it pertains to the timeliness of Trafelet's objections, as described in Part III.B. below.

- 8 -

1   not to object to the Settlement.  And Trafelet is not raising any objections to the form

2   of Notice or the sufficiency of the mailing.

3       Therefore, the Parties respectfully renew their request that the Court approve

4   the Settlement and enter the [Proposed] Judgment, which expressly sets forth the

5   Court's finding that the Notice satisfies the requirements of due process and Rule 23.

6   If the Court believes the Notice should be clarified, it is undisputed that a clarified

7   notice should be sent to the Certified Class.

8   **III.   DISPUTED ISSUE NO. 1: WAS TRAFELET'S ALLOCATION OBJECTION PROPER AND TIMELY?**

9      **A.   Plaintiff's Position**

10       It is well-settled that objections can and should be stricken or overruled where

11   there is a procedure in place for timely and fulsome objections, that procedure is

12   adequately provided to class members, and there is no compelling justification by an

13   objector for not being able it adhere to the procedure set forth by the court.  *See In re*

14   *Integra Realty Res., Inc.*, 354 F.3d 1246, 1257-58 (10th Cir. 2004) (finding objectors'

15   failure to comply with requirements to object set out in the notice precluded class

16   members from objecting to the settlement and eliminating a right to appeal the

17   approval of the settlement); *In re UnitedHealth Group Inc. S'holder Deriv. Litig.*, 631

18   F. Supp. 2d 1151, 1158 n.6 (D. Minn. 2009) (declining to consider untimely

19   objection); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467 (S.D.N.Y. 2009)

20   (declining to consider two letters challenging the proposed settlement submitted after

21   objection period had concluded); *Rosen v. Ingersoll-Rand Co.*, 372 Ill. App. 3d 440,

22   447 (Ill. App. Ct. 1st Dist. 2007) (holding the trial court did not err in ruling that the

23   supposed objectors had effectively waived that status by failing to comply with the

24   requirements set forth in the notice and therefore lacked standing to appeal the

25   approval of the settlement); *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211

26   F.R.D. 457, 475 (S.D. Fla. 2002) ("Objectors also are barred from being heard due to

27   their violation of the Court's objection filing deadline.").  And indeed, class members

28

- 9 -

1  were expressly warned of exactly that: "***Unless the Court orders otherwise, any Class***

2  ***Member who does not object in the manner described about will be deemed to have***

3  ***waived any objection and shall be foreclosed from making any objection to the***

4  ***proposed Settlement, the proposed Plan of Allocation, or Plaintiff's Lead Counsel's***

5  ***request for an award of attorneys' fees and of expenses***." Notice of Settlement at 6

6  (emphasis in the original).

7        Here, there was a detailed objection procedure that was approved by the Court

8  and provided to Class Members. Trafelet failed to comply with the procedures

9  approved by the Court, both as it relates to the initial objection set forth in the

10  Greenspan/Faber April 21, 2011 letter, as to the new oral objection (based upon Jeff

11  Faber's May 15, 2011 declaration and the comments at the May 16, 2011 Settlement

12  Hearing by Trafelet's counsel), and even now. Thus, Trafelet's objection should be

13  stricken or overruled on these grounds.

14        Specifically, the Court's February 17, 2011 Order Granting Preliminary

15  Approval of the Settlement – which was entered only after a hearing during which

16  counsel for the parties and the Court held a lengthy discussion concerning the terms of

17  the Stipulation of Settlement and the contents of its exhibits – set April 21, 2011, over

18  60 days from the Notice Date, as the deadline for filing objections to the Settlement.

19  Pursuant to those same discussions, changes were also made to the notice to be sent to

20  Class Members. The notice specifically required not only that all objections and

21  grounds therefore be filed no later than April 21, 2011, but also expressly required that

22  any objector ***provide proof of class membership*** with the objection. *See* Notice of

23  Settlement at 2, setting forth Class Members' "Legal Rights and Options in this

24  Settlement"; Notice of Settlement at 6, question 19 ("Objections must be in writing,

25  and must include your name, address, telephone number, your signature, and the

26  number of shares of Intermix common stock you held continuously between July 18,

27  2005 and September 30, 2005. You must file any written objection, together with

28  copies of all other papers (including proof of shares of Intermix common stock that

- 10 -

1   you held continuously between July 18, 2005 and September 30, 2005) and briefs,

2   with the Clerk of the Court for the United States District Court for the Central District

3   of California, at the address set forth below on or before April 21, 2011.  You must

4   also serve the papers on Plaintiff's Lead Counsel and Defendants' Counsel at the

5   addresses set forth below so that the papers are received by counsel on or before

6   April 21, 2011.").

7          Ignoring the language that is specifically relevant to all potential objectors,

8   Trafelet cherry-picks language from other portions of the Notice of Settlement to try

9   to establish that the Notice somehow allows a potential objector to "sandbag" the

10  Court by failing to identify grounds of an objection and a right to object on a timely

11  basis, then arguing new objections at the settlement hearing.  Trafelet is simply wrong.

12  The Notice is quite clear: while an objector has a right to appear, and be heard at the

13  discretion of the Court, this right does not obviate the objector's obligation to timely

14  notice his/her intention to object and the grounds for that objection.  *See* Notice of

15  Settlement at 7, question 22 ("***If you object to the Settlement***, you may ask the Court

16  for permission to speak at the Settlement Fairness Hearing.  To do so, you must send a

17  letter to the Court saying that it is your 'Notice of Intention to Appear in *Brown v.*

18  *Brewer*, No. 2:06-cv-03731-GHK-SH.'   Be sure to include your name, address,

19  telephone number, your signature, and the number of shares of Intermix common

20  stock that you held continuously between July 18, 2005 and September 30, 2005.

21  Your notice of intention to appear must be received no later than April 21, 2011, and

22  be sent to the Clerk of the Court, Plaintiff's Lead Counsel, and Defendants' Counsel,

23  at the addresses listed in Question 19.").  Indeed, the Court expressly set out a lengthy

24  schedule between the Notice Date and the last day to object, so that all papers in

25  support of the settlement could be filed by the parties and reviewed by any interested

26  class member with sufficient time to perfect an objection pursuant to the express

27  requirements set forth in the approved form of notice.  The Court did not set up this

28

- 11 -

1    schedule to promote it being sandbagged by a previously undisclosed objector or

2    undisclosed grounds for an objection.  Nonetheless, that is exactly what Trafelet did.

3         On April 21, 2011, the last day of this lengthy objection period, Trafelet, via

4    Brad Greenspan who did the actual filing, filed a letter objection with the Court which

5    challenged the Settlement or the claim that it was insufficient in dollar terms, and

6    because the Lead Plaintiff had requested a modest service award.  *See* Ex. A attached.

7    There was no objection to the Plan of Allocation.  *Id*.  Indeed, according to the

8    objection letter itself, Trafelet had no reason to object to the Plan of Allocation since it

9    stated that on September 30, 2005, the last day of the class period, Trafelet held over

10   1,872,400 shares of Intermix common stock.  The objection also did not provide any

11   proof that Trafelet held a single Intermix share at any time during the Class Period,

12   despite the clear instruction in the Notice that it do so.  Following up on that letter, on

13   April 23, 2011, counsel for Plaintiff Brown called the signatory of that letter, Jeff

14   Faber, to both inquire as to the true nature of the objection and to seek confirmation of

15   actual stock ownership.  No information was obtained, but Mr. Faber promised to call

16   back and provide the necessary information.  No call was received.

17        On Sunday afternoon, May 15, 2011, at 3:00 p.m., the day prior to the

18   Settlement Hearing, counsel for Plaintiff Brown received, via email, a declaration

19   signed by Jeff Faber, on behalf of Trafelet, raising a new objection – now to the Plan

20   of Allocation.  The declaration, which was subsequently stricken by the Court, raised

21   for the first time the complaint that Trafelet would not recover under the Plan of

22   Allocation.  The declaration asserted that, contrary to the objection letter also signed

23   by Mr. Faber, Trafelet did not hold any Intermix stock on September 30, 2005, but

24   rather sold out its entire position during the Class Period.  Notably, the declaration

25   again failed to provide any proof of class membership, as required by the Notice of

26   Settlement approved by the Court.

27        At the hearing on May 16, 2011, and in subsequent meet and confers, Trafelet's

28   counsel abandoned all of the objections in the written submission.  As has been made

1   clear by Trafelet's counsel, the only remedy that Trafelet is currently seeking is to be

2   able to share in the Plan of Allocation – not to challenge the amount of the recovery or

3   any other aspects of the settlement.  But, this objection: (i) was not made prior to

4   April 21, 2011 as required; (ii) does not provide any reliable evidence (when it was

5   first made either on May 15 in the Faber declaration, at the Settlement Hearing on

6   May 16, or even now), justifying why the allocation objection was not timely made in

7   the first place or why Trafelet did not know that it had (purportedly) held then sold its

8   Intermix stock during the class period; and (iii) does not justify Trafelet's continued

9   failure to provide proof of ownership with either objection or even now, as required.

10  *See* Notice of Settlement at 6-7.  Accordingly, Trafelet's objection to the Plan of

11  Allocation should be stricken or overruled as procedurally improper and untimely.

12          **B.     Trafelet's Position**

13          Trafelet timely objected to the fact that the proposed settlement, as currently

14  structured, fails to compensate it and other similarly situated shareholders in exchange

15  for the release of their claims against the defendants.  There are two substantial

16  reasons demonstrating the timeliness of the objection.

17          ***First***, the Notice of Settlement specifically provides in Paragraph 5 that one

18  permissible method for a class member to bring its objection before the Court is to (1)

19  submit a "Notice of Intention to Appear" by April 21, then (2) state any objections at

20  the hearing.  This procedure for objecting is first described in Paragraph 5 of the

21  Settlement Notice as an alternative to providing written objections, and it specifically

22  identifies the plan of allocation as one item that may be challenged by this method.

23  *See* Notice of Settlement at ¶5 ("YOUR LEGAL RIGHTS AND OPTIONS IN THIS

24  SETTLEMENT . . . GO TO THE HEARING ON MAY 16, 2011 AT 9:30 A.M.,

25  AND FILE A NOTICE OF INTENTION TO APPEAR SO THAT IT IS RECEIVED

26  NO LATER THAN APRIL 21, 2011 . . . Ask to speak in Court about the fairness of

27  the Settlement, ***the proposed Plan of Allocation***, or the request for attorneys' fees and

28  expenses.").

628910_5

- 13 -

1   The availability of this procedure is repeated in paragraphs 20 and 22 of the

2   Notice of Settlement.  Both of those paragraphs indicate that the option to appear at

3   the final approval hearing on May 16 was an alternative procedure to filing written

4   objections for opposing the settlement.  Thus, Paragraph 20 of the Settlement Notice

5   provides:

6         The Court will hold a Settlement Fairness Hearing at 9:30 a.m., on May

7         16, 2011 . . . .  At the Settlement Fairness Hearing, the Court also will

8         consider the proposed Plan of Allocation for the proceeds of the

9         Settlement and the application of Plaintiff's Lead Counsel for attorneys'

10        fees and expenses.  The Court will take into consideration any written

11        objections filed in accordance with the instructions at Question 19 above.

12        The Court *also* may listen to people who have properly indicated, within

13        the deadline identified above, an intention to speak at the hearing; but

14        decisions regarding the conduct of the hearing will be made by the

15        Court.

16        Likewise, Paragraph 22 informs recipients of the Settlement Notice:  "If you

17   object to the Settlement, you may ask the Court for permission to speak at the

18   Settlement Fairness Hearing.  To do so, you must send a letter to the Court saying that

19   it is your — 'Notice of Intention to Appear in *Brown v. Brewer*, No. 2:06-cv-03731-

20   GHK-SH.'"

21        These provisions unmistakably convey that appearing at the May 16 hearing

22   after submitting a timely Notice of Intention to Appear was an appropriate method to

23   object to the proposed settlement and proposed Plan of Allocation.  If that were not

24   the case, the Settlement Notice would have specifically directed that Class members

25   appearing at the May 16 hearing would only be permitted to repeat objections they

26   previously had made in writing.  *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 579

27   F.3d 241, 261 (3d Cir. 2009) (Notice of Settlement stated "***If (and only if) you make a***

28   ***written objection*** to the Zurich Settlement as set out above, you may choose to speak-

- 14 -

1    either in person or through an attorney hired at your own expense-at the hearing"

2    (emphasis added)).   In the absence of any such provision, there is no reason to

3    conclude that objections stated at the hearing by a class member who timely submitted

4    a Notice of Intent to Appear would have been untimely.

5         Trafelet & Co's letter dated April 21, 2011, satisfied the requirements of the

6    Settlement Notice by providing: "Finally, please accept this Notice of Intention to

7    Appear in *Brown v. Brewer*, No. 2:06-cv-03731-GHK-SH or to have counsel appear

8    to speak at the hearing that represents our interests."

9         Having provided that notice, Trafelet argued at the May 16 hearing that it would

10   be improper and unfair to require Trafelet and other similarly situated members of the

11   certified class to release claims currently being asserted by them in this lawsuit

12   without providing them any compensation for doing so.   These are the objections

13   Trafelet continues to pursue here.   Thus, Trafelet has asserted and preserved the

14   objections presently before the Court.

15        ***Second***, even had the Settlement Notice not indicated that objections could be

16   asserted at the May 16 hearing as long as a Notice of Intent to Appear was timely

17   submitted, it still would be proper for the Court to consider the issues addressed in this

18   joint brief.   The objections discussed here involve important questions of fundamental

19   fairness to members of the certified class.   The Court certified the Class in 2009.   At

20   that time, all of the members of the Class were provided with notice and an

21   opportunity to opt out while simultaneously being informed that Plaintiff was

22   pursuing claims on their behalf.   Indeed, the Notice of Pendency specifically advised

23   the Class Members that "Plaintiff alleges Class Members have suffered damages as a

24   result of defendants' conduct."   Notice of Pendency, at 1.   Only now, long after the

25   opt-out period has expired, does Plaintiff inform a large portion of the Class that, in

26   fact, he has not been pursuing claims on their behalf and that he did not actually allege

27   that they suffered damages as a result of Defendants' conduct.   Thus, Class Members

28   like Trafelet are now presented with a settlement that they cannot avoid, but which

- 15 -

628910_5

provides them nothing for releasing their claims.  That is fundamentally unfair. *Plummer v. Chemical Bank*, 91 F.R.D. 434, 442 (S.D.N.Y. 1981) (disparities in allocation of a settlement "must be regarded as prima facie evidence that the settlement is unfair to the class"); *Parker v. Time Warner Entertainment Co., L.P.*, 239 F.R.D. 318, 337 (E.D.N.Y. 2007) (when proposed plan of allocation fails to compensate class members whose claims are being released, there exists a "strong indicator that a settlement is unfair.")  That unfairness must be addressed by the Court. *Initial Public Offering*, 671 F. Supp. 2d at 479 (court must carefully scrutinize proposed allocation "to prevent injustice and to ensure that the burden of settlement is not shifted arbitrarily to a small group of class members.").

### C.    Defendants' Position

Defendants do not take a position regarding the propriety and timeliness of Trafelet's objection to the allocation.  As reflected in the Amended Stipulation re Settlement, allocation is not a necessary term or condition of the settlement, and Defendants have no responsibility or liability whatsoever for the allocation of the settlement funds.  *See* Docket No. 326, §7.3 ("The Plan of Allocation proposed in the Notice is not a necessary term of this Stipulation and it is not a condition of this Stipulation or the Settlement that any particular plan of allocation be approved by the Court.  Plaintiff and Plaintiff's Lead Counsel may not cancel or terminate the Stipulation or the Settlement based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any plan of allocation in this Action.  Neither any Defendant, nor any other Released Person, shall have any responsibility or liability whatsoever for allocation of the Net Settlement Fund.").

## IV.    DISPUTED ISSUE NO. 2: IF TRAFELET'S OBJECTION IS TIMELY AND PROPER, SHOULD IT BE GRANTED?

### A.    Plaintiff's Position

Trafelet makes the belated objection to the settlement on the basis that its "claims" are being released without any consideration.  The problem with this

- 16 -

628910_5

1   objection is that Trafelet does not have any valid "claims," as shown below – thus, a

2   release by the entire Class in connection with a settlement of $45 million without

3   certain Class Members, like those in Trafelet's (purported) position as a seller of stock

4   during the class period receiving consideration, is entirely proper.   Indeed, it is

5   commonplace for courts to include shareholders having weak or no claims in a

6   settlement class, but to allocate little or none of the proceeds to them. For example, in

7   *Triarc Cos.*, 791 A.2d 872, the court observed:

8        I start with the proposition that Delaware law favors the voluntary

9        settlement of corporate disputes.  Moreover, when passing on a proposed

10        class action settlement, I must evaluate "whether [it] is fair and

11        reasonable in the light of all relevant factors."

12   *Id.* at 876.  The court then held:

13        In passing on Perlman's objection, I direct my attention to "the

14        probable validity of the claims" made by the plaintiffs on behalf of the

15        class and the likelihood that those claims might have led to a monetary

16        recovery on behalf of Perlman or those similarly situated to him.  ***If it***

17        ***appears that those claims are weak or of little or no probable value or***

18        ***would not likely result in any recovery of damages by individual***

19        ***stockholders, it is fair to bar those claims as part of the overall***

20        ***settlement***.  Indeed, it is unreasonable to think that the defendants should

21        be willing to pay substantial consideration in settlement without

22        receiving in exchange a release that is at least as broad as the claims that

23        were actually asserted against them in the litigation, ***even claims that are***

24        ***of only speculative value.***  If, by contrast, the class had a viable claim for

25        substantial monetary relief, Perlman's objection to the failure of the

26        settlement to allocate any consideration to the class claims would be

27        more troubling.

28   *Id.* (emphasis added).

- 17 -

628910_5

So does Trafelet have anything more than a weak or speculative claim (or any claim at all)?  Plaintiff Brown believes the answer is a resounding "no."  The causes of action in this litigation were based on (a) violations of federal proxy laws, and (b) breach of fiduciary duty under Delaware law.  The parties agree that Trafelet, having sold its shares prior to the shareholder vote on the merger (if in fact it ever owned them at all), has no standing to assert federal proxy claims and thus cannot now object to the settlement of those claims or the apportionment of settlement funds in connection therewith.  *See, e.g.*, *Beebe v. Pacific Realty Trust*, 99 F.R.D. 60, 72 (D. Or. 1983) (sellers could not assert a federal proxy claim "because none of them was a shareholder on the date of the vote").

Trafelet disagrees, however, believing it has some theoretical claim under Delaware law – though no court in Delaware or anywhere else has ever provided a recovery for sellers under the legal claims involved in this litigation.  For good reason, Delaware law is clear – a shareholder that voluntarily sells its shares before the close of the merger, or even the shareholder vote on the merger, is ineligible to receive consideration from the settlement fund.  As the court held in *In re Prodigy Commc'n Corp. S'holder Litig.*, No. 19113, 2002 Del. Ch. LEXIS 95 (Del. Ch. July 26, 2002):

> The objection of Ervin V. Beoshanz is . . . contrary to established law.
> He complains that he is entitled to $6.60 per share even though he
> voluntarily sold his shares for $5.51 on September 28, 2001, after this
> litigation started and before the announcement of the agreement to
> increase the consideration to $6.60. . . .  [S]uch an objection falls short
> because persons who sell their shares during the pendency of a
> challenged transaction, such as this . . . "make a conscious business
> decision to sell their shares into a market that implicitly reflect[s] the
> value of the pending and any prospective lawsuits."

*Id*. at *11-*12.  The court continued:

628910_5

1   Similarly, the law recognizes that when a claim is asserted on behalf of a

2   class of stockholders challenging the fairness of the terms of a proposed

3   transaction under Delaware law, the class will ordinarily consist of those

4   persons who held shares as of the date the transaction was announced

5   and their transferees, successors and assigns. Nonetheless, . . . "*it is*

6   *unavoidable that persons who sever their economic relationship with*

7   *the corporation during the litigation will not benefit from a settlement*

8   *or a judgment in favor of the class*."

9   *Id.* at *12 (emphasis added).  The court thus concluded:

10   *Beoshanz severed his economic relationship with Prodigy and was,*

11   *thus, no longer in a position to benefit from any increase in the*

12   *consideration offered for Prodigy shares in the settlement*.

13   *Id.* at *13 (emphasis added).  The court thus overruled the objection and released all

14   claims against defendants.  *Id.* at *19, *21-*22.  Indeed, it is common practice for

15   Delaware courts, when approving similar class action settlements, to exclude from

16   recovery those shareholders who sold their economic interest prior to the

17   consummation of a merger.  As the Delaware Court of Chancery has said, "'[i]t is

18   only the one who is there at the end that has a claim.'"  *In re Freeport McMoran*

19   *Suphur, Inc. S'holder Litig.*, No. 16629-NC, Tr. at 11 (Del. Ch. Jan. 13, 2005) (Lamb,

20   V.C.). [4]

21

22   _____

22   [4]     Trafelet, conceding the "no-recovery-to-persons-who-sell" rule as set forth in

23   these cases, attempts to exempt itself from the rule by arguing that *Prodigy* and

23   *Freeport McMoran* restrict the applicability of the rule only to those cases where a

24   settlement specifically consists of an increase in merger price. Trafelet is unable to

24   point to, and in fact there is no language in either *Prodigy* or *Freeport McMoran* that

25   says that.  Trafelet is also unable to provide any subsequent authority that interprets

25   *Prodigy* and *Freeport McMoran* in such a narrow manner.  Indeed, it would make no

26   sense to put such an arbitrary limitation on the rule.  The rule is about: (1) whether an

26   action challenged a merger (including merger price); (2) whether the settlement

27   provided some benefit in connection with the merger (including monetary benefits via

27   increase in merger price or via a common fund); and (3) whether shareholders who

28   sold their shares and "severed [their] economic relationship[s]" similarly severed their

- 19 -

1    Notably, the same is true of those shareholders who do not purchase their shares

2  until after the merger is announced.   As the court held in *In re Transkaryotic*

3  *Therapies, Inc.*, 954 A.2d 346 (Del. Ch. 2008):

4         Defendants argue that the majority of plaintiffs lack standing to bring

5         claims that the individual defendants and Langer breached their fiduciary

6         duties of loyalty because certain plaintiffs did not purchase shares of

7         Transkaryotic stock until after the announcement of the merger, and

8         some did not purchase shares until after the record date for the

9         shareholder vote.  Under well established law, shareholder plaintiffs may

10        only challenge alleged breaches of fiduciary duty if they held shares of

11        the corporation at the time of the alleged breach.  *Omnicare, Inc. v. NCS*

12        *Healthcare, Inc.*, 809 A.2d 1163, 1169 (Del. Ch. 2002) ("Indeed, under

13        established Delaware law, a breach of fiduciary duty claim must be

14        based on an actual, existing fiduciary relationship between the plaintiff

15        and the defendants at the time of the alleged breach.").

16  *Id.* at 371 n.112.  The court continued:

17        Here, the purportedly disloyal conduct (which Shire is alleged to have

18        aided and abetted) occurred at the time Langer cast his vote in favor of

19        the merger that benefitted him, not TKT.  Therefore, only a plaintiff who

20        held TKT stock as of the date of the board's vote – April 21, 2005 – has

21        standing to pursue the aiding and abetting claim against Shire in the

22        inducement of Langer's assumptive breach.

23  *Id.*

24

25  ability to share in the settlement benefits.  In this case, just like in *Prodigy* and
    *Freeport McMoran*, the answers to all three questions are "yes."  Accordingly, *Prodigy*

26  and *Freeport McMoran* operate to bar Trafelet's ability to share in the settlement
    proceeds here.  Indeed, there is absolutely no distinction between a buyer agreeing to

27  pay more consideration prior to close as part of a settlement or the buyer agreeing to
    pay more post-close as part of a settlement.

28

1    In sum, those who sell before the merger is consummated or do not buy until

2    after a merger is announced have no valid claim to assert – only continuous owners

3    do.  Thus, only continuous owners are properly entitled to any allocation from the

4    settlement fund, and it is proper to release weak or speculative claims by all other

5    shareholders (*i.e.*, those who sold too soon or bought too late) without providing them

6    any allocation from the settlement fund.[5]

7    Trafelet has provided no authority that supports a different result because there

8    is none.  The cases cited by Trafelet do not involve the type of litigation that is present

9    here, and do not address or provide a challenge to the Delaware "no-recovery-to-

10   persons-who-sell" rule discussed above.  *See Initial Public Offering*, 671 F. Supp. 2d

11   at 470 (involving federal sellers claims under the Securities Act of 1933 and the

12   Securities Exchange Act of 1934); *Holmes v. Continental Can Co.*, 706 F.2d 1144,

13   1145 (11th Cir. 1983) (involving a class action antidiscrimination claim under Title

14   VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866); *Plummer v.*

15   *Chemical Bank*, 91 F.R.D. 434, 435 (S.D.N.Y. 1981) (involving a class action claim

16   under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981); *Parker v. Time*

17   *Warner Entm't Co.*, 239 F.R.D. 318, 320 (E.D.N.Y. 2007) (involving a class action

18   claim under the Cable Communications Policy At of 1984); *Amchem Products v.*

19

20   [5]    *Agostino*, cited by Trafelet, is not inconsistent with this rule and is wholly
21   irrelevant to the issues before the Court.  *Agostino* was not a case involving a
     challenge to the fairness of a merger, nor was it a case involving settlement allocation.
22   *Agostino v. Hicks*, 845 A.2d 1110, 1117-18 (Del. Ch. 2004).  *Agostino* was a case: (1)
     challenging defendants' conduct in connection with their approval of a financing deal
23   for the company; (2) alleging injury to the company as a result; and (3) involving
     analysis by the Court with respect to whether the claim was properly brought as a
24   derivative or direct claim.  *Id.*  While examining Delaware case law with respect to the
     derivative/direct distinction, the *Agostino* court noted that shareholders had to satisfy
25   the continuous ownership requirement as a rule of standing for derivative actions, but
     not for direct actions.  *Id.*  The *Agostino* court did ***not*** go on to say or suggest that just
26   because there was no continuous ownership requirement in direct actions,
     shareholders who sold their shares in a merger-related action had viable claims, viable
27   damages theories, and/or had any right to recover in settlement proceeds.  *Id.*  Thus,
     *Agostino* does not support Trafelet's position here.

28

1   *Windsor*, 521 U.S. 591, 597 (1997) (involving claims of asbestos-related injuries); *In*

2   *re Joint Eastern & Southern Dist. Asbestos Litig.*, 982 F.2d 721, 725 (2nd Cir. 1992)

3   (involving asbestos-related bankruptcy claims); *In re Warfarin Sodium Antitrust*

4   *Litig.*, 391 F.3d 516, 523 (3d Cir. 2004) (involving federal antitrust claims).[6]

5         Likewise, the cases cited by Trafelet that involve breach of fiduciary duty

6   claims that are ***unrelated to a merger***, and/or ***do not involve plaintiffs who sell their***

7   ***shares*** before the completion of the merger, are inapposite here, and say nothing about

8   the strength of any potential claim that could (purportedly) be pursued by Trafelet or

9   its ability to prove damages in this type of litigation.  *See Hampshire Group, Ltd. v.*

10  *Kuttner*, No. 3607-VCS, 2010 WL 2739995, at *50 (Del. Ch. July 12, 2010)

11  (involving breach of fiduciary duty claims involving accounting misconduct, and not

12  involving a merger); *Thorpe v. Cerbco, Inc.*, 19 Del. J. Corp. L. 942, 946 (1993)

13  (involving breach of fiduciary claims involving usurpation of a corporate opportunity,

14  and not involving a merger); *Gotham Partners, L.P. v. Hallwood Realty Partners,*

15  *L.P.*, 817 A.2d 160 (Del. 2002) (involving breach of fiduciary claims involving

16  transactions between limited partnership and its controlling entities, and not involving

17  a merger); *In re Bankamerica Corp. Sec. Litig.*, 210 F.R.D. 694, 709-10 (E.D. Mo.

18  2002) (involving plaintiffs seeking damages under claims brought under federal

19  _____

20  [6]      Moreover, none of these cases establishes a broad-brush requirement that any

21  allocation of proceeds in a class action settlement be equally divided among all class
    members in all situations, regardless of the nature of the suit.  As the case cited by

22  Trafelet explicitly explains, "there is no rule that settlements benefit all class members
    equally."  *Holmes v. Continental Can Comp.*, 706 F.2d 1144, 1148 (11th Cir. 1983).

23  When settlements benefit certain class members for ***no rational reason***, this may raise
    a red flag for the Court, and may warrant a closer scrutiny by the Court to check that

24  the settlement was not the product of collusion.  *Id.*  An example of this is where a
    settlement allocates much more to the named plaintiffs than the rest of the class which

25  is similarly-situated to the named plaintiffs.  *Id.*; *Plummer v. Chemical Bank*, 91
    F.R.D. 434, 441 (S.D.N.Y. 1981).  However, where, as here, there ***is*** a rational reason

26  for the unequal allocation between certain class members (*i.e.*, pursuant to a
    requirement of Delaware law), and there is no dispute that all ***similarly-situated*** class

27  members are being treated equally, there is no rule that mandates that the Court ignore
    Delaware law and strictly insist on the equal division of settlement proceeds.

28

628910_5

1    securities law and California Corporate Code, on the basis of their purchaser of shares

2    status after the completion of the merger); *Nagy v. Bistricer*, 770 A.2d 43, 48-49 (Del.

3    Ch. 2000) (involving a plaintiff who perfected his appraisal rights, and thus, was

4    necessarily ***not*** a seller).[7]

5          Ultimately, Trafelet relies on one case and one case only – *Wiegand* – for its

6    argument that its decision to sell its shares before the close of the merger had "no

7    impact" on its right to share in the settlement proceeds.  *Wiegand*, however, does not

8    support Trafelet's position.  *Wiegand* was a case about class certification – that's it.

9    *Wiegand v. Berry Petroleum Co.*, 16 Del. J. Corp. L. 476, 478 (1989).  The *Wiegand*

10   court never conducted any analysis into the "rights" of any class members to

11   ultimately share in any settlement proceeds.  *Id.*  Moreover, even if ultimately the

12   *Wiegand* court found that the class of "sellers" that was certified in the case did have

13   some right to share in the settlement recovery, that would mean nothing for Trafelet

14   here.  The class of sellers in *Wiegand* were plaintiffs who claimed they were ***injured***

15   ***by selling at a time when defendants artificially reduced the market price of the***

16   ***company***.  *Id.*  Their claims, unlike Trafelet, were not related to any harm from a

17   merger.  *Id.*[8]  The Delaware "no-recovery-to-persons-who-sell" rule discussed above

18   applies only to breach of fiduciary claims in connection with a ***merger***.  Thus, it

19   makes perfect sense that the Delaware "no-recovery-to-persons-who-sell" rule would

20

21   [7]    *See* 8 Del. C. §262(a) (2011) ("Any stockholder of a corporation of this State
     who holds shares of stock on the date of the making of a demand pursuant to
22   subsection (d) of this section with respect to such shares, ***who continuously holds***
     ***such shares through the effective date of the merger or consolidation***, who has
23   otherwise complied with subsection (d) of this section and who has neither voted in
     favor of the merger or consolidation nor consented thereto in writing pursuant to § 228
24   of this title shall be entitled to an appraisal by the Court of Chancery of the fair value
     of the stockholder's shares of stock under the circumstances described in subsections
25   (b) and (c) of this section.") (emphasis added).

26   [8]    Plaintiff never alleged, and this litigation was not based on, market
     manipulation.  Moreover, Trafelet would not be able to bring a new breach of
27   fiduciary suit based on this new theory now, as claims for breach of fiduciary duty are
     covered by three year statute of limitations under Delaware law.  10 Del. C. §8106.

28

1    have no impact on plaintiffs like the ones in *Wiegand*, but instead operates to

2    completely bar sellers like Trafelet from sharing in settlement proceeds here.

3         As demonstrated above, Trafelet's objection is unsupported by any authority

4    and must be seen for what it is – personal dissatisfaction with and/or regret of its prior

5    decision to sell its shares.   Personal dissatisfaction and/or regret is insufficient,

6    however, to ignore the clear rule of law that bars Trafelet from being able to share in

7    the settlement proceeds in this litigation as a consequence of its decision to sell its

8    shares before the close of the merger.   Accordingly, Trafelet's objection should be

9    overruled.

10   **B.    Trafelet's Position**

11        The plan for allocating the proceeds of a class action settlement among

12   members of the class must be scrutinized according to the same standard as the

13   settlement itself; namely, the allocation must be "fair and adequate."  *Initial Public*

14   *Offering*, 671 F. Supp. 2d at 479.  While this measure is ordinarily not exacting and

15   generally satisfied by the mere fact that experienced class counsel endorses the

16   allocation, that is not true where a proposed plan of allocation would compensate

17   different groups of class members differently or, worse, provide no compensation at

18   all to some portion of the class.  *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1149-

19   50 (11th Cir. 1983) (recognizing general rule, but holding that "the attorney's opinion

20   is an insufficient basis upon which to approve the disproportionate and facially unfair

21   allocation").  To that end, in a case like this one, where a discrete portion of the class

22   which includes the named plaintiff is favored by a proposed plan of allocation, the

23   Court must apply exacting scrutiny to the proposed allocation. *Initial Public Offering*,

24   671 F. Supp. 2d at 479 (court must carefully scrutinize proposed allocation "to prevent

25   injustice and to ensure that the burden of settlement is not shifted arbitrarily to a small

26   group of class members.").  Indeed, disparities in the allocation of a settlement "must

27   be regarded as *prima facie* evidence that the settlement is unfair to the class.

28   *Plummer*, 91 F.R.D. at 442; *Parker*, 239 F.R.D. at 337 (when proposed plan of

- 24 -

628910_5

1  allocation fails to compensate class members whose claims are being released, there

2  exists a "strong indicator that a settlement is unfair.").

3       The reason for this is obvious.  As the Supreme Court held in *Amchem Prods.,*

4  *Inc. v. Windsor,* where a class includes groups with different interests or different

5  injuries, it is absolutely critical that there exist "structural assurance of fair and

6  adequate representation of the diverse groups and individuals affected."  *Amchem*

7  *Prods., Inc. v. Windsor*, 521 U.S. 591, 595 (1997) (rejecting settlement where groups

8  within overall class had competing interests regarding how to structure and allocate

9  settlement, but were not separately represented).  As the Second Circuit wrote,

10       The class representatives may well have thought that the Settlement

11       serves the aggregate interests of the entire class. But the adversity among

12       subgroups requires that the members of each subgroup cannot be bound

13       to a settlement except by consents given by those who understand that

14       their role is to represent solely the members of their respective

15       subgroups.

16  *Joint Eastern and Southern Dist. Asbestos Litig.*, 982 F.2d at 742-43.

17       Scrutiny of the proposed plan of allocation here reveals substantial unfairness to

18  a portion of the Certified Class.  There is no dispute here that members of the

19  Certified Class, like Trafelet, who sold their Intermix stock after the public

20  announcement of the merger with News Corp. at a price of $12 per share (on July 18,

21  2005), but before the merger was actually completed (on September 30, 2005) will

22  receive nothing under the current plan of allocation even though their claims are to be

23  released by the proposed settlement.  That is unfair and inadequate for at least two

24  reasons.

25       First, the proposal to provide no compensation to these members of the

26  Certified Class is based entirely upon the erroneous assertion that they have no

27  legitimate claim for damages under Delaware law.  That is wrong.

28

- 25 -

1    Under Delaware law, a corporate officer or director who breaches his duty of
2    loyalty or acts in bad faith "may suffer a personal judgment for monetary damages for
3    any harm he causes." *Nagy*, 770 A.2d at 48 n.2; *Thorpe v. CERBCO, Inc.*, 1993 WL
4    443406, at *12 (Del. Ch. Oct. 29, 1993) ("It is, of course, fundamental that a fiduciary
5    who breaches his duty is liable for any losses suffered by the beneficiary of his
6    trust."). Those damages are "to be liberally calculated, and will be awarded as long as
7    there is a basis for estimating damages." *Hampshire Group*, 2010 WL 2739995;
8    *Thorpe*, 1993 WL 443406, at *12 ("so long as the court has a basis for a responsible
9    estimate of damages, and plaintiff has suffered some harm, mathematical certainty is
10   not required.  …once a breach of duty is established, uncertainties in awarding
11   damages are generally resolved against the wrongdoer."). Where the duty breached is
12   the duty of loyalty, the scope of permissible recovery is even broader. *Gotham
13   Partners*, 817 A.2d at 176 (the Delaware Supreme Court held that in connection with
14   a breach of the duty of loyalty, the court's "powers are complete to fashion any form
15   of equitable or monetary relief as may be appropriate.").

16   There is no question that a shareholder who receives a lower price for the public
17   sales of his shares because of a corporate officer's breaches of his fiduciary duty can
18   pursue claims for damages against that fiduciary. The occurrence of a merger after
19   the shareholder's sales has no impact on the injured shareholder's right to sue for the
20   damages he suffered. Indeed, Delaware courts have certified plaintiff classes
21   consisting ***entirely*** of shareholders who sold their stock at artificially deflated prices in
22   advance of a merger. *See, e.g.*, *Wiegand v. Berry Petroleum Co.*, Civ. No. 9316, 1989
23   WL 146235 (Del. Ch. Dec. 5, 1989) (certifying two classes in action asserting breach
24   of fiduciary duty; one class consisting of shareholders who sold prior to merger and
25   another consisting of shareholders whose stock was exchanged in merger).

26   In its order granting in part and denying in part Defendants' motions for
27   summary judgment, this Court held that the Certified Class could pursue claims based
28   upon the defendants' asserted breaches of the duty of loyalty and other fiduciary

- 26 -

628910_5

1   breaches by each of the defendants.  Docket No. 278 at 5-19.  In light of the case law

2   described in the preceding paragraph, in the absence of some special rule controlling

3   their claims, all Intermix shareholders who were injured by those asserted breaches –

4   including shareholders who sold their shares after the merger with News Corp. was

5   announced, but before it was completed – are entitled to pursue a claim for damages

6   against each of the defendants.

7        Unquestionably, there are reasonable damages theories available to Trafelet and

8   other shareholders who sold their Intermix stock before the merger with News Corp.

9   was completed.  One of the key allegations in the currently operative complaint in this

10  action is that the defendants prevented Viacom from submitting any bid for Intermix,

11  even though Viacom "as late as July 15, 2005, stood ready to submit a bid for the

12  company."  Consolidated Second Amended Complaint (Docket No. 89), at ¶100.  In

13  related allegations, the complaint asserts that the defendants "took steps to avoid

14  competitive bidding, to cap the price of Intermix's stock".  *Id.*, ¶189(a).  A competing

15  or better bid from Viacom or other suitors at a price of more than $12 per share would

16  necessarily have resulted in a higher market trading price for Intermix stock.[9]  Thus,

17  Intermix shareholders who sold prior to the actual consummation of the merger with

18  News Corp. at $12 per share were nonetheless damaged by the defendants' successful

19  efforts to prevent and fend off a higher priced bid from Viacom.  Indeed, the Court

20  specifically noted the existence of this theory of damages in its order on the parties'

21  motions for summary judgment and stated that nothing in its order affected the

22  viability of that theory.  *See* Docket No. 278 at 39 n.20 ("We have no occasion to

23  consider and therefore express no opinion on whether the 'lost opportunity' theory of

24  damages premised on a potential Viacom bid would be viable with respect to the

25  

_____

26  [9]      Indeed, according to the complaint, a public announcement of an unsolicited bid
27  for 50% of Intermix's stock at $13.50 per share caused the public trading price of
    Intermix's stock to rise $0.39 per share.  *Id.*, ¶161.

28  

628910_5

- 27 -

1   breach of fiduciary duty claim which is based on evidence beyond the alleged material

2   omissions from the Proxy. The Parties have not addressed this issue in their Cross-

3   Motions.").   In other words, that theory of damages on the fiduciary duty claims

4   remains at issue here and provides a meaningful and legitimate basis of recovery for

5   Class members like Trafelet.

6          That **all** of the members of the Certified Class possess viable damages claims

7   against the defendants was even recognized by plaintiff earlier in this litigation.  *See*

8   Motion for Class Certification (Docket No. 131) at p. 7-8 ("with respect to plaintiff's

9   breach of fiduciary claims, Intermix and its Board owed uniform duties to all members

10  of the putative class – the Company's public shareholders – and by breaching a duty

11  to any single shareholder, defendants breached that duty as to all shareholders.  Thus,

12  plaintiff's claims, arising from breaches of duties owed equally by defendants to all of

13  Intermix's public shareholders, must by force of both law and logic be typical of every

14  member of the public shareholder class entitled to benefit from these duties." (citation

15  omitted)).  That it is now convenient for plaintiff to take the opposite position is not a

16  basis to exclude a portion of the Certified Class from the benefits of the settlement

17  obtained here. *In re BankAmerica Corp. Securities Litig*., 210 F.R.D. 694, 711-12

18  (E.D. Mo. 2002) (rejecting plan of allocation that left some class members

19  uncompensated despite earlier statements by class counsel that all class members were

20  injured by challenged conduct).

21         Plaintiff's belated effort to construct an argument to excuse the improper plan

22  of allocation is excessively simplistic, misses the point and falls short.  Plaintiff is

23  correct that shareholders who purchased their shares after the announcement of the

24  merger (*i.e.*, after the breaches of fiduciary duty occurred) have no valuable claim.  He

25  is wholly incorrect, however, when he asserts that Trafelet and other shareholders who

26  owned Intermix stock at the time the fiduciary breaches occurred and who were

27  damaged by those breaches lack valuable claims.

28

- 28 -

The cases cited and relied upon by Plaintiff as support for his argument are obviously inapplicable here.  In those cases, the settlement at issue provided for an increased per-share price to be paid *in the merger by the acquiring corporation*.  *See In re Prodigy Comm'n Corp. Shareholder Litig.*, 2002 WL 176543, at *2 (Del. Ch. July 26, 2002) ("negotiations led to an agreement in principle to settle the litigation in exchange for the following: • an increase in the price to be paid in the Proposed Transaction from $5.45 to $6.60, in cash, per share").  Indeed, the very passage quoted so vocally by Plaintiff makes it very clear that the reason participation in the settlement reached there was limited to shareholders who were actually going to exchange their shares in the merger was because the settlement only provided for a change in the merger price, rather than a lump sum payment that could be distributed. *In re Prodigy Commc'n Corp. S'holder Litig.*, No. 19113, 2002 Del. Ch. LEXIS 95, at *13 ("Beoshanz severed his economic relationship with Prodigy *and was, thus, no longer in a position to benefit from any increase in the consideration offered for Prodigy shares in the settlement*.").

Similarly, the settlement at issue *In re Freeport McMoran Sulpher Inc. Shareholder Litigation* consisted of additional payments by the *acquiring* corporation. The only shareholders who had any relationship to the acquiring corporation were those who held stock at the time of the merger.  In fact, it is difficult to imagine that shareholders of the merged out company who never became shareholders of the acquiring company had any claims against the acquiring company to settle.  They certainly did not have any fiduciary duty claims, since they had no confidential relationship with the acquiring company.  Since the issue here is whether class members suing their *own* officers and directors for fiduciary lapses are entitled to pursue damages claims, *Freeport McMoran Sulpher* is wholly uninformative.

Indeed, given the nature of the settlements in those two cases, it is perfectly consistent with the general rules discussed above that the shareholders in those cases who sold their stock prior to the merger would not participate in those settlements.

1   Where a settlement provides for an increased merger price, it is not possible for ex-

2   shareholders to benefit from the new, higher price.  Likewise, where the settlement is

3   with the acquiring corporation, only those shareholders who still held after the merger

4   had a relationship with the acquiring corporation.

5          In contrast, where, as here, a settlement is reached with defendants who actually

6   owed duties to the selling shareholders and the nature of the effect of the settlement is

7   to create a common fund, there is no justification in the law or in logic to exclude

8   from participating in the settlement shareholders who were owed fiduciary duties and

9   who were damaged by the breach of those duties.  Indeed, as one Delaware Chancery

10  court held, while there is a requirement under Delaware law that a plaintiff pursuing a

11  derivative action own his or her stock continuously, "there is no continuous ownership

12  requirement in a direct action."  *Agostino*, 845 A.2d at 1120.

13         ***Second***, even if there were any support in the case law for Plaintiff's argument,

14  that still would not justify excluding them from a share of the settlement entirely.

15  Those former Intermix shareholders are members of the Certified Class.  No motion

16  for summary judgment or other dispositive motion has even been filed, let alone

17  granted, with respect to their claims.  In the absence of a settlement, the claims of

18  Trafelet and other selling shareholders would be presented and argued to a jury.  That

19  fact alone is enough to entitled those members of the Certified Class to share in the

20  settlement.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 539-40 (3d Cir.

21  2004) (holding that it was proper for plan of allocation to compensate class members

22  with no monetary damages, since "it is appropriate that they receive consideration for

23  the release of the claims they have against [the defendant]").

24         The fundamental question that should control the outcome of the present

25  dispute is: is there a basis to conclude ***with certainty*** that those Class members who

26  were injured by the breaches of fiduciary duties at issue in this action, but who sold

27  their shares before the merger was completed, have no viable claims under Delaware

28  law.  In the absence of some definitive basis to conclude that those Class members

- 30 -

628910_5

1  could not *possibly* recover anything if their claims were pursued through trial, it is

2  wholly illegitimate to exclude them from the recovery obtained here by way of the

3  proposed settlement.  The Delaware fiduciary duty cases discussed above reflect that

4  these members of the Certified Class possess viable claims for damages against the

5  defendants based on their alleged breaches of fiduciary duties.  It would be improper

6  to compel those Class Members to release their claims without permitting them to

7  share in the settlement.

8       **C.   Defendants' Position**

9       As discussed above, Defendants do not take a position regarding Trafelet's

10  objection to the allocation.  As reflected in the Amended Stipulation re Settlement,

11  allocation is not a necessary term or condition of the settlement, and Defendants have

12  no responsibility or liability whatsoever for the allocation of the settlement funds.  *See*

13  Docket No. 326, § 7.3.

14  **V.   DISPUTED ISSUE NO. 3:  WHAT IS THE REMEDY FOR GRANTING ALLOCATION REMEDY?**

15       **A.   Plaintiff's Position**

16       As set forth above, Plaintiff Brown strongly believes that Trafelet, and other

17  similarly situated Class Members, who either bought or sold during the Class Period,

18  have no viable claim relating to the fairness of a merger.  Trafelet, in fact, concedes

19  that the §14(a) claim that provides this Court with subject matter jurisdiction could not

20  be pursued by it or any other seller, and that there are no Delaware opinions that set

21  forth how a seller can pursue a claim under Delaware breach of fiduciary duty law, or

22  how a seller prior to consummation would measure damages.  This admitted lack of a

23  §14(a) claim and inability to measure any entitlement to recovery raises a significant

24  problem in coming up with a fair allocation.

25       As the Court ruled in its Summary Judgment opinion, the measure of damages,

26  both under §14(a) and Delaware law, is the difference between what shareholders

27  received as merger proceeds and the fair or intrinsic value of the Company.  *Brown v.*

28

- 31 -

628910_5

1    *Brewer*, No. CV 06-3731-GHK, 2010 U.S. Dist. LEXIS 60863, at *83-*84 (C.D. Cal.

2    June 17, 2010) (finding out-of-pocket losses the correct measure of damages). Clearly

3    those who sold out, like Trafelet, did not receive any merger proceeds from which to

4    measure the value of the Company against. Without a legally supportable measure, it

5    is difficult to undertake an allocation that appropriately measures the entitlements of

6    those with viable and measureable §14(a) and Delaware claims, as against those who

7    only have some theoretical, at best, claim under Delaware law. Trafelet has provided

8    no justifiable or rational alternative Plan of Allocation that accounts for no federal

9    claim and, at best, a nominal and theoretical claim by sellers. In truth, the appropriate

10   allocation, given the inability to measure damages on a single theoretical claim,

11   should be zero.

12        Alternatively, to the extent that the Court upholds the objection, plaintiff

13   submits that an appropriate modification to the Plan of Allocation would be to set

14   aside and provide 2% or less of the Net Settlement Fund for Trafelet and Class

15   Members similarly-situated to Trafelet (upon genuine proof of ownership), and that

16   Trafelet and Class Members similarly-situated to Trafelet be noticed via the claims

17   administrator's website of this modification. *See* Notice of Settlement at 4 ("The

18   Court has also reserved the right to modify the Plan of Allocation without further

19   notice to Class Members. All Orders regarding a modification of the Plan of

20   Allocation will be posted on the Claims Administrator's website, www.gilardi.com.").

21   Plaintiff's proposed remedy would not require a re-notice as the modification will not

22   effectuate a material change in the settlement terms. See *International Union, United*

23   *Automobile, Aerospace, and Agricultural Implement Workers of America v. Ford*

24   *Motor Co.*, No. 07-CV-14845, 2009 WL 3757040, at *15 (E.D. Mich. Nov. 9, 2009)

25   ("notice of an amendment to a class settlement and an opportunity to object may be

26   required when the amendment will effectuate a material change in the settlement

27   terms"). Thus, plaintiff's proposed remedy: (1) represents a reasonable compromise

28   of the dispute between Trafelet and plaintiff; (2) will save substantial time and

- 32 -

628910_5

1    resources; and (3) preserves the benefits for the class of continuous owners of

2    Intermix shares.

3        **B.    Trafelet's Position**

4        In light of the significant issues of fundamental fairness described above, the

5    Court should enter an order reflecting that all Intermix shareholders who owned stock

6    on the date of the alleged fiduciary breaches (July 18, 2005) must be included in the

7    plan of allocation.  However, the Court should not modify the plan by its own order.

8    *See In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 712 (E.D. Mo. 2002)

9    (court cannot revise proposed plan of allocation since plan is part and parcel of

10   settlement, but must instead reject proposal and order parties to negotiate new

11   allocation for submission to court).  Instead, the Court should direct Class Counsel,

12   Defendants' counsel and counsel for objector Trafelet to meet and confer regarding a

13   new, proper allocation of the settlement proceeds among members of the Certified

14   Class.  The Stipulation of Settlement can then be amended to reflect the new plan of

15   allocation negotiated through such arms-length negotiations in which all of the

16   competing interests in the settlement funds are represented.

17       In the event the Court does determine that it can or should modify the proposed

18   Plan of Allocation, the plan should be modified simply to permit Trafelet and all other

19   similarly situated members of the Certified Class to submit proofs of claim and

20   participate in the settlement proceeds as would any other class member.  Although the

21   §14 claim asserted in the Second Amended Consolidated Complaint is not available to

22   these members of the Certified Class, because the damages which could be recovered

23   on that claim would be coextensive with, not in addition to, the recovery obtained in

24   connection with the fiduciary duty claims, there is no reason to award a greater share

25   of the recovery obtained though settlement to any particular group of class members.

26       Plaintiff's contention that Trafelet's fiduciary duty claims were rendered

27   worthless by the Court's summary judgment order is simply wrong.  The Court ***did***

28   substantially limit the possible recovery on their section 14(a) by holding that the

- 33 -

628910_5

1    remedy on that claim could only be measured by the difference between the merger

2    price and fair value and could not be based on a "lost opportunity" measure of

3    damages.    However, the Court **specifically did not decide** that class members'

4    remedies on the fiduciary duty claims would be so limited.  On the contrary, the Court

5    expressly noted that the "lost opportunity" measure of damages was preserved for the

6    fiduciary duty claims.  *See* Docket No. 278 at 39 n.20 ("We have no occasion to

7    consider and therefore express no opinion on whether the 'lost opportunity' theory of

8    damages premised on a potential Viacom bid would be viable with respect to the

9    breach of fiduciary duty claim which is based on evidence beyond the alleged material

10   omissions from the Proxy. The Parties have not addressed this issue in their Cross-

11   Motions.").    Not only does an accurate reading of the Court's order contradict

12   Plaintiff's argument that Trafelet and similarly situated Class members lack a viable

13   damages theory, it further demonstrates why the claims of Trafelet and similarly

14   situated Class members are as valuable as those of Plaintiff.

15       **C.    Defendants' Position**

16       Although allocation is not a necessary term or condition of the settlement, and

17   Defendants have no responsibility or liability whatsoever for the allocation of the

18   settlement funds (*see* Docket No. 326, §7.3), it is Defendants' position that if the plan

19   of allocation is modified, a notice of the modification should be sent to the Certified

20   Class.    *See, e.g.*, *International Union, United Automobile, Aerospace, and*

21   *Agricultural Implement Workers of America*, 2009 WL 3757040, at *15 ("Notice of an

22   amendment to a class settlement and an opportunity to object may be required when

23   the amendment will effectuate a material change in the settlement terms.").   The

24   notice of modification would serve to alert (1) the members of the Certified Class who

25   held their shares continuously that there would be a change in the distribution of the

26   settlement fund, and (2) depending upon how the allocation is modified, could also

27   alert those members of the Certified Class who did not hold continuously that they

28

- 34 -

628910_5

1  may submit claims to participate in some portion of the distribution of the settlement

2  funds.

3  DATED:  June 10, 2011                    Respectfully submitted,

4                                           ROBBINS GELLER RUDMAN
                                               & DOWD LLP
5                                           DARREN J. ROBBINS
                                            RANDALL J. BARON
6                                           DAVID T. WISSBROECKER
                                            EUN JIN LEE
7

8                                           _____s/RANDALL J. BARON_____
9                                                 RANDALL J. BARON

10                                          655 West Broadway, Suite 1900
                                            San Diego, CA  92101
11                                          Telephone:  619/231-1058
                                            619/231-7423 (fax)
12
                                            Lead Counsel for Plaintiff
13
                                            LAW OFFICES OF CHRISTY
14                                             GOODMAN
                                            CHRISTY W. GOODMAN
15                                          3327 Dumas Street
                                            San Diego, CA  92106
16                                          Telephone:  619/793-8259
                                            619/758-0635 (fax)
17
                                            Attorneys for Plaintiff
18
      DATED:  June 10, 2011                 BROWNE WOODS GEORGE LLP
19                                          ERIC M. GEORGE
                                            MICHAEL A. BOWSE
20

21                                          _____s/MICHAEL A. BOWSE_____
22                                                MICHAEL A. BOWSE

23                                          2121 Avenue of the Stars, Suite 2400
                                            Los Angeles, CA 90067
24                                          Telephone:  310/274-7100
                                            310/275-5697 (fax)
25
                                            Attorneys for Objector
26                                          Trafelet & Company LLC

27

28
                                            - 35 -

DATED:  June 10, 2011

HOGAN LOVELLS US LLP
RICHARD L. STONE
JULIE ANN SHEPARD
ELIZABETH A. MORIARTY


                    s/JULIE ANN SHEPARD
                    JULIE ANN SHEPARD

1999 Avenue of the Stars,, Suite 1400
Los Angeles, CA  90067
Telephone:  310/785-4600
310/785-4601 (fax)

Attorneys for Defendants Brett Brewer,
Daniel Mosher, Lawrence Moreau, Richard
Rosenblatt, James Quandt, and William
Woodward

DATED:  June 10, 2011

ORRICK, HERRINGTON
 & SUTCLIFFE, LLP
MICHAEL D. TORPEY
JAMES N. KRAMER
STEPHEN M. KNASTER
JAMES THOMPSON


                    s/JAMES THOMPSON
                    JAMES THOMPSON

The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:  415/773-5700
415/773-5759 (fax)

Attorneys for Defendants
David S. Carlick and Andrew Sheehan

628910_5

1
<u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on June 10, 2011, I authorized the electronic filing of the

3  foregoing with the Clerk of the Court using the CM/ECF system which will send

4  notification of such filing to the e-mail addresses denoted on the attached Electronic

5  Mail Notice List, and I hereby certify that I caused to be mailed the foregoing

6  document or paper via the United States Postal Service to the non-CM/ECF

7  participants indicated on the attached Manual Notice List.

8      I certify under penalty of perjury under the laws of the United States of America

9  that the foregoing is true and correct.  Executed on June 10, 2011.

10
  s/ RANDALL J. BARON
  RANDALL J. BARON

11

12
  ROBBINS GELLER RUDMAN
  & DOWD LLP

13
  655 West Broadway, Suite 1900
  San Diego, CA  92101-3301
  Telephone:  619/231-1058

14
  619/231-7423 (fax)

15
  E-mail:     randyb@rgrdlaw.com

16

17

18

19

20

21

22

23

24

25

26

27

28

628910_5

# Mailing Information for a Case 2:06-cv-03731-GHK -SH

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Randall J Baron**
  randyb@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Michael A Bowse**
  mbowse@bwgfirm.com,khall@bwgfirm.com,rnelms@bwgfirm.com

- **Rebecca M Couto**
  rebeccamcouto@gmail.com

- **Asheley G Dean**
  asheley.dean@hoganlovells.com,LA-Docketing@hoganlovells.com,LA-
  Records@hoganlovells.com,dolores.valencia@hoganlovells.com

- **Eric M George**
  egeorge@bwgfirm.com,cbonilla@bwgfirm.com

- **Christy W Goodman**
  c.w.goodman@sbcglobal.net

- **Ellen Anne Gusikoff Stewart**
  elleng@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Bety Javidzad**
  bety.javidzad@hoganlovells.com,LA-Docketing@hoganlovells.com

- **Stephen M Knaster**
  sknaster@orrick.com

- **James N Kramer**
  jkramer@orrick.com,jthompson@orrick.com

- **Amy A Laughlin**
  alaughlin@orrick.com

- **Teodora Manolova**
  tmanolova@orrick.com

- **Elizabeth A Moriarty**
  elizabeth.moriarty@hoganlovells.com,pdelarosa@hhlaw.com,bea.goncalves@hoganlovells.com,cmelias@hhlaw.com

- **Pamela S Palmer**
  pamela.palmer@lw.com

- **Darren J Robbins**
  e_file_sd@rgrdlaw.com

- **Julie A Shepard**
  julie.shepard@hoganlovells.com,LA-Docketing@hoganlovells.com,LA-Records@hoganlovells.com

- **George A Shohet**
  georgeshohet@gmail.com

- **Richard Lee Stone**

richard.stone@hoganlovells.com,maria.reyes@hoganlovells.com

- **Michael D Torpey**
  mtorpey@orrick.com

- **David T Wissbroecker**
  dwissbroecker@rgrdlaw.com,e_file_sd@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**Erin Bansal**
Orrick Herrington and Sutcliffe
405 Howard Street
San Francisco, CA 94105

**Stephen J Oddo**
Robbins  Umeda LLP
600 B Street  Suite 1900
San Diego, CA 92101